AUTO FRAUD LEGAL CENTER LLP
Gregory T. Babbitt (SBN 214299)
9988 Hibert Street, Suite 150
San Diego, California 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150
*greg@autofraud.com*

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIA BLOOD,<br><br>       Plaintiff,<br><br>   v.<br><br>MERCEDES BENZ USA, LLC<br><br>      Defendants. | Case No. 3:23-CV-1463-WQH-AHG<br><br>**COMPENDIUM OF EXHIBITS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:     August 12, 2024<br>Judge:   Hon. William Q. Hayes<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

Plaintiff Ania Blood submits the following exhibits in support of her motion for attorneys' fees:

| | |
|---|---|
| Exhibit 1: | Complaint |
| Exhibit 2: | Accepted Rule 68 Offer of Judgment |
| Exhibit 3: | Itemization of Auto Fraud Legal Center LLP's billings in this case |
| Exhibit 4: | United States Consumer Law Practice & Attorney Fee Survey Report 2023 California Metro Edition |

1

**COMPENDIUM OF EXHIBITS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

1  July 11, 2024                    AUTO FRAUD LEGAL CENTER LLP

2

3                                   By:  /s/ Gregory T. Babbitt

4                                        Gregory T. Babbitt
                                         Attorneys for Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPENDIUM OF EXHIBITS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

# EXHIBIT 1

1 | AUTO FRAUD LEGAL CENTER LLP
Joseph S. Green (SBN 251169)
2 | 9988 Hibert Street, Suite 150
San Diego, California 92131
3 | Telephone: (858) 348-1005
Facsimile: (858) 348-1150
4 | *josh.green@autofraud.com*

5 | Attorneys for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/22/2023** at 08:33:27 AM
Clerk of the Superior Court
By Joseph Callier III,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO – HALL OF JUSTICE

| | |
|---|---|
| ANIA BLOOD,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ, USA, LLC;<br>and DOES 1 through 75, inclusive,<br><br>Defendants. | Case No.  37-2023-00026775-CU-BC-CTL<br><br>**Complaint**<br><br>1. Breach of Express Warranty, Civil Code § 1794;<br>2. Failure to Commence Repairs Within a Reasonable Time and to Complete Them Within 30 Days;<br>3. Failure to Promptly Repurchase Product;<br>4. Breach of the Implied Warranty of Merchantability;<br>5. Failure to Promptly Repurchase Product. |

Plaintiff alleges the following against Defendants on information and belief, formed after a reasonable inquiry under the circumstances:

## **PARTIES AND VENUE**

1.      Ania Blood ("Plaintiff") is an individual who resided in the City of San Marcos, County of San Diego, State of California, at the time she acquired the 2019 Mercedes-Benz C300W, with VIN:  55SWF8D8B1KU294191 ("Vehicle"), which is the subject of this lawsuit.

2.      Defendant Mercedes-Benz, USA, LLC ("Manufacturer") is or was the manufacturer and/or distributor of the Vehicle. Manufacturer is a limited liability company registered to do business in the State of California and doing business in the County of San Diego.

3.  Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus names them under the provisions of Code of Civil Procedure § 474. Defendants Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein. Plaintiff will set forth the true names and capacities of the fictitiously-named Defendants together with appropriate charging allegations when ascertained.

4.  All acts of Manufacturer's employees, as hereinafter alleged, were authorized or ratified by the owner or managing agents of Manufacturer.

## SUMMARY OF ALLEGATIONS

5.  Plaintiff acquired the Vehicle as new and for personal, family, and household purposed in November 2018. The Manufacturer provided Plaintiff an express warranty for the Vehicle.

6.  Plaintiff experienced the following problems with the Vehicle: (1) false warning lights, signals, and promptings have appeared on the dashboard, (2) the passenger window has not operated properly, (3) the sunroof would not close completely, causing wind noise, (4) the trunk does not close automatically when pressing the button, and (5) the Vehicle has not started when pressing the start button.

7.  During the express warranty period, Plaintiff delivered the Vehicle to Manufacturer's authorized repair facilities for repairs for these issues. The Manufacturer was unable to repair the Vehicle to conform to its warranty.

8.  Plaintiff asked the Manufacturer to return her money paid and owed on the Vehicle and take the Vehicle back. Manufacturer refused Plaintiff's request.

## FIRST CAUSE OF ACTION

### Breach of Express Warranty, Civil Code § 1794

### (As to Manufacturer, and Does 1-75)

9.  Plaintiff incorporates herein each and every allegation set forth above, as though fully set forth herein.

10.  In accordance with Manufacturer's warranty, Plaintiff delivered the Vehicle to Manufacturer's representative in this state to perform warranty repairs. Plaintiff did so within a

reasonable time. Plaintiff notified Manufacturer and/or its designated representative of the characteristics of the defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty.

11.     Plaintiff has been damaged by Manufacturer's failure to comply with its obligations under the express warranty, and therefore brings this claim pursuant to Civil Code section 1794.

12.     Manufacturer's failure to comply with its obligations under the express warranty was willful, in that Manufacturer and/or its representative were aware of their obligation to repair the Vehicle under the express warranty, but they intentionally declined to fulfill that obligation. Accordingly, Plaintiff is entitled to a civil penalty of up to two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

13.     Plaintiff is entitled to and justifiably revokes acceptance of the Vehicle under the Song-Beverly Act.

14.     Plaintiff is entitled to all incidental and consequential damages resulting from Manufacturer's failure to comply with its obligations under the Song-Beverly Act.

15.     Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

## SECOND CAUSE OF ACTION

**Failure to Commence Repairs Within a Reasonable Time and to Complete Them**

**Within 30 Days, Civil Code § 1793.2(b)**

**(As to Manufacturer and Does 1-75)**

16.     Plaintiff incorporates herein each and every allegation set forth above.

17.     Although Plaintiff delivered the Vehicle to Manufacturer and/or its  representative in this state, Manufacturer and/or its   representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2(b). Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

/ / /

18.    Plaintiff has been damaged by Manufacturer's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this claim pursuant to Civil Code section 1794.

19.    Manufacturer's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Manufacturer was aware that it was obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of up to two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

20.    Plaintiff is entitled to and justifiably revokes acceptance of the Vehicle under the Song-Beverly Act.

21.    Plaintiff is entitled to and seeks damages and other legal and equitable relief, including, but not limited to, all incidental and consequential damages resulting from Manufacturer's failure to comply with its obligations under the Song-Beverly Act.

22.    Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

## THIRD CAUSE OF ACTION

### Failure to Promptly Repurchase Product, Civil Code § 1793.2(d)

### (As to Manufacturer and Does 1-75)

23.    Plaintiff incorporates herein each and every allegation set forth above.

24.    Under the Song-Beverly Act, the Vehicle qualifies as a "new motor vehicle" purchased primarily for personal, family or household purposes and Plaintiff has used the Vehicle primarily for those purposes.

25.    Plaintiff is a "buyer" of consumer goods under Song-Beverly.

26.    Manufacturer is a "manufacturer" and/or "distributor" under Song-Beverly.

27.    Manufacturer and/or its representatives in this state have been unable and/or have refused to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of attempts. Despite this fact, Manufacturer failed to promptly replace the Vehicle or make restitution to

Plaintiff as required by Civil Code sections 1793.2(d) and 1793.1(a)(2) and will continue to fail to promptly do so even after this lawsuit is filed.

28.     Plaintiff has been damaged by Manufacturer's failure to comply with its obligations pursuant to Civil Code sections 1793.2(d) and 1793.1(a)(2), and therefore brings this claim pursuant to Civil Code section 1794.

29.     Civil Code section 1793.2(d) is a statute that imposes strict liability without regard to intent and which is intended to protect the general welfare. Manufacturer and its employees or representatives are persons who are in a position of responsibility which allows them to influence business policies or the activities of the entity Manufacturer in this action. There is a nexus between their position in the entity and the violation alleged here such that they could have influenced the actions which constituted the violations. Their actions or inactions facilitated the violations alleged herein.

30.     Manufacturer's failure to comply with its obligations under Civil Code section 1793.2(d) was willful, in that Manufacturer and/or its representative were aware that they were unable and/or refused to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Manufacturer failed and refused to promptly replace the Vehicle or make restitution despite Plaintiff's demand. Accordingly, Plaintiff is entitled to a civil penalty of up to two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

## FOURTH CAUSE OF ACTION

### Breach of the Implied Warranty of Merchantability, Civil Code § 1794

### (As to Manufacturer and Does 1-75)

31.     Plaintiff incorporates herein each and every allegation set forth above .

32.     In connection with the purchase, Plaintiff received an express written warranty in which Dealer undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Dealer or Dealer's representative and the Vehicle would be repaired.

/ / /

33.     During the warranty period, the Vehicle contained or developed various defects, including but not limited to lights and windows not working properly and the Vehicle not starting.

34.     Pursuant to Civil Code §§ 1791.1 and 1792, the sale of the Vehicle was accompanied by Dealer's implied warranty of merchantability. The duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Dealer.

35.     The implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) the Vehicle will pass without objection in the trade under the contract description; (2) the Vehicle is fit for the ordinary purposes for which such goods are used; (3) the Vehicle is adequately contained, packaged, and labeled; and (4) the Vehicle will conform to the promises or affirmations of fact made on the container or label.

36.     During the time period in which the implied warranty was in effect, the Vehicle contained or developed the defects stated above. The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) was not adequately labeled, and/or (4) does not conform to the promises or affirmations of fact made on the label.

37.     Plaintiff rightfully rejected and/or justifiably revoked acceptance of the Vehicle and has exercised a right to cancel the sale. By serving this Complaint, Plaintiff does so again. Accordingly, Plaintiff seeks the remedies provided in Civil Code section 1794(b)(1), including return of the entire purchase price. In the alternative, Plaintiff seeks the remedies set forth in Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's value is de minimis.

38.     Plaintiff has been damaged by Manufacturer's failure to comply with its obligations under the implied warranty, and therefore brings this claim pursuant to Civil Code § 1794.

39.     Plaintiff is entitled to all incidental and consequential damages resulting from Manufacturer's failure to comply with its obligations under the Song-Beverly Act.

40.     Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

**FIFTH CAUSE OF ACTION**

**Violation of the Magnuson-Moss Warranty Act, 15 USC § 2301 *et seq.***

**(As to Manufacturer and Does 1-75)**

41.     Plaintiff incorporates by reference each and every allegation set forth above.

42.     Plaintiff is a "consumer" as defined in Magnuson Moss Warranty Act ("Mag-Moss"), 15 U.S.C. § 2301(3).

43.     Manufacturer is a "supplier" and "warrantor" as defined in Mag-Moss, 15 U.S.C. § 2301(4) and (5).

44.     The Vehicle is a "consumer product" as defined in Mag-Moss, 15 U.S.C. § 2301(1).

45.     Manufacturer's failure to provide Plaintiff with the Vehicle substantially free of defects, as warranted, constitutes a breach of the express warranties and violation of Mag-Moss.

46.     Plaintiff has provided Manufacturer an opportunity to cure.

47.     Plaintiff is informed and believes Manufacturer is unable to conform the Vehicle to the applicable express warranties. For this reason, Manufacturer's warranties are illusory under Mag-Moss.

48.     Under Mag-Moss, 15 U.S.C. § 2310(d)(1), Plaintiff is entitled to recover damages for Manufacturer's violations of Mag-Moss in an amount to be proven at trial.

49.     Under Mag-Moss, 15 U.S.C. § 2310(d)(2), Plaintiff is also entitled to recover, as part of the judgment, costs, and expenses of the suit, including reasonable attorneys' fees.

**PRAYER FOR RELIEF**

Accordingly, Plaintiff prays for judgment as follows and as permitted as to each cause of action:

1.     for repurchase of the Vehicle in the amount of $55,624.24;

2.     for restitution in the amount of $55,624.24;

3.     for actual damages in the amount of $55,624.24;

4.     for incidental and consequential damages in the amount of $7,500.00;

5.     for civil penalty where available;

6.     for the equitable and injunctive relief permitted under Civil Code § 1794;

7.     for pre-judgment interest at the legal and/or contract rate;

8.    for reasonable attorneys' fees and costs of suit as permitted by law (including, but not limited to, Civil Code § 1794(d), 15 U.S.C. § 2310(d)(2); and

9.    for such other and further relief as the Court deems just and proper under the circumstances.

Dated: June 22, 2023                        AUTO FRAUD LEGAL CENTER LLP


                                            By: _____
                                                 Joseph S. Green
                                                 Attorneys for Plaintiff

---

8

Complaint

# EXHIBIT 2

Soheyl Tahsildoost (Bar No. 271294)
Mehgan Gallagher (Bar No. 338699)
THETA LAW FIRM, LLP
12100 Wilshire Blvd., Suite 1070
Los Angeles, CA 90025
Telephone: (424) 297-3103
Facsimile: (424) 286-2244
eservice@thetafirm.com

Attorneys for Defendant Mercedes-Benz USA, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIA BLOOD, | Case No.: 3:23-cv-01463-WQH-AHG |
| Plaintiff, | **DEFENDANT MERCEDES-BENZ USA, LLC'S F.R.C.P. RULE 68 OFFER** |
| vs. | |
| MERCEDES-BENZ USA, LLC; and DOES 1 through 75, inclusive, | |
| Defendant. | |

TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:

Pursuant to Federal Rules of Civil Procedure, Rule 68, Defendant Mercedes-Benz USA, LLC ("Defendant" or "MBUSA") hereby offers to settle this action in the above-referenced lawsuit relating to Plaintiff's 2019 Mercedes-Benz C300W, VIN 55SWF8DB1KU294191 (hereinafter "Subject Vehicle") on the following terms:

## OPTION 1: REPURCHASE

1. MBUSA will pay the total amount of $71,500.00 (the "Sum") to Plaintiff and Plaintiff's lender for the Subject Vehicle, if any (if there is an outstanding loan on the Subject Vehicle, MBUSA shall pay the lender the amount

necessary to pay off the loan for the Subject Vehicle from the Sum, and Plaintiff shall receive the entire remaining amount).

2.      It is an express condition of this Offer that, if accepted, MBUSA will perform its obligations within 45 days of acceptance on a mutually agreeable date and location, with Plaintiff returning the Subject Vehicle to MBUSA's authorized dealership located at 7300 W Sahara Ave, Las Vegas, NV 89117 and on or before that same date executing all required California Department of Motor Vehicle forms, including but not limited to, DMV Form 262, necessary to transfer title of the Subject Vehicle to MBUSA free and clear of all liens and encumbrances (except for any loan for the purchase or refinance of the Subject Vehicle, which will be paid by MBUSA as stated above), and MBUSA thereafter providing Plaintiff and Plaintiff's lender, if any, with the check or checks necessary to obtain clear title for the Subject Vehicle. It is a further express condition of this Offer that, if accepted, Plaintiff will promptly provide to MBUSA current loan payoff information, payment history, a copy of the current registration of the Subject Vehicle, and a copy of the front and back sides of the Subject Vehicle's title (if available).

**OPTION 2: PAYMENT WITHOUT SURRENDER**

3.      As an alternative to the consideration offered in Paragraphs 1 – 2 (Option 1), in lieu of MBUSA paying Plaintiff the above amounts and Plaintiff surrendering the Subject Vehicle per the above paragraphs, MBUSA will pay the total amount of $25,000.00 to Plaintiff within 45 days of acceptance of this Offer. Plaintiff will not be required to surrender the vehicle to MBUSA under this option.

**OTHER TERMS APPLICABLE TO ALL OPTIONS**

4.      MBUSA will waive its fees, costs, and expenses in this action.

5.      Plaintiff will dismiss this entire action with prejudice.

6.      Defendant will pay Plaintiff's attorney's fees, expenses and costs in the amount of $10,000.00 in full satisfaction of any attorney's fees, expenses and costs owed to Plaintiff and/or Plaintiff's attorneys in this action.  Alternatively, should the

$10,000.00 be refused, Plaintiff may elect to have the Court determine, in a noticed motion and/or by Plaintiff's filing of a bill of costs, the attorney's fees, costs, and expenses recoverable in this case, including whether they are recoverable and the amounts recoverable.  There is no admission of liability by this offer.  However, if this Offer is accepted, Defendant will stipulate that Plaintiff is the prevailing party for purposes of any motion for attorney's fees, expenses and costs and/or bill of costs.

> 7.    This Offer can be accepted by filling out, signing, and serving the acceptance statement on the next page within 14 days after service of this offer or it is deemed withdrawn.  Pursuant to Federal Rules of Civil Procedure, Rule 68, if the judgment finally obtained by the offeree is not more favorable than this Offer, the offeree must pay costs incurred after the Offer was made.

DATED: February 15, 2024    THETA LAW FIRM, LLP



_____
MEHGAN GALLAGHER
Attorney for Defendant Mercedes-Benz
USA, LLC

**[PLEASE SEE NEXT PAGE FOR ACCEPTANCE OF THIS OFFER]**

DEFENDANT MERCEDES-BENZ USA, LLC'S F.R.C.P. RULE 68 OFFER

## FRCP RULE 68 OFFER ACCEPTANCE

I hereby accept the above FRCP Rule 68 Offer made by Defendant Mercedes-Benz USA, LLC by signing below and by selecting one option in each of the following fields (must select one option in each field for valid acceptance).

| FIELD #1 – Option 1 or Option 2 | Choose One |
|---|---|
| On behalf of Plaintiff, I hereby accept the above Federal Rule of Civil Procedure Rule 68 Offer made by Defendant pursuant to paragraphs 1, 2, 4, 5, 6, and 7 above (i.e., Option 1). | X |
| On behalf of Plaintiff, I hereby accept the above Federal Rule of Civil Procedure Rule 68 Offer made by Defendant pursuant to paragraphs 3, 4, 5, 6, and 7 above (i.e., Option 2). | |

**AND**

| FIELD # 2 –Attorney's fees, costs and expenses | Choose One |
|---|---|
| For fees, costs and expenses, I hereby elect to accept $10,000.00 pursuant to paragraph 6. | |
| For fees, costs and expenses, I hereby elect to file a motion and/or a bill of costs pursuant to paragraph 6. | X |

DATED: February 20, 2024

BY: /s/ Gregory T. Babbitt

Josh S. Green, Esq.
AUTO FRAUD LEGAL CENTER LLP
Attorneys for Plaintiff

4

**PROOF OF SERVICE**

I am over the age of 18, not a party to this action, and employed in the county where this mailing occurred. My business address is 12100 Wilshire Blvd., Suite 1070, Los Angeles, CA 90025. My E-service address is: eservice@thetafirm.com. On **February 15, 2024**, I served the following documents described as **DEFENDANT MERCEDES-BENZ USA, LLC'S F.R.C.P. RULE 68 OFFER** as follows:

| |
|---|
| AUTO FRAUD LEGAL CENTER LLP<br>9988 Hibert Street, Suite 150<br>San Diego, California 92131<br>Telephone: (858) 348-1005<br>Facsimile: (858) 348-1150<br>eservice@autofraud.com<br>josh.green@autofraud.com<br>laurag@autofraud.com |

☐ BY MAIL: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with proper postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.

☐ BY PERSONAL SERVICE: I delivered such envelope by hand to the individual(s) listed on the above service list.

☒ BY ELECTRONIC TRANSMISSION: I caused to be electronically transmitted such document referenced above to the individual(s) listed on the above service list.

☐ BY FACSIMILE TRANSMISSION: I transmitted the facsimile to the individual(s) listed on the above service list at the facsimile number listed thereon. The telephone number on the facsimile machine I used is (424) 286-2244.

☐ BY OVERNIGHT DELIVERY: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person at the above-address. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **February 15, 2024** at Los Angeles, California.

_____
Steven Correa

DEFENDANT MERCEDES-BENZ USA, LLC'S F.R.C.P. RULE 68 OFFER

**PROOF OF SERVICE**

*Blood v. Mercedes-Benz, USA, LLC*
Southern District of California Court Case No.: 23-CV-1463-WGH-AHG

I am over the age of 18 and not a party to the action. My business address is 9988 Hibert Street, Suite 150, San Diego, California 92131.

On February 21, 2024, I served the following document(s):

**Defendant Mercedes-Benz USA, LLC's F.R.C.P. Rule 68 Offer – Accepted**

on the parties as follows:

| | |
|---|---|
| Soheyl Tahsildoost, Esq.<br>Mehgan Gallagher, Esq.<br>THETA LAW FIRM, LLP<br>15901 Hawthorne Blvd. Ste. 270<br>Lawndale, CA 90260<br>P: (424) 297-3103 / F: (424) 286-2244<br>*st@thetafirm.com*<br>*mg@thetafirm.com*<br>*eservice@thetafirm.com*<br><br>Attorneys for Defendant MERCEDES-BENZ, USA, LLC | |

[X]    **(BY ELECTRONIC MAIL)**: I transmitted the document(s) via email to the above person(s) as addressed above and did not receive any message indicating an error in the transmission.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Dated: February 21, 2024

*Erika Anguiano*
_____
Erika Anguiano

# EXHIBIT 3

| Date | Team Member | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 1/17/2023 | Laura Turner | Draft Memo re intake | 0.2 | $ 195.00 | $ 39.00 |
| 1/17/2023 | Laura Turner | Review documents from client | 0.2 | $ 195.00 | $ 39.00 |
| 1/18/2023 | Laura Turner | e-mail client | 0.1 | $ 195.00 | $ 19.50 |
| 1/18/2023 | Michael Klitzke | Review case memo | 0.2 | $ 395.00 | $ 79.00 |
| 1/19/2023 | Hawk Barry | draft correspondence to client | 0.1 | $ 695.00 | $ 69.50 |
| 1/25/2023 | Hawk Barry | Telephone Call with client | 0.2 | $ 695.00 | $ 139.00 |
| 1/25/2023 | Hawk Barry | Exchange E-mails with client | 0.1 | $ 695.00 | $ 69.50 |
| 2/13/2023 | Laura Turner | Review e-mail from client | 0.1 | $ 195.00 | $ 19.50 |
| 2/16/2023 | Hawk Barry | Exchange E-mails with client | 0.1 | $ 695.00 | $ 69.50 |
| 3/18/2023 | Greg Babbitt | Draft complaint | 1.5 | $ 610.00 | 915.00 |
| 4/1/2023 | Jeanette Abbenhaus | Draft documents filed with complaint | 0.5 | $ 155.00 | $ 77.50 |
| 4/3/2023 | Greg Babbitt | Review and Edit complaint | 0.2 | $ 610.00 | $ 122.00 |
| 4/3/2023 | Joseph Green | Review/Revise Complaint | 0.6 | $ 550.00 | $ 330.00 |
| 6/11/2023 | Joseph Green | Revise complaint | 0.3 | $ 550.00 | $ 165.00 |
| 6/12/2023 | Greg Babbitt | Conference with attorney JG re complaint details | 0.1 | $ 610.00 | $ 61.00 |
| 6/19/2023 | Joseph Green | Telephone Call with client | 0.5 | $ 550.00 | $ 275.00 |
| 6/20/2023 | Joseph Green | e-mail client | 0.1 | $ 550.00 | $ 55.00 |
| 6/20/2023 | Joseph Green | Revise complaint | 0.4 | $ 550.00 | $ 220.00 |
| 6/22/2023 | Jeanette Abbenhaus | Research addresses from Secretary of State | 0.2 | $ 155.00 | $ 31.00 |
| 6/29/2023 | Joseph Green | e-mail client | 0.1 | $ 550.00 | $ 55.00 |
| 8/10/2023 | Joseph Green | Review Notice of Removal and Accompanying Documents | 0.5 | $ 550.00 | $ 275.00 |
| 8/10/2023 | Joseph Green | e-mail client | 0.1 | $ 550.00 | $ 55.00 |
| 8/11/2023 | Greg Babbitt | Conference with JG re removal | 0.1 | $ 610.00 | $ 61.00 |
| 8/11/2023 | Greg Babbitt | Draft Memo to JG re removal and judges assigned to case | 0.1 | $ 610.00 | $ 61.00 |
| 8/16/2023 | Joseph Green | Legal research re jury demand. | 0.3 | $ 550.00 | $ 165.00 |
| 8/16/2023 | Laura Gaudet | Draft demand for jury trial (Fed) | 0.2 | $ 280.00 | $ 56.00 |
| 8/18/2023 | Joseph Green | revise jury demand. | 0.2 | $ 550.00 | $ 110.00 |
| 8/25/2023 | Joseph Green | Review scheduling order and notice of cmc. | 0.1 | $ 550.00 | $ 55.00 |
| 9/12/2023 | Joseph Green | e-mail defense counsel | 0.1 | $ 550.00 | $ 55.00 |
| 9/12/2023 | Joseph Green | Review scheduling order re upcoming dates, ENE, meet and confer, etc. | 0.2 | $ 550.00 | $ 110.00 |
| 9/18/2023 | Joseph Green | Prepare Rule 26 disclosures | 0.2 | $ 550.00 | $ 110.00 |
| 9/18/2023 | Laura Gaudet | Review and respond to memo from JG re Rule 26 disclosures | 0.1 | $ 280.00 | $ 28.00 |
| 9/19/2023 | Laura Gaudet | Legal research Re FRCP disclosure | 0.4 | $ 280.00 | $ 112.00 |
| 9/19/2023 | Laura Gaudet | Draft FRCP mandatory disclosure | 1.3 | $ 280.00 | $ 364.00 |
| 9/25/2023 | Joseph Green | Prepare Rule 26 disclosures | 0.5 | $ 550.00 | $ 275.00 |
| 9/25/2023 | Laura Gaudet | Review and respond to memo Re out of pocket expenses | 0.1 | $ 280.00 | $ 28.00 |
| 9/26/2023 | Joseph Green | Prepare Rule 26 disclosures | 1.0 | $ 550.00 | $ 550.00 |
| 9/26/2023 | Laura Gaudet | Draft/revise R26 disclosure to include additional photos | 0.1 | $ 280.00 | $ 28.00 |
| 9/26/2023 | Laura Gaudet | Draft Memo Re service of R26 disclosure | 0.1 | $ 280.00 | $ 28.00 |
| 9/26/2023 | Laura Gaudet | review documents from client | 0.2 | $ 280.00 | $ 56.00 |
| 9/26/2023 | Laura Gaudet | Leave voicemail for client | 0.1 | $ 280.00 | $ 28.00 |
| 9/27/2023 | Joseph Green | exchange emails with defense counsel | 0.2 | $ 550.00 | $ 110.00 |
| 10/9/2023 | Greg Babbitt | Review and Edit CMC plan | 0.3 | $ 610.00 | $ 183.00 |
| 10/9/2023 | Joseph Green | e-mail defense counsel re Settlement | 0.1 | $ 550.00 | $ 55.00 |
| 10/9/2023 | Joseph Green | e-mail defense counsel re Draft Joint Case Management Statement | 0.1 | $ 550.00 | $ 55.00 |
| 10/9/2023 | Joseph Green | Plan and prepare for ENE. | 0.1 | $ 550.00 | $ 55.00 |
| 10/9/2023 | Joseph Green | Conference with attorney re joint case management statement. | 0.1 | $ 550.00 | $ 55.00 |
| 10/9/2023 | Joseph Green | Revise ENE Statement | 1.6 | $ 550.00 | $ 880.00 |
| 10/9/2023 | Laura Gaudet | Draft ENE Statement | 1.8 | $ 280.00 | $ 504.00 |
| 10/9/2023 | Laura Gaudet | Draft joint case management statement | 1.9 | $ 280.00 | $ 532.00 |
| 10/9/2023 | Laura Gaudet | Review documents from client | 0.6 | $ 280.00 | $ 168.00 |
| 10/10/2023 | Joseph Green | Prepare Case Management Statement | 0.3 | $ 550.00 | $ 165.00 |
| 10/10/2023 | Laura Gaudet | Telephone Call with client | 0.3 | $ 280.00 | $ 84.00 |
| 10/10/2023 | Laura Gaudet | Draft ENE statement | 0.8 | $ 280.00 | $ 224.00 |
| 10/10/2023 | Laura Gaudet | Draft/revise joint case statement | 0.3 | $ 280.00 | $ 84.00 |
| 10/10/2023 | Laura Gaudet | Review and respond to memo to JG re ENE and communication with Cl | 0.2 | $ 280.00 | $ 56.00 |
| 10/10/2023 | Laura Gaudet | Review defense counsel's edits to joint case report | 0.2 | $ 280.00 | $ 56.00 |
| 10/10/2023 | Laura Gaudet | Draft/revise ENE Statement | 0.9 | $ 280.00 | $ 252.00 |
| 10/10/2023 | Laura Gaudet | e-mail client | 0.1 | $ 280.00 | $ 28.00 |
| 10/11/2023 | Joseph Green | Draft confidential ENE statement. | 1.1 | $ 550.00 | $ 605.00 |
| 10/11/2023 | Laura Gaudet | Draft/revise ENE | 0.9 | $ 280.00 | $ 252.00 |
| 10/11/2023 | Laura Gaudet | Legal research re SB claims/Mag Moss claims | 0.9 | $ 280.00 | $ 252.00 |
| 10/12/2023 | Joseph Green | Conference with LG re status | 0.2 | $ 550.00 | $ 110.00 |
| 10/12/2023 | Joseph Green | Telephone Call with client | 0.4 | $ 550.00 | $ 220.00 |
| 10/12/2023 | Laura Gaudet | Conference with JG re status | 0.2 | $ 280.00 | $ 56.00 |
| 10/12/2023 | Laura Gaudet | Telephone Call with client | 0.4 | $ 280.00 | $ 112.00 |
| 10/12/2023 | Laura Gaudet | Legal research re CACI No. 3240 damages under SB | 0.2 | $ 280.00 | $ 56.00 |
| 10/12/2023 | Laura Gaudet | Draft Correspondence to Client | 0.3 | $ 280.00 | $ 84.00 |
| 10/12/2023 | Laura Gaudet | Draft/revise ENE statement to include additional info on repair issues and mileage deduction | 0.9 | $ 280.00 | $ 252.00 |
| 10/12/2023 | Laura Gaudet | Review e-mail from client | 0.1 | $ 280.00 | $ 28.00 |
| 10/12/2023 | Laura Gaudet | Conference with attorney JG re settlement demand | 0.1 | $ 280.00 | $ 28.00 |
| 10/12/2023 | Laura Gaudet | Draft/revise finalize ENE Statement | 0.3 | $ 280.00 | $ 84.00 |
| 10/12/2023 | Laura Gaudet | Exchange e-mails with Court re participants for ENE | 0.1 | $ 280.00 | $ 28.00 |
| 10/12/2023 | Laura Gaudet | e-mail client | 0.1 | $ 280.00 | $ 28.00 |

| Date | Name | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/12/2023 | Laura Gaudet | Review and respond to memo to JG re payment histroy | 0.1 | $ 280.00 | $ 28.00 |
| 10/12/2023 | Laura Gaudet | e-mail defense counsel re settlement | 0.3 | $ 280.00 | $ 84.00 |
| 10/16/2023 | Joseph Green | Review Correspondence from Judge Goddard's law clerk | 0.1 | $ 550.00 | $ 55.00 |
| 10/16/2023 | Laura Gaudet | Review e-mail from From Court re ENE information | 0.1 | $ 280.00 | $ 28.00 |
| 10/19/2023 | Laura Gaudet | Exchange E-mails with client | 0.3 | $ 280.00 | $ 84.00 |
| 10/20/2023 | Greg Babbitt | Conference with attorney JG re ENE/case strategy | 0.6 | $ 610.00 | $ 366.00 |
| 10/20/2023 | Joseph Green | Attend ENE | 1.7 | $ 550.00 | $ 935.00 |
| 10/20/2023 | Joseph Green | Telephone Call with client | 0.2 | $ 550.00 | $ 110.00 |
| 10/20/2023 | Joseph Green | Prepare for court hearing ENE and CMC | 1.3 | $ 550.00 | $ 715.00 |
| 10/20/2023 | Laura Gaudet | Appear for/attend Attend ENE/CMC | 1.6 | $ 280.00 | $ 448.00 |
| 10/20/2023 | Laura Gaudet | Telephone Call with client | 0.2 | $ 280.00 | $ 56.00 |
| 10/21/2023 | Joseph Green | Review Notice/Order from Court | 0.1 | $ 550.00 | $ 55.00 |
| 11/2/2023 | Laura Gaudet | e-mail client | 0.2 | $ 280.00 | $ 56.00 |
| 11/2/2023 | Laura Gaudet | Conference with GTB re request for new vehicle | 0.1 | $ 280.00 | $ 28.00 |
| 1/30/2024 | Laura Gaudet | Review RFA1, RFP1, and ROGS from Def MBUSA | 0.4 | $ 280.00 | $ 112.00 |
| 1/30/2024 | Laura Gaudet | Review Demand for inspection  property and deposition notice including document requests | 0.3 | $ 280.00 | $ 84.00 |
| 1/31/2024 | Brandon Rodriguez | Drafting of SIN disc. resps. | 0.8 | $ 195.00 | $ 156.00 |
| 1/31/2024 | Brandon Rodriguez | Drafting of letter to client re discovery from MBUSA. | 0.3 | $ 195.00 | $ 58.50 |
| 2/1/2024 | Brandon Rodriguez | exchange emails with court reporter re depo location for MB of Henderson. | 0.1 | $ 195.00 | $ 19.50 |
| 2/1/2024 | Brandon Rodriguez | revise MB Dealer depo subps | 0.5 | $ 195.00 | $ 97.50 |
| 2/1/2024 | Brandon Rodriguez | Preparation of Notice of Depositions | 0.3 | $ 195.00 | $ 58.50 |
| 2/1/2024 | Brandon Rodriguez | email client | 0.1 | $ 195.00 | $ 19.50 |
| 2/1/2024 | Brandon Rodriguez | Further drafting of discovery responses. | 1.4 | $ 195.00 | $ 273.00 |
| 2/1/2024 | Brandon Rodriguez | revise letter to client for GTB | 0.1 | $ 195.00 | $ 19.50 |
| 2/1/2024 | Greg Babbitt | revise depo notices to MB USA | 0.1 | $ 610.00 | $ 61.00 |
| 2/1/2024 | Greg Babbitt | draft subpoena for MB of Henderson | 0.9 | $ 610.00 | $ 549.00 |
| 2/1/2024 | Greg Babbitt | draft subpoena for depo of MB of Escondido | 0.9 | $ 610.00 | $ 549.00 |
| 2/1/2024 | Greg Babbitt | draft depo notice of Brian Marinette | 0.1 | $ 610.00 | $ 61.00 |
| 2/1/2024 | Greg Babbitt | draft depo notice of Kelly Russo | 0.2 | $ 610.00 | $ 122.00 |
| 2/1/2024 | Greg Babbitt | legal research re Federal Court depos | 0.5 | $ 610.00 | $ 305.00 |
| 2/1/2024 | Greg Babbitt | draft MB USA Corp Rep Depo notice | 1.1 | $ 610.00 | $ 671.00 |
| 2/1/2024 | Greg Babbitt | prepare discovery plan | 0.9 | $ 610.00 | $ 549.00 |
| 2/1/2024 | Greg Babbitt | draft memo to LG re trial date and discovery | 0.1 | $ 610.00 | $ 61.00 |
| 2/1/2024 | Greg Babbitt | revise letter to client re discovery requests | 0.2 | $ 610.00 | $ 122.00 |
| 2/1/2024 | Laura Gaudet | Review documents produced by MB USA | 0.6 | $ 280.00 | $ 168.00 |
| 2/1/2024 | Laura Gaudet | Review subpoenas to Mercedes of Escondido and Henderson, draft memo to BR re same | 0.3 | $ 280.00 | $ 84.00 |
| 2/1/2024 | Laura Gaudet | review depo subpoenas and draft memo to BR re same | 0.2 | $ 280.00 | $ 56.00 |
| 2/1/2024 | Laura Gaudet | Review scheduling order, draft memo to GTB re same | 0.1 | $ 280.00 | $ 28.00 |
| 2/2/2024 | Brandon Rodriguez | draft memo to LG re status of depo notices | 0.2 | $ 195.00 | $ 39.00 |
| 2/2/2024 | Brandon Rodriguez | email defense counsel re service of depo notices | 0.1 | $ 195.00 | $ 19.50 |
| 2/2/2024 | Brandon Rodriguez | revise depo notices and subpoenas | 0.5 | $ 195.00 | $ 97.50 |
| 2/2/2024 | Brandon Rodriguez | exchange emails with court reporter re depositions | 0.2 | $ 195.00 | $ 39.00 |
| 2/2/2024 | Brandon Rodriguez | draft RFP responses | 0.5 | $ 195.00 | $ 97.50 |
| 2/2/2024 | Brandon Rodriguez | review email from client | 0.1 | $ 195.00 | $ 19.50 |
| 2/2/2024 | Greg Babbitt | revise subpoenas | 0.1 | $ 610.00 | $ 61.00 |
| 2/2/2024 | Laura Gaudet | Review repair orders produced by defendant, c/f repair orders from client | 0.8 | $ 280.00 | $ 224.00 |
| 2/2/2024 | Laura Gaudet | conference with BR re service of subpoenas on MB henderson | 0.2 | $ 280.00 | $ 56.00 |
| 2/5/2024 | Brandon Rodriguez | exchange emails with Advanced re serivce of depo subps to MB of Escondido and MB Henderson. | 0.2 | $ 195.00 | $ 39.00 |
| 2/5/2024 | Brandon Rodriguez | draft Personal service Instruction form for MB Escondido and MB Henderson. | 0.2 | $ 195.00 | $ 39.00 |
| 2/5/2024 | Brandon Rodriguez | email defense counsel re service of Depo Subp to MB Escondido and Henderson | 0.1 | $ 195.00 | $ 19.50 |
| 2/5/2024 | Laura Gaudet | Research re MB of Escondido FBM for service of depo notice | 0.3 | $ 280.00 | $ 84.00 |
| 2/6/2024 | Greg Babbitt | review settlement offer and discuss with LG | 0.2 | $ 610.00 | $ 122.00 |
| 2/6/2024 | Laura Gaudet | telephone call with client | 0.2 | $ 280.00 | $ 56.00 |
| 2/6/2024 | Laura Gaudet | Confer with GTB re status | 0.1 | $ 280.00 | $ 28.00 |
| 2/6/2024 | Laura Gaudet | Review R68 offer from defense, send to client for review | 1.3 | $ 280.00 | $ 364.00 |
| 2/7/2024 | Laura Gaudet | Calculate damages and damage spreadsheet; draft correspondence to client re same | 0.7 | $ 280.00 | $ 196.00 |
| 2/8/2024 | Laura Gaudet | Prepare for call with client 2/9 | 0.1 | $ 280.00 | $ 28.00 |
| 2/9/2024 | Brandon Rodriguez | review email from Advanced re summary of service of depo subp to Henderson MB dealer | 0.1 | $ 195.00 | $ 19.50 |
| 2/9/2024 | Brandon Rodriguez | review email from Advanced re summary of service of depo subp to Escondido MB dealer | 0.1 | $ 195.00 | $ 19.50 |
| 2/9/2024 | Greg Babbitt | multiple calls with client | 0.6 | $ 610.00 | $ 366.00 |
| 2/9/2024 | Laura Gaudet | draft and send settlement demand to defense counsel | 0.3 | $ 280.00 | $ 84.00 |
| 2/9/2024 | Laura Gaudet | phone conf with client and GTB | 0.5 | $ 280.00 | $ 140.00 |
| 2/12/2024 | Greg Babbitt | conference with LG re counter offer for settlement | 0.1 | $ 610.00 | $ 61.00 |
| 2/12/2024 | Greg Babbitt | review email from DC re settlement counter offer | 0.1 | $ 610.00 | $ 61.00 |
| 2/12/2024 | Laura Gaudet | exchange multiple emails with client | 0.5 | $ 280.00 | $ 140.00 |
| 2/13/2024 | Laura Gaudet | draft updated demand and send to defense counsel | 0.2 | $ 280.00 | $ 56.00 |
| 2/13/2024 | Laura Gaudet | telephone call with client | 0.1 | $ 280.00 | $ 28.00 |
| 2/14/2024 | Hawk Barry | review memo from LG re fee motion | 0.1 | $ 695.00 | $ 69.50 |
| 2/14/2024 | Laura Gaudet | Research re Notice of Settlement and effect on motion for fees re Rule 68 offer from MBUSA | 2.2 | $ 280.00 | $ 616.00 |
| 2/14/2024 | Laura Gaudet | Email Defense Counsel re accept offer, request revision of R 68 offer for signature | 0.1 | $ 280.00 | $ 28.00 |
| 2/14/2024 | Laura Gaudet | exchange multiple emails with client re settlement | 0.5 | $ 280.00 | $ 140.00 |
| 2/14/2024 | Laura Gaudet | Telephone call with client | 0.2 | $ 280.00 | $ 56.00 |
| 2/15/2024 | Brandon Rodriguez | email court reporter re cancellation of all depos due to settlement. | 0.1 | $ 195.00 | $ 19.50 |
| 2/15/2024 | Greg Babbitt | revise notice of settlement | 0.1 | $ 610.00 | $ 61.00 |
| 2/15/2024 | Greg Babbitt | review memo from LG re notice of settlement | 0.1 | $ 610.00 | $ 61.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|------|-----------|-------------|-------|------|--------|
| 2/15/2024 | Laura Gaudet | review revised offer | 0.1 | $ 280.00 | $ 28.00 |
| 2/15/2024 | Laura Gaudet | Draft Joint NOS | 0.5 | $ 280.00 | $ 140.00 |
| 2/20/2024 | Greg Babbitt | review DC's edits to joint notice of settlement | 0.1 | $ 610.00 | $ 61.00 |
| 2/20/2024 | Laura Gaudet | Review OC revisions to joint NOS, email OC re Joint notice and requested documents | 0.4 | $ 280.00 | $ 112.00 |
| 2/20/2024 | Laura Gaudet | email defense counsel re joint notice of settlement | 0.1 | $ 280.00 | $ 28.00 |
| 2/21/2024 | Greg Babbitt | review order from court re notice of settlement | 0.1 | $ 610.00 | $ 61.00 |
| 2/22/2024 | Laura Gaudet | telephone call with client | 0.2 | $ 280.00 | $ 56.00 |
| 2/22/2024 | Laura Gaudet | review notice re setting of settlement deposition conference | 0.1 | $ 280.00 | $ 28.00 |
| 2/22/2024 | Laura Gaudet | leave voicemail for client | 0.1 | $ 280.00 | $ 28.00 |
| 2/22/2024 | Laura Gaudet | Receive and review registration from client, send to defense counsel per defense counsel request | 0.1 | $ 280.00 | $ 28.00 |
| 2/22/2024 | Laura Gaudet | e-mail client | 0.1 | $ 280.00 | $ 28.00 |
| 3/19/2024 | Laura Gaudet | exchange emails with client | 0.1 | $ 280.00 | $ 28.00 |
| 3/19/2024 | Laura Gaudet | email defense counsel re status of settlement check and vehicle surrender per Rule 68 deadlines | 0.1 | $ 280.00 | $ 28.00 |
| 3/24/2024 | Greg Babbitt | review and respond to email from Sedgwick re return of the vehicle and payment | 0.2 | $ 610.00 | $ 122.00 |
| 3/24/2024 | Hawk Barry | review email from Sedgwick to Hai re turn in; forward to GTB | 0.1 | $ 695.00 | $ 69.50 |
| 3/25/2024 | Laura Gaudet | review email from defense counsel re settlement logistics, vehicle surrender checklist | 0.2 | $ 280.00 | $ 56.00 |
| 4/10/2024 | Greg Babbitt | review and respond t memo from LG re payment late | 0.1 | $ 610.00 | $ 61.00 |
| 4/11/2024 | Laura Gaudet | Call with client | 0.1 | $ 280.00 | $ 28.00 |
| 4/11/2024 | Laura Gaudet | exchange emails with client | 0.1 | $ 280.00 | $ 28.00 |
| 4/11/2024 | Laura Gaudet | email defense counsel regarding MBUSA failure to perform within 45 days | 0.2 | $ 280.00 | $ 56.00 |
| 4/15/2024 | Hawk Barry | review email from Sedgwick | 0.1 | $ 695.00 | $ 69.50 |
| 4/22/2024 | Greg Babbitt | draft memo to LG re fees and costs demand | 0.1 | $ 610.00 | $ 61.00 |
| 4/22/2024 | Greg Babbitt | draft memo to CPB re fees and costs | 0.1 | $ 610.00 | $ 61.00 |
| 4/22/2024 | Hawk Barry | review/respond to memo from GTB re settling fees | 0.1 | $ 695.00 | $ 69.50 |
| 4/29/2024 | Laura Gaudet | send demand for fees and costs to defense counsel | 0.1 | $ 280.00 | $ 28.00 |
| 5/2/2024 | Laura Gaudet | review e-mail from client | 0.1 | $ 280.00 | $ 28.00 |
| 5/6/2024 | Laura Gaudet | draft memo to GTB and CPB re informal settlement of fees and costs, notification to Court re motion | 0.2 | $ 280.00 | $ 56.00 |
| 5/6/2024 | Laura Gaudet | email defense counsel re last day to settle fees and costs | 0.1 | $ 280.00 | $ 28.00 |
| 5/9/2024 | Laura Gaudet | check status of communication with OC re settlement of fees, draft memo to GTB and CPB re same. | 0.1 | $ 280.00 | $ 28.00 |
| 5/10/2024 | Greg Babbitt | draft memo to LG re Joint status report | 0.1 | $ 610.00 | $ 61.00 |
| 5/13/2024 | Laura Gaudet | draft joint update re settlement | 0.6 | $ 280.00 | $ 168.00 |
| 5/14/2024 | Greg Babbitt | revise joint status report to the magistrate | 0.2 | $ 610.00 | $ 122.00 |
| 5/14/2024 | Laura Gaudet | revise jonit update and send to defense counsel | 0.2 | $ 280.00 | $ 56.00 |
| 5/16/2024 | Greg Babbitt | review fee offer from defense counsel | 0.1 | $ 610.00 | $ 61.00 |
| 5/17/2024 | Laura Gaudet | exchange emails with defense counsel re settlement of fees, revisions to joint update to the Court | 0.1 | $ 280.00 | $ 28.00 |
| 5/20/2024 | Greg Babbitt | review/respond to memo from LG re joint status report | 0.1 | $ 610.00 | $ 61.00 |
| 5/20/2024 | Laura Gaudet | finalize joint update, send to Court | 0.3 | $ 280.00 | $ 84.00 |
| 5/21/2024 | Greg Babbitt | review order from court re settlement disposition conference | 0.1 | $ 610.00 | $ 61.00 |
| 5/21/2024 | Laura Gaudet | review Order to continuance of hearing re  settlement | 0.1 | $ 280.00 | $ 28.00 |
| 6/6/2024 | Greg Babbitt | draft memo to LG re fees and costs settlement and meeting with the court re settlement disposition | 0.1 | $ 610.00 | $ 61.00 |
| 6/10/2024 | Laura Gaudet | draft memo to CPB re settlement of fees, negotiations with OC and status conference | 0.1 | $ 280.00 | $ 28.00 |
| 6/11/2024 | Greg Babbitt | review/respond to memo from LG re demand to defense counsel re settlement of fees and costs | 0.1 | $ 610.00 | $ 61.00 |
| 6/11/2024 | Hawk Barry | review fee bill to send breakdown of demand to defense counsel | 0.2 | $ 695.00 | $ 139.00 |
| 6/11/2024 | Laura Gaudet | Review email from OC re request for billing entries | 0.1 | $ 280.00 | $ 28.00 |
| 6/11/2024 | Laura Gaudet | send updated fee demand to OC for MBUSA | 0.1 | $ 280.00 | $ 28.00 |
| 6/11/2024 | Laura Gaudet | Review settlement negotiations re fees, draft email to OC re updated demand, review memo from CPB | 0.4 | $ 280.00 | $ 112.00 |
| 6/17/2024 | Greg Babbitt | revise joint statement | 0.1 | $ 610.00 | $ 61.00 |
| 6/17/2024 | Laura Gaudet | draft joint update re settlement of attorneys fees/costs | 0.2 | $ 280.00 | $ 56.00 |
| 7/3/2024 | Hawk Barry | review fee bill for submission with motion | 0.6 | $ 695.00 | $ 417.00 |
| 7/8/2024 | Greg Babbitt | draft fee motion | 3.6 | $ 610.00 | $ 2,196.00 |
| | **LODESTAR** | | **69.0** | **$ 400.12** | **$ 27,608.00** |

# EXHIBIT 4

# UNITED STATES CONSUMER LAW PRACTICE & ATTORNEY FEE SURVEY REPORT

# 2023
# California Metro Edition





**Ronald L. Burdge, Esq.**

**United States Consumer Law Practice
& Attorney Fee Survey Report
2023 California Metro Edition**

Survey Conducted By
and
Survey Report Authored By

Ronald L. Burdge, Esq.
Burdge Law Office Co. L.A.
8250 Washington Village Drive
Dayton, OH 45458-1850
Voice: 937.432.9500
Fax: 937.432.9503

Email: Ron@BurdgeLaw.com



Attribution, No Derivs
CC-BY-ND

This material is licensed under a Creative Commons Attribution-No Derivatives 4.0 International License. This copyright license allows for redistribution, commercial and non-commercial use, as long as all quoted and selected contents are passed along unchanged and with credit to the publication and author. This means you are free to copy and redistribute the material in any medium or format for any purpose, even commercially as long as you make no content changes and provide proper attribution to the author. Further explanation is found at www.creativecommons.org.

Copyright © 2023 by R.L.Burdge
August 1, 2023

This publication contains the results of proprietary research and work.

This publication was created to provide accurate and authoritative information concerning the subject matter covered. The publisher and author are not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney or expert. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

# Acknowledgments

This work is dedicated to the private and public practice members of the Consumer Law bar and the Judicial officers who decide Consumer Law disputes and cases across the United States and its territories, all of whom tirelessly dedicate their careers to helping people find Justice every day in our legal system. Without their support and participation, the research for this publication would not have been possible.

I am grateful to the members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys, the many friends and supporters of the National Consumer Law Center, the Consumer Attorneys of LA, and to the Consumer Law bar who participated in the research that formed the foundation of this Survey Report. They are the men and women who make Justice work every day.

A special thanks is extended to Robert Brennan, Scott Kaufman, Rosemary Shahan, Ira Rheingold, Richard Dubois, Jon Sheldon, Willard Ogburn, Charles Delbaum, Robert Murphy, Robert Hobbs, Edward Boltz, and many, many others for their constant encouragement of this project, advice and assistance since the survey began in 1999. The support, suggestions and comments from countless others over the years have contributed greatly to the result before you.

Finally, no words could adequately express my thanks to my wife Linda, who guided, supported and encouraged me every day for the decades throughout this work. I could not do what I do, and I would accomplish nothing without her.

Ronald L. Burdge, Esq.
August 1, 2023

This Survey Report is available as a free pdf download
from this web site:
www.AttorneyFeeStudy.com


This Survey Report is also available as a free pdf download
from the web site accessed via any QR reader with this image:

## Summary of Contents

1. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

2. Summary Profile of the Typical California Consumer Law Attorney . . . . . . . .  27

3. California Metropolitan Statistical Area Tables . . . . . . . . . . . . . . . . . . . . . . . . .  68

4. California Database Count. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  118

5. Evolving Data Analyses and Methodologies of Prior Survey Report Editions
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  120

6. California State and Federal Court Cases Using Survey Report . . . . . . . . . . .  126

7. Court of Federal Claims and Government Departments Citing Survey Report
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  141

8. Arbitration Decisions and State Publications Citing Survey Report  . . . . . . .  147

9. Law Reviews and Secondary Materials Citing Survey Report Citing Survey
Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  148

10. Expert Opinions Citing *Survey Report*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  151

11. Publications, Articles, News Reports Citing Survey Report . . . . . . . . . . . . . .  154

12. California Cases Not Using Survey Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  159

13. Cases on Use of Surveys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  167

14. About the Editor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  171

15. Recommendations for Future Survey Data . . . . . . . . . . . . . . . . . . . . . . . . . . . .  172

Appendix 1. 2022 Survey Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  173

Appendix 2.  Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  181

## Table of Contents

1. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
   1.1 Methods to Update Survey Results from 2023 to a Future Date . . . . . .  3
   1.2 Goals of Survey Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
   1.3 What's New . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
   1.4 Survey Report Sections Explained  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
   1.5 Characteristics of Consumer Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
   1.6 Niche Areas in the Field of Consumer Law Defined . . . . . . . . . . . . . .  8
   1.7 Geographic Areas Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
   1.8 Safeguarding Against Biased Data by Use of Median Calculations. . .  10
   1.9 Safeguarding Against Biased Data by Source Analysis Methodology
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
   1.10 Safeguarding Against Biased Data by Testing Survey Hourly rate
      Results with and without Bankruptcy and Class Action Data . . . .  13
   1.11 Safeguarding Against Biased Data by Testing Voluntary Individual
      Data Against Actual Fee Decisions . . . . . . . . . . . . . . . . . . . . . . . . .  15
   1.12 Safeguarding Against Biased Data by Eliminating Outlier Data . . . .  16
   1.13 Interpreting the Findings: Primary and Minor Variable Factors. . . .  17
   1.14 Standard Survey Techniques Implemented . . . . . . . . . . . . . . . . . . . . .  19
   1.15 Standard Survey Design Methodologies Implemented. . . . . . . . . . . .  20
   1.16 Standard Data Gathering Methodologies Implemented. . . . . . . . . . .  21
   1.17 Standard Web-based Survey System Methodologies Implemented
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
   1.18 Standard Data Analysis Methodology Implemented  . . . . . . . . . . . . .  23
   1.19 Peer Review of Methodologies and Survey Analyses. . . . . . . . . . . . .  24
   1.20 Error Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
   1.21 Section 508 Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

2. Summary Profile of the Typical California Consumer Law Attorney . . . . . . .  27
   2.1 Attorney Position in California Law Firm  . . . . . . . . . . . . . . . . . . . . . .  28
   2.2 California Law Firm Size . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
   2.3 California Attorney Hourly Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30
   2.4 California Large Law Firm Hourly Rates. . . . . . . . . . . . . . . . . . . . . . . .  31
   2.5 California Small Law Firm Hourly Rates. . . . . . . . . . . . . . . . . . . . . . . .  32
   2.6 California Years in Practice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33
   2.7 California Percentage of Time Devoted to Consumer Law Matters . .  34
   2.8 California Primary Practice Area of Law . . . . . . . . . . . . . . . . . . . . . . .  35
   2.9 California Secondary Area of Law Practice . . . . . . . . . . . . . . . . . . . . .  36
   2.10 California Specific Niche Areas of Consumer Law Practice. . . . . . . .  37
   2.11 California Frequency of Change in Hourly Rate . . . . . . . . . . . . . . . . .  38
   2.12. California Geographical Practice Area: Metro, Non-metro or Both?
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39
   2.13 California Metropolitan-only Practice, Hourly Rates. . . . . . . . . . . . .  40
   2.14 California Both Metropolitan and Non-Metropolitan Practice, Hourly
      Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41
   2.15 California Non-Metropolitan-Only Practice, Hourly Rates . . . . . . . .  42
   2.16 California Gender & Hours  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

2.17 California Hourly Rates by Gender: Male . . . . . . . . . . . . . . . . . . . . . . . 44
2.18 California Hourly Rates by Gender: Female . . . . . . . . . . . . . . . . . . . 45
2.19 California Hourly Rates by Gender, Hours Worked: Female, More
      than 29 Hours/Week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
2.20 California Hourly Rates by Gender, Hours Worked: Male, More than
      29 Hours/Week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
2.21 California Hourly Rates by Gender, Hours Worked: Male, Less than
      30 Hours/Week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
2.22 California Hourly Rates by Reputation Factor: Martindale Hubbell
      AV-BV Rating. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
2.23 California Hourly Rates by Reputational Factor: SuperLawyer or
      Rising Star Rating . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
2.24 California Hourly Rates by Reputational Factor: AVVO 7+ Rating
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
2.25 California Hourly Rates by Reputational Factor: 25+ Trials as First
      Chair . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
2.26 Hourly Rates by Reputational Factor: CLE Speaking Engagements
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
2.27 Hourly Rates by Reputational Factor: Authorship Status . . . . . . . . . 60
2.28 Hourly Rates by Combined Reputational Factor . . . . . . . . . . . . . . . . 62
2.29 Paralegal, Law Clerk, Legal Assistant Support: Quantity . . . . . . . . . 66
2.30 Paralegal, Law Clerk, Legal Assistant Support: Hourly Rate . . . . . . 67

3. California Metropolitan Statistical Area Tables . . . . . . . . . . . . . . . . . . . . . . . . 68
      3.1 Explanation of Metro Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
      3.2 California, Bakersfield . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
            Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
      3.3 California, Chico . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
            Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
      3.4 California, Eastern Sierra Region . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
      3.5 California, El Centro . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
            Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79
      3.6 California, Eureka - McKinleyville . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
            Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
      3.7 California, Fresno - Madera . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
            Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
      3.8 California, Irvine - Santa Ana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
            Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
            Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
      3.9 California, Los Angeles - Long Beach - Anaheim . . . . . . . . . . . . . . . . 86

Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
3.10 California, Modesto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
3.11 California, Mother Lode Region . . . . . . . . . . . . . . . . . . . . . . . . . . . 90
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
3.12 California, Northern Mountain Region . . . . . . . . . . . . . . . . . . . . . . . 92
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
3.13 California, North Valley Region . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95
3.14 California, Oakland - Hayward - Berkeley . . . . . . . . . . . . . . . . . . . . 96
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
3.15 California, Oxnard - Thousand Oaks - Ventura . . . . . . . . . . . . . . . . . 98
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
3.16 California, Pasadena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
3.17 California, Redding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103
3.18 California, Riverside - San Bernardino - Ontario . . . . . . . . . . . . . . 104
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
3.19 California, Sacramento - Roseville - Arden - Arcade . . . . . . . . . . . . 106
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
3.20 California, San Diego - Chula Vista - Carlsbad . . . . . . . . . . . . . . . . 108
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
3.21 California, San Francisco - South San Francisco . . . . . . . . . . . . . . . 110
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111
3.22 California, San Jose - Sunnyvale - Santa Clara . . . . . . . . . . . . . . . . 112
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113
3.23 California, San Luis Obispo - Paso Robles . . . . . . . . . . . . . . . . . . . 114
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115
3.24 California, Stockton - Lodi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
Median Rate for Practice Areas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
Experience Variable Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

4. California Database Count. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

5. Evolving Data Analyses and Methodologies of Prior Survey Report Editions
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
    5.1 A Word About Citation Practice and Supplemental Case Information
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
    5.2 Significant California Decisions Discussing Use of these Survey
        Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122

6. California State and Federal Court Cases Using Survey Report . . . . . . . . . . . 124

7. Court of Federal Claims and Government Departments Citing Survey Report
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139
    7.1 U.S. Court of Federal Claims, Office of Special Masters . . . . . . . . . . . 139
    7.2 U.S. Department of Justice Office of Immigration Review . . . . . . . . 139
    7.3 U.S. Department of Labor Benefit Review Board Office of
        Administrative Law Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139
    7.4 U.S. Department of Labor Benefit Review Board . . . . . . . . . . . . . . . 142

8. Arbitration Decisions and State Publications Citing Survey Report . . . . . . . 145
    8.1 American Arbitration Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145
    8.2 Commonwealth of Virginia Orders Judicial Council of Virginia . . . . 145

9. Law Reviews and Secondary Materials Citing Survey Report Citing Survey
    Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146

10. Expert Opinions Citing *Survey Report* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 149

11. Publications, Articles, News Reports Citing Survey Report . . . . . . . . . . . . . 152

12. California Cases Not Using Survey Report. . . . . . . . . . . . . . . . . . . . . . . . . . . 157

13. Cases on Use of Surveys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165

14. About the Editor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 169

15. Recommendations for Future Survey Data . . . . . . . . . . . . . . . . . . . . . . . . . . 170

Appendix 1. 2022 Survey Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171

Appendix 2.  Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 177

1. Introduction

Now in the 24th year of this research work, this 2023 California Metro Edition, of the United States Consumer Law Practice & Attorney Fee Survey Report 2023, publishes the state of California Metropolitan Statistical Area results of the national 2023 United States Consumer Law Practice & Attorney Fee Survey.

This Survey Report is the only survey of both actual contested case attorney fee decisions and of practicing attorneys in the field of Consumer Law in the United States and is the only Consumer Law survey whose methodologies have been independently peer reviewed since 2015 by the National Association of Legal Fee Analysis, the nation's premier non-profit professional national association of attorney fee experts in the field of legal fee analysis.

The California database upon which this 2023 California Survey Report is based was taken from the national 2023 Survey Report's national database after that survey was closed, and is the basis upon which all of this Survey Report's calculations were made, and is at the foundation of this 2023 California Survey Report.

The California data which was separated from the national survey database includes only that data for attorneys who practiced law in California. The California-only database was then analyzed to produce the analyses that are reported in this 2023 California Survey Report.

The national Survey Report's database resulted from combining two datasets. Each of these datasets separately contained data which was gathered for the purpose of conducting the Survey Report analyses.

The larger, first dataset consisted of detailed data that was carefully drawn by the author from 1,179 attorney fee decisions made in contested judicial and nonjudicial, i.e. administrative law, cases in California and across the country, as reported by Lexis, Westlaw, Decisis, Fastcase, and CourtListener. Each of these cases involved disputed consumer rights and all of these cases were released after January 1, 2020. This group of 1,179 disputed attorney fee decisions contained 1,614 individual attorney fee decisions and is collectively called the Case Decisions Dataset in this report.

The Case Decisions Dataset is 59.14% of the total 2023 Survey Report's database. The remaining 40.86% came from individual voluntary survey participation.

The smaller, second dataset was 40.86% of the total 2023 Survey Report's database. It consisted of detailed data that was input to the Survey database by 1,115 voluntary individual survey participants who each took the survey between 2020 and 2022 when the survey was closed. This portion of the total survey database is referred to herein as the Individual Participant Dataset and is consists of responses given to the online survey after invitations to participate were sent to about 4,500 attorneys who were members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys.

These 1,115 participating attorneys reported data for themselves and 2,078 Paralegals. From the surveyed pool of attorneys (4,500) there were 1,115 responses, establishing a robust 24.7% participation rate. A recent internet search for similar state bar association surveys located 6 recent surveys with an average participation rate of 6.35%,[1] only about 1/4th the participation level achieved by the national Survey.

Published since 1999, the national Consumer Law Survey Reports have been used by judges in deciding attorney fee issues in 324 contested judicial and nonjudicial decisions nationwide, including California state and federal courts and numerous other courts across the United States, in Puerto Rico and the U.S. Virgin Islands, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates. The results this year continue the trend of being the most comprehensive since our continuous research work began in 1999.

---

[1] A March 2023 Google search of the term "Economics of Law Practice Survey," a common title for many bar association surveys, resulted in survey reports with participation rates that could be compared to state attorney totals as follows: Colorado (6.7%), Florida (less than 1% of membership), Michigan 10.5%), Missouri (7%), Mississippi (6.3%), Colorado (6.7%).

1.1 Methods to Update Survey Results from 2023 to a Future Date

Because the survey was closed at the end of 2022, the hourly rates and other data reported represent values at that time. The reader may find some minor adjustment necessary or desirable for consideration of a later dated fee motion or application. Courts[2]  have at times used percentage increases derived from the U.S. Census Consumer Price Index[3]  to adjust rates to current, updated levels.

1.2 Goals of Survey Report

The primary goals of this research project have been and continue to be to:

- provide timely, relevant and accurate data benchmarks and information to inform and guide practical, management, and planning decisions by Consumer Law attorneys and firms,
- better understand the demographics of Consumer Law attorneys and their practice
- monitor and document general and key trends in the Consumer Law field of the legal profession in California, based on California portions of previous and present survey research and analysis
- understand how attorney compensation (e.g., hourly rate) is impacted by common variable factors (e.g., years in practice, niche area of practice, experience level, geographic location, and more)
- collect thorough and accurate information on the economic realities associated with the career field of Consumer Law in California to share with the bar and bench
- create a point of reference for future economic surveys of California Consumer Law practitioners

---

[2] *Barnard v. Berryhill*, 2019 U.S. Dist. LEXIS 38671 (D.C. N.D. E. D. Ohio, Mar. 11, 2019); *United States Postal Serv. Fed. Credit Union v. Edwin*, 2018 U.S. Dist. LEXIS 31532, 2018 WL 1077291 (D. Virgin Islands, St. Croix Div., Feb. 27, 2018).

[3] *See* CPI Inflation Calculator, available at https://www.bls.gov/data/inflation_calculator.htm (Last visited July 20, 2023).

1.3 What's New

A.      A number of beneficial changes in format and content are introduced with
the national edition of the 2023 Survey Report which have been carried over into
this California Metro Edition. These changes are intended to make locating,
understanding and using the Survey Report information easier for the reader, the
bench and the bar. This section provides a central point where changes are
highlighted and explained.

B.      A comparison was made between the hourly rates actually awarded in
contested attorney fee disputes reported by judicial and nonjudicial decisions
While court decisions and the actual awarded/paid hourly rates that were
voluntarily reported in the survey by individual attorneys to see if how much
difference there might be to rates decided by courts and comparable rates
voluntarily reported by survey participants. The results are discussed below[4] and
show that there is no substantial difference at all. This indicates that voluntary
participants in the survey are reporting hourly rates that are in line with actual
attorney fee decisions being made in judicial and non-judicial decisions.

C.      A substantial increase in survey data occurred for this Survey Report,
mostly from actual judicial and nonjudicial fee decisions, enabling this California
Survey Report to cover virtually every Metropolitan Statistical Area in California,
providing data on all 23 major Metropolitan Statistical Areas in California and
every California federal courthouse metro area, which together encompass over
92% of the entire population of California.
*
D.      The addition of gender data now results in reporting on the hourly rates by
gender. Part time or full time work is now measured with 30 hours per week
being the breaking point between the two, enabling hourly rates for each to be
examined.

E.      The Table of Authorities has been updated to July 3, 2023 and expanded
with additional case citations that provides a convenient alphabetical listing of
California cases and authorities cited in this Survey Report.

---

[4]  See 1.15 Safeguarding Against Biased Data by Testing Voluntary
Individual Data Against Actual Fee Decisions, herein.

F.    A Reputation Impact Calculation now exists for each Metropolitan Statistical Area. There are 6 reputational factors examined in the Survey Report, beginning with the attorney Martindale Hubbell rating and concluding with an analysis of the combination of reputation factors. The percentage impact on the otherwise median hourly rate is measured and reported.

### 1.4 Survey Report Sections Explained

Section 1 of the 2023 California Report provides general information relating to the survey and its analyses, processes, methodologies, and explanations.

Section 2 contains the Summary Profile of the Typical California Consumer Law Attorney, a collective approach to the entire California survey results which yields a general picture of key aspects of the typical California Consumer Law practitioner. It is based on the California survey results as a whole and may serve as a benchmark for key performance indicators that may provide data-driven practice strategies to help law firms improve their performance in the legal services marketplace.

Section 3 contains data for the Metropolitan Statistical Area tables for California's 23 Metropolitan Statistical Areas covering 92% of California's population, and providing a more detailed view of data specific to each Area.

Section 4 contains the raw database count for each of California's 23 Metropolitan Statistical Areas.

Section 5 explains how the Survey Report methodologies have evolved in the last 23 years of this work to address perceived deficiencies noted by the Bench and Bar and commentators over the years.

Section 6 provides citation to California state and federal court cases that have dealt with the actual use of survey report data in court proceedings such as fee hearings, with citations and awarded numbers.

Section 7 provides citation to specialized courts and government department cases that have used the survey report.

Section 8 provides citation to arbitration decisions and state publications citing the survey report.

Section 9 provides a list of Law Reviews and secondary materials citing the Survey Report.

Section 10 provides citations to expert opinions citing the Survey Report authored by other expert witnesses on fee issues.

Section 11 provides a list of publications citing the survey report.

Section 12 provides citations to California cases discussing but not using the survey report along with the editor's analysis of changes made in the survey to address the stated issue.

Section 13 provides citations to cases regarding the use of Surveys in general.

Section 14 provides an About the Editor discussion.

Section 15 provides contact information for the reader's recommendations for future survey data gathering or other suggestion.

The Appendices contain supporting material to enable the reader to better understand the survey and this Survey Report, including the actual survey questions and possible answers for each, a peer review statement, and more.

To easily locate any specific case cited in this Survey Report, consult the Table of Authorities in Appendix 4.


## 1.5 Characteristics of Consumer Law

As a field of law, Consumer Law has some characteristics of the practice that can be identified and they may include, but are not necessarily limited to:

•    the types of cases may be unique niche areas of practice that are not

commonly known to or understood by most attorneys,

- the types of cases involve disputes arising under narrow, sometimes arcane and highly nuanced statutes dealing with specialized commercial practices that are not commonly known to or understood by most attorneys,
- very few law schools have courses covering these areas of law, and consequently these areas of law are not generally known to or understood by most attorneys,
- there are professional associations dedicated to this filed of law and these types of cases that are not well known in the legal profession and often virtually unknown to the public,
- these types of cases involve laws that are often uniquely technical and may involve complex questions of law and disputed fact,
- there are often presumptions that can arise in some types of cases,
- very few legal publications address the issues and disputes that exist in this field of law
- knowledge and intent are frequently not elements of a claim for relief in this field of law, i.e., what is often thought of generically as "consumer fraud" is not a claim for relief under most Consumer Law statutes and the elements are not the same as common law fraud,
- the types of cases are often fact-intensive,
- the attorneys who concentrate their practice in this field of law and in these types of cases are often known of only in their community of residence and outside of that community of residence, are only known to other professionals who regularly practice in the same area of law,
- fee shifting routinely may be available in the types of cases,
- the types of cases may sometimes involve nonjudicial actions and hearings or at other times judicial actions and hearings,
- effective advocacy in these types of cases routinely requires a high level of learning that often occurs only after bar admission and typically requires many years to achieve a high level of skill,
- the attorney-client relationship is typically "one-time" clients who come from diverse backgrounds, are frequently not familiar with lawyers or the legal aspects of their dispute, usually require extensive management and education to become effective participants in their case, and seldom return to the niche area attorney for legal assistance in other unrelated matters,
- the complexity of the types of cases, and consequent investment of attorney time and expertise therein, may be roughly equivalent to the

complexity of and attorney time and expertise investment in other areas or fields of law where cases are of above average complexity,

- the amounts in controversy in these cases is typically in line with larger dollar-value cases typically, although many Consumer Law cases may involve smaller sums,

- the opposing party is typically a deep-pocketed business that can afford skilled representation by specialists and all necessary experts and other nonjudicial discovery tools while the consumer-plaintiff can not do so,

- the extent of investigation and discovery may be roughly equivalent to other areas of law,

- and, there are often competing experts in these types of cases who are well versed in their field but may require instruction in the relevant law.

### 1.6 Niche Areas in the Field of Consumer Law Defined

Consumer Law is recognized as a specialized field of law by courts[5] as well as universities, law schools and the profession itself. As the field has continued to mature, niche areas have developed within the field of Consumer Law and have been recognized as such by the Courts. Subtle, although minor, differences in practices and hourly rates can be found when these niche areas are closely examined tand can provide a deeper understanding of these niche practices to practitioners and courts. Such data continues to be reported in this California Edition of the Survey Report.

Consumer Law is a field of law typically dealing with issues arising from a variety of individual rights typically involving one or more persons acting as individuals or as a family.

While Consumer Law is a field of law, this survey reports on a closer analysis of the following areas within Consumer Law which are categorized for purposes of this Survey Report into the following Practice Areas:

---

[5] As said by the Ohio 9th District Court of Appeals, "[c]onsumer law is a specialty area that is not common among many legal practitioners." *Crow v. Fred Martin Motor Co.*, 2003-Ohio-1293 (Summit, App. No. 21128).

1.    Consumer Bankruptcy
2.    Consumer Protection Class Action
3.    Credit Rights (FCRA, FDCPA, ECOA, TILA, Credit Discrimination, Credit Reporting, Debt Defense, etc)
4.    Housing Rights (Mortgage Foreclosure Defense, RESPA, HOLA, Landlord-Tenant, other real estate rights enforcement laws, etc.)
5.    Vehicle Litigation (Autofraud, Lemon Law, Warranty Law, Vehicle-related UDAP claims, Repossession Law, etc.)
6.    TCPA (the Telephone Consumer Protection Act)
7.    UDAP Deception Law (unfair or deceptive acts and practices)
8.    Other (Common Law Fraud, unfair and deceptive acts, etc.)

1.7 Geographic Areas Defined

Survey participant data and Consumer Law case decisions on attorney fees has been analyzed and compiled for this California Edition of the 2023 Survey Report for 23 of California's Metropolitan Statistical Areas and all federal courthouse metro areas, which encompasses 92% of California's population.

This Survey Report takes a localized view of the California survey data by its inclusion of specific survey questions that differentiate population size and geographic areas of practice, which allows for data analysis of all major Metropolitan Statistical Areas in California. This enables a more detailed and specific localized analysis of the California survey data for the reader's review, application and analysis.

Generally, a greater metropolitan statistical area contains a core urban area of 50,000 or more population and includes the adjacent counties or municipalities that have a high degree of social and economic integration, as measured by the U.S. Census as commuting to work, with the urban core. Generally, a Metropolitan Statistical Area, as that term is used in this Survey Report, is defined the same as in the U.S. Census. The key difference in this Survey Report is that in the Census definition of a metropolitan statistical area (MSA), the MSA may cross state or other governmental borders. In this Survey Report, data responses were confined to state or territorial political boundaries. In this Survey Report, data responses were confined to territorial political boundaries in California so the Metropolitan Statistical Areas are likewise bound.

To provide more detailed data, this survey obtained from each survey participant and case decision the specific niche area(s) of Consumer Law in which the participant or case attorney practiced. Thus, the differences in practicing in one niche area of Consumer Law can be compared with any of the other niche areas.

Additional obtained data from each participant included whether or not the attorney was rated A or B by Martindale-Hubbell or rated 7 or above on the Avvo 1 to 10 scale. For each case decision that same information was research about each identified attorney receiving a judicial or nonjudicial hourly rate decision and entered into the survey database, providing some reputational information relevant to further survey analysis.

The responsive data enables an even more narrow and localized analysis to be generated and which provides median-based hourly rate numbers for these niche areas of Consumer Law within the wider field of Consumer Law itself, with a greater focus on geographic locality. In a few instances, average hourly rate numbers (called the "mean") are reported alongside the median number where the reader may need to know both the median and the mean statistic. Nevertheless, this Survey Report notes and uses the median calculation predominately.

1.8 Safeguarding Against Biased Data by Use of Median Calculations

To assure an adequate understanding, interpretation and application of the data in this Survey Report, a brief explanation of common data terminology in this Survey Report may be useful.

The tables in this Survey Report use some terms whose meaning, while understood by statisticians, may not be clear to all readers. This Survey Report presents the compiled data in measures of central tendency (mean and median) and dispersion or spread (percentiles). These data points can also be combined to more precisely derive results that may be applicable in circumstances requiring more specific calculations because of the characteristics of a given situation where data may be sought by the reader.

The mean (sometimes called the arithmetic average) is calculated by adding the values of all responses, then dividing by the number of responses.

For example, suppose that five numerical responses are reported to a question and that they are, in sequential in rank order, 3, 4, 6, 8 and 12. The average is calculated by adding their values (3 + 4 + 6 + 8 + 12 = 33), then dividing by the number of responses (5). Thus, the average is 33 / 5 = 6.6.

The median is a different way of calculating and has a different meaning. It is the middle value in a series of values, which is initially rank-ordered from low to high. By definition, half the numbers are greater and half are less than the median number. Both mean and median values are used at various points in this Survey Report to denote the measure of central tendency, e.g., as a pointer for the central area of survey results to a given question.

Statisticians variously agree that using the median as a statistic reduces the effect of extreme numbers that are high or low values even if they are within the overall pattern of numbers, while the average does not do so because it takes all numbers into account. The same is even more true when the high or low values are outliers, i.e., beyond the outer limits of the overall pattern of numbers under consideration.

As an example of how using a median affects the above numbers, the same five responses are reported, 3, 4, 6, 8 and 12. The median is the middle number of the order of distribution, 6. Note, however, that the average of this same distribution of numbers is 6.6. Depending on the set of numbers under analysis, the mean (i.e., the average) may be incrementally higher or lower than the actual median of that set of numbers.

The median literally is the value in the middle. It represents the mid way point in a sequence of numbers. It is determined by lining up the values in the set of data (for example, in this fee survey that would be all of the individual fee rate responses logged in the survey) from the smallest to the largest. The one in the dead-center position is the median number.

The median is not the average of the numbers because you don't add anything in the list, but you merely determine the center of the list. Some statisticians say that using the mean (instead of the average) gives less weight to the individual numbers that are on the outer limits of the survey responses and thus it is more likely to direct the survey to the real center of the responses.

The median result of a set of numbers may be higher or lower than the average of that same set of numbers. Because the median number is commonly not the same as the average number, being either slightly above or below it, this Survey Report attempts to use the median results for key data points in the survey while at times taking advantage of the simplicity of the mean (average) results at times. Either way, they type of analysis is identified.

For analysis purposes, the dispersion of data results around the median, which is at the 50th percentile point, is reported in three increments in several places throughout the Survey Report:

♦   25th percentile (what statisticians call the lower quartile); one-fourth of the number values are less and three-fourth of the values are more than this value

♦   75th percentile (the upper quartile); three-fourths of the number values are less and one-fourth are more than this value

♦   95th percentile; ninety-five percent of the number values are less and only five percent are more than this value.

At some points in the Survey Report we include data reporting on the "top 1% of a range or hourly rate classification, to both inform and give perspective where the reader deems it appropriate.

1.9 Safeguarding Against Biased Data by Source Analysis Methodology

The California Edition contains the results of individual participation and contested attorney fee decisions from the state of California, which together total 466 attorneys and 357 paralegals statewide.

The national database that makes up the survey results reported in the national edition of the Survey Report, and from which the California metropolitan statistical area survey dataset was taken,  consisted of the survey question responses of 1,115 attorney participants (referred to collectively as the Individual Participant Dataset) plus additional data covering 1,614 attorneys derived from the judicial and nonjudicial fee decisions on contested attorney fee

motions nationally (referred to collectively as the Case Decision Dataset).

However, additional judicial and nonjudicial written fee decisions did not identify the individual attorneys whose fees were at issue in the case, in spite of efforts to derive their identification. Without that identification, further research could not be done to obtain survey question answers. Where an individual attorney in such a case could not be identified then that decision was discarded and not included in the data analyses of this Survey Report.

There were 1,614 fee decision attorneys nationally whose identity could be established from fee decisions and those attorneys were included in the data analyses conducted for the national Survey Report.

The survey question-responsive data for each attorney in this group was individually derived from independent research of each attorney via the fee decisions, online research of publicly available reliable attorney databases, individual email and telephonic communication where necessary for the 1,614 identified attorneys nationally. The survey question responses of these 1,614 attorneys drawn from these decisions (referred to collectively as the Decisional Dataset) was combined with the Individual Participant Dataset, yielding a combined, merged Survey Dataset with data from a total of 2,729 individual attorneys.

The national Survey Report and the California Metropolitan Statistical Areas Survey Report are based on the analysis of the combined, merged Survey Dataset.

Thus, 59.1% of the Survey Dataset comes strictly from judicial and nonjudicial decisions rendered in disputed fee cases, and 40.9% of the Survey Dataset comes from voluntary individual attorney participation in the survey.

### 1.10 Safeguarding Against Biased Data by Testing Survey Hourly rate Results with and without Bankruptcy and Class Action Data

The Survey Report includes data from the 8 identified niche areas of Consumer Law that are noted above. The reader may be concerned that complex Chapter 11 and Chapter 13 reorganization cases which may generate higher than

normal hourly rates may skew the hourly rates upward. At first glance it may seem that the inclusion of court hourly rate decisions and hourly rate data in the niche areas of Bankruptcy Law and Class Actions, where newspaper accounts sometimes reflect very high hourly rates and/or very high fee awards, may substantially skew overall Consumer Law hourly rates upward above the otherwise applicable median and mean numbers.

That concern has been tested and is not supported by an analysis of the actual data.

To test the accuracy of the issue, the author analyzed the ongoing survey's national survey database in June 2021 for Southern California's metropolitan areas, being those areas with a population center of 200,000 or more. In the first analysis the niche areas of Bankruptcy Law and Class Action Law were included to obtain both the median and mean hourly rates. The results showed the median hourly rate to be $525 and the mean hourly rate to be $522. In the second analysis, the niche areas of Bankruptcy Law and Class Action Law were excluded from the calculations.

If the court hourly rate decisions and reported hourly rate data in Southern California's metropolitan areas were substantially higher for Bankruptcy Law and Class Action Law, then excluding them would show a substantial drop in the hourly rates when that data was excluded. However, the results actually showed the median hourly rate only dropped $12/hr, to $513, a dop of only .03%. But the mean hourly rate did not drop at all and instead remained at $522.

To test the accuracy of the Southern California metropolitan area test results, the author then did the same analysis on the entire 2019-2020 national database of court decisions and hourly rate data in the United States with similar results. The national median hourly rate for all Consumer Law lawyers, including Bankruptcy and Class Action, was $425 and the mean hourly rate was $423. When the Bankruptcy and Class Action data was excluded from the national database of court decisions and hourly rate data, however, the national median hourly rate remained the same at $425 and mean hourly rate dropped only $4 (.02%) to $419.

The only logical conclusion to be drawn from the data is that there is no statistical support for the theory that the inclusion of Consumer Bankruptcy data

and Class Action data makes any significant difference in the hourly rate survey results for California or nationally.


### 1.11 Safeguarding Against Biased Data by Testing Voluntary Individual Data Against Actual Fee Decisions

Some readers of prior Survey Reports have expressed concern over the validity of hourly rate data that is provided by individual survey participants as opposed to actual court decisions. The concern expressed is that some individuals who wish to benefit from the survey's use might intentionally input an hourly rate response that would be biased upward or downward so as to "spike the hourly rate numbers" in a personally desired direction in the next published Survey Report for their personal benefit. Presumably, the fear is that attorneys with a plaintiff practice would falsely report higher than actual hourly rates and attorneys with a defense practice would falsely report lower than actual hourly rates.

Two methodologies were developed and exist to address the concern and used to eliminate the concern. The first methodology was to directly compare the data results using only the voluntary individual data results with the same points of measuring using only the actual attorney fee decisions to test what, if any, differences might exist to the same questions.

The data in the entire national survey dataset comes from either (1) individual participants or (2) actual attorney fee decisions. Those two types of data sources can be separated in the dataset, and the data results of one tested against the data results of the other. If the results of the individual participant data is significantly higher or lower than the results of the actual attorney fee decision data, then logically the suspicion of unreliable individual participant survey data would be verified by the existence of that substantial difference. The reverse would also be true.

To determine how the addition of individual survey participant data to the case decision data may affect the final survey results, a reading of 12 median hourly rate data measurement points was taken of the individual participant dataset by itself. A reading of those same 12 data measurement points was subsequently taken of the entire database after the addition to the database of the

data drawn from the contested attorney fee decisions. There were no significant differences in the results of the two tests. In fact, 10 of the 12 hourly rate data measurement points readings did not change at all. Of the two remaining measurement points, one went up by 4 one hundredths of a percentage point and the other went down by 12 one hundredths of a percentage point. In other words, when both sources of data were added to the database, 99.3333% of the national survey results were still the same, proving that the survey results would be virtually identical whether the analysis was purely based on court decisions or if it was based purely on individual voluntary survey responses.

If individual voluntary survey participants wanted to spike survey results upward, it would be seen when the individual rates are compared with the actual contested decision rates, but that was not observed.

And logically, if someone wanted to skew the survey results to create an appearance of unreliability, they would have to input hourly rate numbers that were far enough below or above the normal range so as to affect the median rate calculation, i.e., extreme values that would "bend" the results in a desired direction. Statisticians refer to such extreme values which differ from most other data points in a dataset as "outlier" data, and a methodology exists to block and eliminate such data from consideration. That methodology was first implemented into the analyses conducted in this survey work in 2015 and is still employed.

1.12 Safeguarding Against Biased Data by Eliminating Outlier Data

The second methodology was to use the standard methodology to eliminate outlier data from any consideration in the survey analysis.

Statisticians generally define "outlier" data as an observation of data that lies an abnormal distance from the pattern of other values in a random sample from a "population" of data.[6] In other words, an outlier is an extreme numerical response to a question that lies outside of the overall pattern of other responses given to the same question. These outlier data points are often called simply "bad data points."

---

[6] See, Nat'l Inst. Of Standards and Technology, "What are outliers in the data?" https://www.itl.nist.gov/div898/handbook/prc/section1/prc16.htm.

Outlier data may exist for a variety of reasons, including truthful responses to a question. A truthful response can still be outside the normal range of responses to a question by everyone else to that question. However, a deceitful response may be maliciously placed outside the normal range of responses in an attempt to undermine the liability of the survey data analyses.

Thus, outliers are generally blocked and eliminated from consideration by statisticians. In our Survey Report the standard Inter Quartile Range Method[7] is adopted and used to identify the Inter Quartile Range (IQR) upper and lower limits. Outlier data is that data that is below or above these outer limits and all such data is then eliminated from any Survey consideration at all. Outliers, being extreme data points, have been blocked and eliminated from consideration in the analyses of data for these Survey Reports since 2015.

### 1.13 Interpreting the Findings: Primary and Minor Variable Factors

An hourly attorney fee rate in a particular practice area may commonly be impacted by a combination of several factors each applied when applicable and potentially varying degrees. The primary factors in determining a reasonable hourly rate are legal skill, experience, the attorney's law firm size, and the location of the firm's law practice. Legal skill can be subjective and is often derived from experience, while experience itself can often be objectively measured by years in practice. Thus, objectively speaking, a reasonable hourly rate determination can begin with the objective measurement of years in practice, the size of the firm, and the location of the firm.

These 3 variables are widely known to have a significant impact on an attorney's billable hourly rate and in this survey are identified as the primary variables. This Survey Report provides data on all three variable factors.

---

[7] The Inter Quartile Method identifies outlier data by determining the Inter Quartile Range in 4 steps: 1. Find the first quartile (Q1); 2. Find the third quartile (Q3); 3. Calculate the IQR but deducting Q1 from Q3; 4. The lower limit of the normal data range is then defined as Q1-1.5 IQR and the upper limit is defined as Q3 + 1.5 IQR. Any data point outside this range is an outlier and removed from survey consideration. See PennState Eberly College of Science Stat 200, 3.2, https://online.stat.psu.edu/stat200/lesson/3/3.2.

Another often widely variable factor that is sometimes considered in determining a reasonable hourly rate is reputation, although it can be difficult to assess and highly individualistic. An attorney's reputation may be subjective and difficult to objectively measure, but there are objective characteristics of an attorney that may signal to an above-average reputation for an individual attorney

These would include trial experience, continuing legal education presentations in or related to an attorney's primary practice field, related articles and book publications, and publicly available professional rating services such as Martindale-Hubbell and SuperLawyer and Avvo, all of which can be independently confirmed on the internet. Individual confirming analysis of these characteristics can be undertaken where and when and to the degree deemed appropriate. Some of these factors are specifically reported on in this Survey Report to inform the reader on how these reputation factors may influence the reasonable hourly rate in a specific circumstance.

Depending on the specific situation, there are other variable factors that historically are often of less impact than the primary variables, such as advertising, personal client relationships, and other more remote factors. These minor variables may apply in often unique instances but almost always to a lesser variable degree than the primary variables. Most often these minor variables are highly individualistic to the practitioner at hand and can be examined where and when and to the degree deemed appropriate in any particular case, but they are not objectively verifiable for survey purposes.

Thus, the information presented here on the factors that are primary variables, and the reputational characteristics, will be indicative of a particular attorney's reasonable hourly rate but there may be times when a further, more detailed analysis of minor variable factors may be useful to further refine and modify the result of the primary variable factors to a specific situation. Such a detailed analysis requires an individualistic inquiry and even then the potential impact of such these additional variables may be limited and doubtful.

A Summary Profile of the typical California Consumer Law Attorney is presented at the outset of this Survey Report in Section 2, in order to provide a general, summary profile of California Consumer Law attorneys and their practice. It is representative of all California survey responses statewide. Charts

in this section provide summaries of specific characteristics of California Consumer Law attorneys.

The Median Practice Area Rate Range, Median Rate for Practice Areas, and the Experience (years in practice) Rate Range and Median Rate Variable Tables present an analysis of the impact that each of those characteristics may have on hourly rates. Each Metropolitan Statistical Area has its own table of survey results with the levels of experience, e.g., years in practice, being divided into 12 time frames with less than one year and more than 45 years bracketing the outer limits at each end.

One might think that longevity of practice would dictate an increasingly higher hourly rate and these tables report survey results that test that assumption and, in some cases, variations are observed. For instance, since the beginning of this survey work twenty years ago, a bell shaped curve and other seemingly odd variations have historically been observed among some senior levels of years in practice.

The California Database Count in Section 4 notes the level of data from attorneys and paralegals for each of the reported 23 California Metropolitan Statistical Areas.

The California Metropolitan Statistical Area Tables in Section 4 are presented to give an overview of the practice in each listed Metropolitan Statistical Area in California.

## 1.14 Standard Survey Techniques Implemented

Surveys are widely considered to be important tools in any evaluation process. Standard survey techniques were followed in all aspects of this Survey, from creation to data reporting.

There are fundamentally two types of surveys: open ended questioning and closed ended questioning.

Open ended questions allow the responder to respond in any manner at all with no definite or limited answer. Close ended questions provide a limited

number of possible answers from which a response can be chosen by the responder. Because open ended questions allow for an unlimited response, they can lead to a subjective response and analysis. Thus, the results are almost always more difficult to interpret and quantify for reader analysis.

Close ended questions, however, lend their responses to an objective statistical analysis. This Survey employed only close ended questions.

An explanation of the five types of close ended questions may be helpful to the reader in understanding the validity of the survey and its responses.

The Multiple Choice or the Likert-scale question format allows for responses on a scale and allows a responder to state a specific response from a finite number of responses. The Categorical question format first places the responder in a category and then poses questions based on those categories, such as preceding questions with the initial inquiry of whether the responder is male or female. Numerical questions are used when the answer must be a real number and are chiefly used in the Survey.

Different types of questions are used in survey work so that different types of result analyses may be conducted, but the most common survey techniques are the numerical and the multiple choice question because of the ease with which conclusions may be derived from the raw data.

In general, this survey used numerical and multiple choice questions. This allows for precise responses that can readily be cataloged and statistically interpreted. Categorical questions also exist within the survey that allowed for more information to be obtained from practitioners of consumer bankruptcy law, while allowing non-consumer bankruptcy practitioners to skip that focused section of the survey.

### 1.15 Standard Survey Design Methodologies Implemented

In addition to considering the types of questions to be employed in a survey, standard survey practices require careful consideration of the very design of the survey itself. This requires considering the placement, wording, sequencing, and other factors that can influence accurate data gathering. This

standard was followed in this Survey.

In designing the United States Consumer Law Practice & Attorney Fee Survey, the author considered all procedure, question and design factors enumerated and discussed in three primary sources: *Evaluating Survey Questions: An Inventory of Methods* prepared by the Subcommittee on Questionnaire Evaluation Methods of the Statistical and Science Policy Office in the U.S. Office of Management and Budget (January 2016), and *Evaluating Survey Questions* by Doctor Chase H. Harrison of Harvard University's Program on Survey Research, and *Methods for Testing and Evaluating Survey Questions* by Stanley Presser et al, as published in Public Opinion Quarterly Vol. 68, Issue 1 (March 2004).

### 1.16 Standard Data Gathering Methodologies Implemented

Understanding the data gathering methodology for this survey may assist the reader to understand, interpret, and apply the results published in this Survey Report. Applicable standard survey practices were adopted and followed.

This Survey Report is based on the results from two primary sources of data: the survey that was fielded to advocates operating primarily or secondarily in the field of Consumer Law after the closing of the last published Survey Report and up to October 2022. The data source includes a survey of all available judicial and nonjudicial (i.e., court and administrative) decisions on attorney fees in consumer civil and administrative litigation. It was expected that this blend of data practitioner reported rates and court actual rate decisions will achieve a high level of accuracy.

### 1.17 Standard Web-based Survey System Methodologies Implemented

The fielded survey was administered via an internet, web-based system using an internet-based online questionnaire. This method allows for greater reach and scalability, easy administration, and maximum flexibility in the design. skip navigation whereby respondents can jump over questions where they do not have an opinion, and which also allows for participant confidentiality and anonymity. Studies have shown that data collected through online surveys is

more accurate with a much smaller margin of error, chiefly because responses go directly to the online database. The survey was closed in October 2022.

In compiling this California Metro Edition of the national Survey Report, California data was drawn from the national Survey Report database.

A valuable contribution was made by members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys, and Consumer Law attorneys across the United States and its territories.

The entire active membership of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys, along with other known Consumer Law practitioners from around the United States and its territories were invited to participate in the survey.

Invitations to participate were also randomly sent to Consumer Law attorneys discovered through internet search engine results conducted on a national level, including specific lawyer and professional listing web sites such as Avvo.com, Lawyers.com and LinkedIn.com. Invitations to participate were also randomly sent to attorneys identified through court filings in various jurisdictions and bar association directories.

As noted above, this survey included a systematic, comprehensive survey of judicial and nonjudicial, i.e., administrative agency, cases involving disputed attorney fee issues in consumer civil and administrative agency cases. The attorney fee decisions which are included in the national survey database came from every state, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. But California-only data was drawn from the national survey database and used n the analyses and authoring of this California Edition Survey Report.

To accomplish this survey of case fee decisions, case alerts were created and established in Lexis and Westlaw so that the Survey Editor would receive alerts to every consumer dispute decision involving attorney fees. With each such alert, the case decision was read, the fee-prevailing attorneys identified and researched. In some cases the attorneys were invited to participate in the survey or directly asked survey questions, but in many cases the research results revealed the survey's required responses for each such attorney and were entered

individually into the survey database. As a result, this Survey Report presents the results of both attorney participants and actual decisions made by courts and administrative agencies that occurred during 2020-2023

As with prior surveys, an on-line survey service was utilized to gather and tabulate the results with safeguards in place to limit data input to one participant per survey. Additional direct email and telephone survey input was also utilized. As the data was analyzed, all outlier data points were each disregarded.

Our similar California and national studies have been undertaken continually since 1999. The objective of these studies has been to determine and report upon the demographics of Consumer Law practitioners, including attorney hourly billing rate, firm size, years in practice, concentration of practice, areas of primary and secondary practice, Paralegal billing rates and other data of use to the profession.

The collected California information has been condensed into this reference to provide useful data and benchmarks to inform the California public, bar, and bench, to assist attorneys as they manage their practice, and provide a useful aid to judicial officers as they seek to determine applicable reasonable hourly rates in the cases and disputes before them.

The data is reported in a variety of focus tables which allows the reader to consider the data from a number of viewpoints of selected factors or criteria. Nevertheless there may be situations where a practitioner desires a data analysis and report specific to their practice or situation. If a more detailed analysis of data for any geographic or practice-specific situation is necessary, it can be performed upon request directed to the editor of this work.

### 1.18 Standard Data Analysis Methodology Implemented

For all data analyses published in this California Metropolitan Statistical Areas Survey Report, the only responses considered and included in the analyses were those which indicated that the practitioner engaged in the field of Consumer Law.

The data analyses in this Survey Report rely on descriptive statistics,

including averages, medians, and percentiles. The average, also known as the mean, is calculated by adding all of the respondents' numerical answers for a particular item and dividing by the total number of respondents. The median, also known as the midpoint, is the point at which half of the responses are above and half are below that number.

The percentiles, e.g., 25th, 75th, and 95th, represent the point in the range of responses at which 25%, 75%, 95% of the respective responses occur for a specific question. For example, the 95th percentile hourly rate amount is the hourly rate amount at which 95% of the reported hourly rate amounts were below and 5% of the hourly rate amounts were above the number quoted.

Items may not sum up to 100% due to rounding in some cases. A data result is indicated as a dash mark (e.g., " - ") in this Survey Report if no data or if insufficient data was reported.

Data is presented in this California Metro Edition of the Survey Report for all Metropolitan Statistical Areas in the state of California (more than 92.7% of the state population), while the national Survey Report includes results for all of the United States and the geopolitical areas of the District of Columbia, Puerto Rico and the U.S. Virgin Islands. In a few instances, some survey data quantities allowed for greater and closer analysis than other geographic areas because not all geographic areas reported at high levels of data responses.

In the Metropolitan Statistical Area Tables in section 4 of this California Metro Survey Report, the minimum metropolitan statistical area participation level was 10 survey data points or participants for analyses to be performed. In a Median Rate for Practice Areas table, if one field had no resulting data then the remaining six other practice area fields in that table would be considered and the median result entered in the field that had insufficient participation.

This was a robust survey, e.g., there are more than 1,219 fields of data calculation in this Survey Report and all data fields had sufficient data input when the survey was closed.

1.19 Peer Review of Methodologies and Survey Analyses

This national Survey Report has been peer reviewed prior to publication and also subject to peer review by The National Association of Legal Fee Analysis (NALFA).

NALFA is a 501(c)(6) non-profit professional association for the legal fee analysis field, providing services on attorney fee and legal billing matters. Courts and clients turn to NALFA for expertise when attorney fees and expenses are at issue in large complex cases. NALFA members include fully qualified attorney fee experts, special fee masters, bankruptcy fee examiners, fee dispute mediators and legal bill auditors and NALFA members follow Best Practices in legal fee analysis which this author also follows. For more information, visit www.thenalfa.org.

## 1.20 Error Rate

Before this publication, a hand selected review was conducted of selected data received during this survey and compared with the data reported in the previous survey. The results indicate an error rate of less than one percentage point at the 95% confidence level in the present Survey Report, a number substantially lower than the published error rate of similar types of surveys.

## 1.21 Section 508 Compliance

The 2023 California Consumer Law Practice & Attorney Fee Survey Report is the only survey of its type that is Section 508 Certified. This means that the survey program on which this survey runs meets all current U.S. Federal Section 508 certification guidelines.

Section 508 is a Federal law that outlines the requirements to make online information and services accessible to users with disabilities. All Federal agencies are required to use 508 certified software and technologies when available.

The Voluntary Product Accessibility Template (VPAT) was used in the design of the survey. VPAT's purpose is to assist Federal contracting officials and others in making preliminary assessments regarding the availability of commercial "Electronic and Information Technology" products and services with features that support accessibility. The VPAT was developed by the Information

Technology Industry Council (ITI) in partnership with the U.S. General Services Administration (GSA).

Use of the VPAT means that this survey is built on programming that includes a text element for every non-text element of the survey web page, web pages are designed so that all information displayed with color is also available without color, all parts of the survey are readable without having to open another window, and other techniques to enable disabled persons to fully participate in every aspect of the Fee Survey.

The editor deems it important that the survey reach the broadest range of potential respondents possible in order to provide the reader with the most accurate results. By including survey feedback from the disabled demographic, the survey ensures a more representative population is able to participate so that all demographics may be included in the survey results.

2. Summary Profile of the Typical California Consumer Law Attorney

This section graphically illustrates key data derived from the survey when viewed only from a California statewide approach.

The data results of survey questions are typically displayed below with a bar chart or pie chart. The measurement marking points in the bar graphs below are typically in 10% increments.

Emphasis in this section is on data characteristics of the typical Consumer Law attorney in California, one characteristic at a time and without regard for any other characteristic.

In some instances the analysis may use median numbers instead of the mean (average). A median analysis of a set of numbers involves a different approach than the mean analysis, as explained in more detail elsewhere in this Survey Report. Essentially the mean of a given set of numbers is the average while the median is the one number in an ordered sequential set of numbers that lies in the middle of the sequence. There may be a numerical difference between the mean and the median of any given set of numbers.

Statisticians generally adhere to the belief that using the median calculation generally gives a more accurate result than merely calculating an average of the set of numbers because it eliminates or minimizes the effect of very low or very high individual numbers in a sequential set of numbers.

Using the mean (the average of the entire set of numbers) actually absorbs the very low or very high individual numbers into the overall consideration and calculations and thereby actually increases the effect such numbers will have on the calculation of the average of the set of numbers. While using the mean, ie., an average, may be more expedient and even useful in some circumstances, it is different from eliminating outlier data. For instance, outlier numbers would be numbers that are outside the general range of a sequential set of numbers and are not considered in making the calculation of the mean or median of that set of numbers, as is also explained in more detail elsewhere in this Survey Report.

2.1 Attorney Position in California Law Firm

## Q1 What Is Your Attorney Position in Your Law Firm?



In Figure Q1 the category of Partners and Shareholders includes solo practitioners because a solo would be considered a shareholder in their own firm. Historically, the largest percentage of survey data has always come from solo practitioners.

2.2 California Law Firm Size

Is Consumer Law becoming "Big Law?"

Ever since this survey research began in 1999, the largest number of California law firms has been made up of solo practitioners. However, over the course of the last 5 years, a major shift has occurred in the size of law firms practicing Consumer Law.

For the first time ever, the largest number of law firms in the survey, 58.2%, now have five or more members.

Dropping down from first place into second, are solo practitioners who now comprise 24.4% of all Consumer Law firms are the solo practitioners.

Two person law firms are at 8.5%, while 3 person law firms are at only 5%%, and 4 person law firms are at 3.9%.

**Q2 How Many Attorneys Are in Your Law Firm?**



2.3 California Attorney Hourly Rates

## Q8 What Is Your Current Most Common Hourly Rate, Actually Billed or Awarded?



The hourly rate range for California attorneys is from $200 up to $1,000.

25% of Large Firm attorneys bill at or below $300 an hour. The median (the middle point of the dataset) hourly rate for large firm members is $400, while the mean (the average) hourly rate is $438. The third quartile point is $513.

Above the 95% percentile, only 5% of all Consumer Law attorneys have an hourly rate at $713 or higher. The top 1% hourly rate is $900 up to $1,000.

2.4 California Large Law Firm Hourly Rates

### Q2a If You Work in a Large Law Firm of 5 or more Attorneys, What Is Your Current Most Common Hourly Rate, Actually Billed or Awarded?



The hourly rate range for a California large firm of 5 or more members is from $200 to $925.

25% of large firm attorneys bill at or below $288 an hour. The median (the middle point of the dataset) hourly rate for large firm members is $375, while the mean (the average) hourly rate is $405. The third quartile point is $488.

Above the 95% percentile, only 5% of all Large Firm Consumer Law attorneys have an hourly rate at $713 or higher. The top 1% hourly rate is $900 and up.

2.5 California Small Law Firm Hourly Rates

### Q2b If You Work in a Small Law Firm of 4 or less Attorneys, What Is Your Current Most Common Hourly Rate, Actually Billed or Awarded?



The hourly rate range for a California small law firm with 1 to 4 members is from $200 to $1,000.

In small law firms, 25% of the attorneys bill at $338 or less. The median hourly rate for small firm members is $450, while the mean (the average) hourly rate is $456. The third quartile point is $538.

Above the 95% percentile, only 5% of all Small Firm Consumer Law attorneys have an hourly rate at $713 or higher. The top 1% hourly rate is $975 and up.

2.6 California Years in Practice

## Q3 How Many Years Have You Been Practicing Law?



Figure Q3 shows that this Survey Report includes diverse data ranging from less than one year and up to 46 or more years, indicating the Survey Dataset is complete in that regard.

2.7 California Percentage of Time Devoted to Consumer Law Matters

While every member of the Survey Dataset practices Consumer Law to some extent, they do it in various degrees as seen in figure Q4.

### Q4 What Percentage of Your Time Is Devoted to Just the Field of Consumer Law (Including All of its Niche Areas)?



2.8 California Primary Practice Area of Law

## Q5 Identify Your Primary Practice Area



Figure Q5 represents the Survey Dataset response totals for survey question 5.

While 71% of attorneys in the Survey responded that their primary practice was in the field of Consumer Law, a wide variety of other primary practice areas exist, after which attorneys practice a minority of time with Consumer Law matters.

Those responses that garnered less than 2% of all responses were not included in Figure Q5.

2.9 California Secondary Area of Law Practice

**Q6 Below Is a List of Fields of Law. Please Select the Field of Law That Represents the Second Largest Percentage of Your Practice**



Figure Q6 represents the Survey Dataset response totals for survey question 6.

While 70.4% of attorneys in the Survey responded that their secondary practice was in the field of Consumer Law, a wide variety of other secondary practice areas exist, after which attorneys practice a minority of time with Consumer Law matters.

Those responses that garnered less than 2% of all responses were not included in Figure Q6.

2.10 California Specific Niche Areas of Consumer Law Practice

**Q7 What Specific Areas of Consumer Law Practice Do You Regularly Handle?**



Within the field of Consumer Law there are seven primary niche areas and one catchall "Other" area that have been quantified with survey data. For instance, "Other" frequently is where an act is in violation of another statute which is declared by that statute to be a violation of the state's Unfair and Deceptive Acts and Practices Statute.

The historic periodic shifting of growth and decline among these niche areas continues to be a gradual ebb and flow process.

2.11 California Frequency of Change in Hourly Rate

## Q9 How Long Ago Did You Change Your Billable Hourly Rate?



It is notable that 50.7% of California Consumer Law attorneys adjust their hourly rates in practice years 1 and 2.

It is also notable that 9.6% have not changed their hourly rate in 5 or more years.

Deeper research of the data shows that attorneys practicing for 46 years or longer, none of them have changed their hourly rate for at least the last 5 years. Of those in practice for 41 to 45 years, 57.9% have not changed their hourly rate in 4 or more years. In the 36 to 40 years in practice group, 37.6% have not changed their hourly rate in 4 or more years.

The data shows that the frequency of hourly rate changes goes down as the years in practice go up.

2.12. California Geographical Practice Area: Metro, Non-metro or Both?

## Q14 Do you regularly practice in a metropolitan area of more than 200,000 persons or less than 200,000 persons or both?



Q14 shows that far fewer California attorneys maintain a purely rural practice. The majority have a metropolitan-only practice, followed by a large percentage, 42%, practice in both metro and non-metro locations.

This chart reflects the national trend among Consumer Law attorneys. Nationally, 50% maintain a metropolitan-only practice, 40.7% practice in both metro and non-metro areas, while a meager 9.4% maintain a rural-only law practice.

2.13 California Metropolitan-only Practice, Hourly Rates



**Q14a If You Practice Only in a Metropolitan Area, What Is Your Current Most Common Hourly Rate, Actually Billed or Awarded?**

The hourly rate range for a Metropolitan-only practicing attorney is from $200 to $1,000.

For a Metropolitan-only practicing attorney, 25% of the attorneys bill at $350 or less, while the median hourly rate is $425, although the mean (the average) hourly rate is $463; The third quartile point is $563.

Above the 95% percentile, only 5% of all Small Firm Consumer Law attorneys have an hourly rate at $763 or higher. The top 1% hourly rate is $938 and up.

2.14 California Both Metropolitan and Non-Metropolitan Practice, Hourly Rates



**Q14b If You Practice Both Metro and Non-Metro Areas, What Is Your Current Most Common Hourly Rate, Actually Billed or Awarded?**

The hourly rate range for an attorney practicing in both Metropolitan and Non-Metropolitan areas, practicing attorney is from $200 to $950.

For Attorneys practicing in both Metropolitan and Non-Metropolitan areas, 25% of the attorneys bill at $288 or less, while the median hourly rate is $375, although the mean (the average) hourly rate is $405; The third quartile point is $500.

Above the 95% percentile, only 5% of all Small Firm Consumer Law attorneys have an hourly rate at $638 or higher. The top 1% hourly rate is $925 and up.

2.15 California Non-Metropolitan-Only Practice, Hourly Rates

**Q14c If You Practice Only in a Non-metropolitan Area, What Is Your Current Most Common Hourly Rate, Actually Billed or Awarded?**



The hourly rate range for an attorney practicing only in Non-Metropolitan areas, practicing attorney is from $200 to $500.

For Attorneys practicing only in both Non-Metropolitan areas, 25% of the attorneys bill at $213 or less, while the median hourly rate is $250, although the mean (the average) hourly rate is $288; The third quartile point is $338.

Above the 95% percentile, only 5% of all Small Firm Consumer Law attorneys have an hourly rate at $475 or higher. The top 1% hourly rate is $500.

2.16 California Gender & Hours

## Q15 Gender and Hours Worked Per Week



2.17 California Hourly Rates by Gender: Male

### Q15a For All Male Attorneys, What Is Your Current Hourly Rate?



The hourly rate range for all Male attorneys is from $200 to $1,000.

25% of all male attorneys bill at $388 or less, while the median hourly rate is $425, although the mean (the average) hourly rate is $445; The third quartile point is $563.

Above the 95% percentile, only 5% of all male attorneys have an hourly rate at $750 or higher. The top 1% hourly rate is $950.

2.18 California Hourly Rates by Gender: Female

### Q15b For All Female Attorneys, What Is Your Current Hourly Rate?



The hourly rate range for all female attorneys is from $200 to $725.

25% of all female attorneys bill at $288 or less, while the median hourly rate is $350, although the mean (the average) hourly rate is $388; The third quartile point is $475.

Above the 95% percentile, only 5% of all female attorneys have an hourly rate at $625 or higher. The top 1% hourly rate is $713.

2.19 California Hourly Rates by Gender, Hours Worked: Female, More than 29 Hours/Week

### Q15c For All Female Attorneys, Working More Than 29 Hours Per Week, What Is Your Current Hourly Rate?



The hourly rate range for all Female attorneys is from $200 to $725.

25% of all female attorneys working more than 29 hours per week bill at $288 or less, while the median hourly rate is $375, although the mean (the average) hourly rate is $388; The third quartile point is $488.

Above the 95% percentile, only 5% of all female attorneys working more than 29 hours per week have an hourly rate at $638 or higher. The top 1% hourly rate is $713.

2.20 California Hourly Rates by Gender, Hours Worked: Female, Less than 30 Hours/Week

### Q15d For All Female Attorneys, Working Less Than 30 Hours Per Week, What Is Your Current Hourly Rate?



The hourly rate range for all Female attorneys working less than 30 hours per week is from $225 to $475.

25% of all female attorneys working less than 30 hours per week bill at $238 or less, while the median hourly rate is $338, although the mean (the average) hourly rate is $325; The third quartile point is $375.

Above the 95% percentile, only 5% of all female attorneys working less than 30 hours per week have an hourly rate at $450 or higher. The top 1% hourly rate is $475.

2.20 California Hourly Rates by Gender, Hours Worked: Male, More than 29
Hours/Week



### Q15d Q15e For All Male Attorneys, Working More Than 29 Hours Per Week, What Is Your Current Hourly Rate?

The hourly rate range for all Male attorneys working more than 29 hours
per week is from $200 to $950.

25% of all male attorneys working more than 29 hours per week bill at
$338 or less, while the median hourly rate is $425, although the mean (the
average) hourly rate is $438; The third quartile point is $488.

Above the 95% percentile, only 5% of all male attorneys working more
than 29 hours per week have an hourly rate at $700 or higher. The top 1% hourly
rate is $925.

2.21 California Hourly Rates by Gender, Hours Worked: Male, Less than 30 Hours/Week

**Q15f For All Male Attorneys, Working Less Than 30 Hours Per Week, What Is Your Current Hourly Rate?**



The hourly rate range for all Male attorneys working less than 30 hours per week is from $200 to $950.

25% of all male attorneys working less than 30 hours per week bill at $338 or less, while the median hourly rate is $425, although the mean (the average) hourly rate is $438; The third quartile point is $488.

Above the 95% percentile, only 5% of all male attorneys working less than 30 hours per week have an hourly rate at $700 or higher. The top 1% hourly rate is $925.

2.22 California Hourly Rates by Reputation Factor: Martindale Hubbell AV-BV Rating



**Q17 For All Attorneys with an AV or BV Martindale Hubbell Rating, What Is Your Current Hourly Rate?**

Achieving a BV or AV rating by Martindale Hubbell can enhance an attorney's reputation which, in turn, may affect their hourly rate. Thus it is a factor of reputation that can be independently verified on the internet. How much difference does it make in the median hourly rate of an attorney, disregarding the affirmative responses to this question and all other factors?

As illustrated by the chart below, for a California Consumer Law attorney who does *not* have a Martindale Hubbell rating of AV or Bv, the range in hourly rates is from $200 to $675, the median hourly rate is $375, the mean (average) is $388, the top 5% are above $638, and the top 1% starts at $738 and goes up.

As illustrated by the chart below, for a California Consumer Law attorney who *does* have a Martindale Hubbell rating of AV or BV, the range in hourly rates is from $200 to $1,000, the median hourly rate is $513, the mean (average) is $544, the top 5% are above $913, and the top 1% starts at $975 and goes up.

Overall, the top of the hourly rate range is 168% higher, the median is 137% higher, the mean (average) is 140% higher, the top 5% point is 143% higher, and the top 1% point is 132% higher — an average of increase that is 144% higher.

California Consumer Law attorney who does *not* have a Martindale Hubbell rating of AV or Bv:



California Consumer Law attorney who *does* have a Martindale Hubbell rating of AV or BV:



2.23 California Hourly Rates by Reputational Factor: SuperLawyer or Rising Star Rating





Achieving the SuperLawyer or Rising Star rating can enhance an attorney's reputation which, in turn, may affect their hourly rate. Thus it is a factor of reputation that can be independently verified on the internet. How much difference does it make in the median hourly rate of an attorney, disregarding the affirmative responses to this question and all other factors?

As illustrated by the chart below, for a California Consumer Law attorney who does *not* have a SuperLawyer or Rising Star rating, the range in hourly rates is from $200 to $850, the median hourly rate is $350, the mean (average) is $391, the top 5% are above $669, and the top 1% starts at $850 and goes up.

As illustrated by the chart below, for a California Consumer Law attorney who *does* have a SuperLawyer or Rising Star rating, the range in hourly rates is from $200 to $1,000, the median hourly rate is $500, the mean (average) is $502, the top 5% are above $794, and the top 1% starts at $975 and goes up.

Overall, the top of the hourly rate range is 123% higher, the median is 143% higher, the mean (average) is 128% higher, the top 5% point is 119% higher, and the top 1% point is 115% higher — an average of increase that is 126% higher.

California Consumer Law attorney who does *not* have a SuperLawyer or Rising Star rating:



California Consumer Law attorney who *does* have a SuperLawyer or Rising Star rating:



2.24 California Hourly Rates by Reputational Factor: AVVO 7+ Rating

### Q19 For All Attorneys Who Achieved an AVVO Rating of 7 or Higher, What Is Your Current Hourly Rate?



Achieving the Avvo rating of 7 or higher can enhance an attorney's reputation which, in turn, may affect their hourly rate. Thus it is a factor of reputation that can be independently verified on the internet. How much difference does it make in the median hourly rate of an attorney, disregarding the affirmative responses to this question and all other factors?

As illustrated by the chart below, for a California Consumer Law attorney who does *not* have an AVVO rating of 7 or higher, the range in hourly rates is from $200 to $850, the median hourly rate is $350, the mean (average) is $380, the top 5% are above $650, and the top 1% starts at $875 and goes up.

As illustrated by the chart below, for a California Consumer Law attorney who *does* have an AVVO rating of 7 or higher, the range in hourly rates is from $200 to $1,000, the median hourly rate is $475, the mean (average) is $488, the top 5% are above $750, and the top 1% starts at $975 and goes up.

Overall, the top of the hourly rate range is 123% higher, the median is 136% higher, the mean (average) is 128% higher, the top 5% point is 115% higher, and the top 1% point is 111% higher — an average of increase that is 123% higher.

California Consumer Law attorney who does *not* have an AVVO rating of 7 or higher:



California Consumer Law attorney who *does* have an AVVO rating of 7 or higher:



2.25 California Hourly Rates by Reputational Factor: 25+ Trials as First Chair

### 20 For All Attorneys Who Have Handled 25 or More Trials as QFirst Chair, What Is Your Current Hourly Rate?



Accomplishing 25 or more first chair trials routinely can create a higher skill level for an attorney and can enhance an attorney's reputation which, in turn, may affect their hourly rate. Thus it is a factor of reputation, but difficult to independently verify. How much difference does it make in the median hourly rate of an attorney, disregarding the affirmative responses to this question and all other factors?

As illustrated by the chart below, for a California Consumer Law attorney who has *not* accomplished 25 trials, the range in hourly rates is from $200 to $950, the median hourly rate is $375, the mean (average) is $404, the top 5% are above $671, and the top 1% starts at $850 and goes up.

As illustrated by the chart below, for California Consumer Law attorney who *has* accomplished 25 or more trials, the range in hourly rates is from $200 to $1,000, the median hourly rate is $500, the mean (average) is $546, the top 5% are above $913, and the top 1% starts at $988 and goes up.

Overall, the top of the hourly rate range is 106% higher, the median is 133% higher, the mean (average) is 135% higher, the top 5% point is 136% higher, and the top 1% point is 116% higher — an average of increase that is 125% higher.

California Consumer Law attorney who has *not* accomplished 25 trials:



California Consumer Law attorney who *has* accomplished 25 or more trials:



2.26 Hourly Rates by Reputational Factor: CLE Speaking Engagements



### Q21 for All Attorneys Who in the Last 5 Years Have Been a Panel or Individual Speaker at a CLE or Professional Seminar Event, What Is Your Current Hourly Rate?



CLE and professional speaking engagements can give the speaker the opportunity to display their subject matter knowledge and can enhance an attorney's reputation and thereby affect an hourly rate. Thus it is a factor of reputation, but it can be difficult to independently verify. How much difference does it make in the median hourly rate of an attorney, disregarding the affirmative responses to this question and all other factors?

As illustrated by the chart below, for a California Consumer Law attorney who has *not* given CLE presentations, the range in hourly rates is from $200 to $850, the median hourly rate is $375, the mean (average) is $386, the top 5% are above $625, and the top 1% starts at $725 and goes up.

As illustrated by the chart below, for a California Consumer Law attorney who *has* given CLE presentations, the range in hourly rates is from $200 to $1,000, the median hourly rate is $500, the mean (average) is $516, the top 5% are above $875, and the top 1% starts at $975 and goes up.

Overall, the top of the hourly rate range is 123% higher, the median is 133% higher, the mean (average) is 133% higher, the top 5% point is 140% higher, and the top 1% point is 134% higher — an average of increase that is 132% higher.

California Consumer Law attorney who has *not* given CLE presentations:



California Consumer Law attorney who *has* given CLE presentations:



2.27 Hourly Rates by Reputational Factor: Authorship Status



**Q16 If in Your Legal Career, You Have Authored or
Co-authored Any Published Article or Book Dealing with Any
Aspect of Practicing Law, What Is Your Current Hourly Rate?**



Authorship of a law-related publication can give the  the opportunity to display their subject matter knowledge and can enhance an attorney's reputation and thereby affect an hourly rate. Thus it is a factor of reputation that can frequently be independently verified on the internet. How much difference does it make in the median hourly rate of an attorney, disregarding the affirmative responses to this question and all other factors?

As illustrated by the chart below, for a California Consumer Law attorney who has *not* authored a law-related publication, the range in hourly rates is from $200 to $925, the median hourly rate is $375, the mean (average) is $402, the top 5% are above $663, and the top 1% starts at $875 and goes up.

As illustrated by the chart below, for a California Consumer Law attorney who *has* authored a law-related publication, the range in hourly rates is from $250 to $950, the median hourly rate is $500, the mean (average) is $511, the top 5% are above $825, and the top 1% starts at $925 and goes up.

Overall, the bottom of the hourly rate range is 125% higher, the top of the hourly rate range is 102% higher, the median is 133% higher, the mean (average) is 127% higher, the top 5% point is 124% higher, and the top 1% point is 108% higher — an average of increase that is 119% higher.

California Consumer Law attorney who has *not* authored a law-related publication:



California Consumer Law attorney who *has* authored a law-related publication:



2.28 Hourly Rates by Combined Reputational Factor

**Q For attorneys who have a Martindale Hubbell rating of AV or BV, and a Superlawyer or Rising Star rating, and an AVVO rating of 7 or higher, What Is Your Current Hourly Rate?**

Of the factors which can enhance an attorney's reputation and thus may affect their hourly rate, and which are also readily verifiable, the Martindale Hubbell rating the Superlawyer/Rising Star rating, and the Avvo 7+ rating are each readily verified on the internet.

As a practical matter, it is not uncommon for an attorney to qualify for two or more of these reputation factors. The question is what hourly rate impact occurs as a result of that combination? The question was studied by examining the hourly rates for each possible combination of the three reputation factors noted above. First we again note below the individual analysis of each of these three facts. Then we examine each possible combination for the results.

The Martindale Hubbell Rating Hourly Rate

Individually and as noted above, for a California Consumer Law attorney who *does* have a Martindale Hubbell rating of AV or BV, the range in hourly rates is from $200 to $1,000, the median hourly rate is $513, the mean (average) is $544, the top 5% are above $913, and the top 1% starts at $975 and goes up.

The SuperLawyer/Rising Star Rating Hourly Rate

Individually, and as noted above, for a California Consumer Law attorney who *does* have a SuperLawyer or Rising Star rating, the range in hourly rates is from $200 to $1,000, the median hourly rate is $500, the mean (average) is $502, the top 5% are above $794, and the top 1% starts at $975 and goes up.

The AVVO Rating Hourly Rate

Individually and as noted above, for a California Consumer Law attorney who *does* have an AVVO rating of 7 or higher, the range in hourly rates is from $200 to $1,000, the median hourly rate is $475, the mean (average) is $488, the top 5% are above $750, and the top 1% starts at $975 and goes up.

The Martindale Hubbell and SuperLawyer/Rising Star Rating Hourly Rate

As illustrated in the chart below, for a California Consumer Law attorney who has a Martindale Hubbell rating of AV or BV (Q17) and also has a SuperLawyer or SuperLawyer Rising Star rating (Q18), the range in hourly rates is from $200 to $1,000, the median hourly rate is $525, the mean (average) is $548, the top 5% are above $925, and the top 1% starts at $975 and goes up.

When combined, the median hourly rate rises to $525 instead of the Martindale Hubbell's median hourly rate of $513 alone and the SuperLawyer/Rising Star median hourly rate of $500 alone.



The Martindale Hubbell and AVVO Rating Hourly Rate

As illustrated below, for a California Consumer Law attorney who has a Martindale Hubbell rating of AV or BV (Q17) and also has an AVVO rating of 7 or higher (Q19), the range in hourly rates is from $200 to $1,000, the median hourly rate is $500, the mean (average) is $537, the top 5% are above $900, and the top 1% starts at $975 and goes up.

When combined, the median hourly rate rises to $525 instead of the Martindale Hubbell's median hourly rate of $513 alone and the AVVO median hourly rate of $475 alone.



The Martindale Hubbell and SuperLawyer/Rising Star and AVVO Rating Hourly Rate

As illustrated below, for a California Consumer Law attorney who has a Martindale Hubbell rating of AV or BV (Q17) and also has a SuperLawyer or SuperLawyer Rising Star rating (Q18) and also has an AVVO rating of 7 or higher (Q19), the range in hourly rates is from $200 to $1,000, the median hourly rate is $500, the mean (average) is $537, the top 5% are above $900, and the top 1% starts at $975 and goes up.

When combined, the median hourly rate rises to $525 instead of the Martindale Hubbell's median hourly rate of $513 alone and the SuperLawyer/Rising Star median hourly rate of $500 alone and the AVVO rating alone median hourly rate of $475.



2.29 Paralegal, Law Clerk, Legal Assistant Support: Quantity

## Q10 How Many Full or Part Time Paralegal or Law Clerk or Legal Assistants Do You or Your Firm Employ?



2.30 Paralegal, Law Clerk, Legal Assistant Support: Hourly Rate

### Q11 What Is Your Average Paralegal or Law Clerk or Legal Assistant Standard Billable Hourly Rate?



The paralegal hourly rate range is from $25 up to $300 statewide.

Q1, the first quartile point (25% of the data) is $106; 25% of all paralegals have a billable hourly rate of $106 or less. Q2, the second quartile point (50% of the data, i.e., the median) is $150; half of all paralegals have a billable hourly rate below this number and half are above it. Q3, the third quartile point (75% of the data) is $175; 75% of all paralegals have a billable hourly rate lower than this number.

The top 5% of all paralegals have a billable hourly rate above $268. The top 1% of all paralegals have a billable hourly rate above $290.

3. California Metropolitan Statistical Area Tables

## 3.1 Explanation of Metro Tables

| | |
|---|---|
| Average Number of Attorneys in Firm | The typical firm size in this metro area. |
| Reputation Impact on Median | The percentage effect on the attorney median hourly rate by an affirmative response to question 17, which is a reputational factor question. Example: If without considering the response to Q17 the median hourly rate is $375, but when the response to Q17 is "yes" the median hourly rate is $513, then the favorable reputation response of Q17 correlates to a median increase of 137%, which is stated as "1.37" and is reached by dividing the Q17 median rate ($513) by the non-Q17 median rate ($375). The median hourly rate number is multiplied by the number in this box to see the dollar effect the positive reputation has on a median hourly rate. If a particular median rate would be applicable but the individual attorney in a case would answer affirmatively to any reputational question then that mediate rate would be altered by the impact number to reflect the effect the individual's reputation has on their particular hourly rate. |
| Average Concentration of Practice in Consumer Law | The largest percentage group, expressed as a percentage in the midpoint of all percentile ranges (90-100% is represented as 95% in the table). |
| Primary Practice Area | The area of law comprising the largest percentage of the practice work. |

| Secondary Practice Area | The largest practice area outside of the primary practice area; more than one may be listed. |
|---|---|
| Average Number of Paralegals in Firm | The average number resulting from all survey responses of this metropolis area. |
| Last Time Attorney Rate Changed (Average in Months) | The median number, expressed in months. |
| Median Paralegal Rate | Expressed in dollars. |
| Paralegal Median Hourly Rate Range, Low to High | Expressed in dollars |
| 25% Median Attorney Rate for All Attorneys | 25% of all survey responses are below this number, expressed in dollars. |
| Median Attorney Rate for All Attorneys | Half of all survey responses are above this number and half below, expressed in dollars. |
| 75% Median Attorney Rate for All Attorneys | 75% of all survey responses are below this number, expressed in dollars. |
| 95% Median Attorney Rate for All Attorneys | 5% of all survey responses are above this number, expressed in dollars. |

Median Rates for Practice Areas in Consumer Law

| Paralegal Median Hourly Rate Range, Low to High | Expressed in dollars |
|---|---|
| Median Rate for Attorneys Handling Bankruptcy Cases | For all attorneys handling this specific niche area of Consumer Law, half of all survey responses are above this number and half are below |
| Median Rate for Attorneys Handling Class Action Case | For all attorneys handling this specific niche area of Consumer Law, half of all survey responses are above this number and half are below |
| Median Rate for Attorneys Handling Credit Rights Cases | For all attorneys handling this specific niche area of Consumer Law, half of all survey responses are above this number |

| | and half are below |
|---|---|
| Median Rate for Attorneys Handling Housing Rights Cases | For all attorneys handling this specific niche area of Consumer Law, half of all survey responses are above this number and half are below |
| Median Rate for Attorneys Handling Vehicle Cases | For all attorneys handling this specific niche area of Consumer Law, half of all survey responses are above this number and half are below |
| Median Rate for Attorneys Handling TCPA Cases | For all attorneys handling this specific niche area of Consumer Law, half of all survey responses are above this number and half are below |
| Median Rate for Attorneys Handling UDAP Deception Cases | For all attorneys handling this specific niche area of Consumer Law, the 25% Median, Median and 95% Median points are provided |
| Median Rate for Attorneys Handling Other Consumer Cases | For all attorneys handling a niche area of Consumer Law not defined in the preceding six areas, half of all survey responses are above this number and half are below |

California metropolitan areas listed in this section appear alphabetically by the name of the city.

Following each Metropolitan Area Summaries Table is the Median Rates for Practice Areas table, as explained in the chart above. After that there appears the Experience Variable Table which provides attorney hourly rates by years in practice for that Metropolitan Area. Combined, these tables are intended to provide the reader with a quick and easy snapshot of the data as viewed in the narrow metropolitan approach to the data. The Experience Variable Table also may provide a view of the average hourly rates for an attorney as measured simply by years in practice, but all three metropolitan tables should also be considered in making such a determination.

## 3.2 California, Bakersfield

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.99 |
| Reputation Impact on Median | 1.47 |
| Average Concentration of Practice in Consumer Law | 79.9 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 26.8 |
| Average Number of Paralegals in Firm | .57 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 50-300 |
| 25% Median Attorney Rate for All Attorneys | 288 |
| Median Attorney Rate for All Attorneys | 375 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 700 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-700 | 400 |
| Attorneys Handling Class Action Cases | 175-950 | 425 |
| Attorneys Handling Credit Rights Cases | 175-1,000 | 400 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-750 | 350 |
| Attorneys Handling TCPA Cases | 175-750 | 400 |
| Attorneys Handling Udap Deception Cases | 175-1,000 | 375 |
| Attorneys Handling Other Consumer Cases | 300-950 | 525 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 225 |
| 1-3 | 200-350 | 250 |
| 3-5 | 175-450 | 300 |
| 6-10 | 200-625 | 350 |
| 11-15 | 225-700 | 400 |
| 16-20 | 175-775 | 500 |
| 21-25 | 225-800 | 525 |
| 26-30 | 250-950 | 600 |
| 31-35 | 350-850 | 600 |
| 36-40 | 325-700 | 550 |
| 41-45 | 300-1,000 | 575 |
| 46+ | 850-925 | 888 |

3.3 California, Chico

| | |
|---|---|
| Average Number of Attorneys in Firm | 2.8 |
| Reputation Impact on Median | 1.25 |
| Average Concentration of Practice in Consumer Law | 58.3 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 20.6 |
| Average Number of Paralegals in Firm | .5 |
| Median Paralegal Rate | 110 |
| Paralegal Median Hourly Rate Range, Low to High | 40-210 |
| 25% Median Attorney Rate for All Attorneys | 200 |
| Median Attorney Rate for All Attorneys | 300 |
| 75% Median Attorney Rate for All Attorneys | 390 |
| 95% Median Attorney Rate for All Attorneys | 560 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 140-530 | 300 |
| Attorneys Handling Class Action Cases | 140-550 | 350 |
| Attorneys Handling Credit Rights Cases | 140-775 | 325 |
| Attorneys Handling Housing Rights Cases | 140-610 | 270 |
| Attorneys Handling Vehicle Cases | 140-530 | 275 |
| Attorneys Handling TCPA Cases | 140-530 | 338 |
| Attorneys Handling Udap Deception Cases | 140-775 | 285 |
| Attorneys Handling Other Consumer Cases | 250-550 | 425 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|:---:|:---:|:---:|
| <1 | 150-200 | 175 |
| 1-3 | 150-250 | 200 |
| 3-5 | 150-350 | 225 |
| 6-10 | 150-450 | 275 |
| 11-15 | 200-525 | 310 |
| 16-20 | 200-550 | 350 |
| 21-25 | 150-600 | 400 |
| 26-30 | 300-725 | 450 |
| 31-35 | 300-650 | 450 |
| 36-40 | 250-646 | 388 |
| 41-45 | 350-775 | 375 |
| 46+ | 650-700 | 600 |

3.4 California, Eastern Sierra Region

| | |
|---|---|
| Average Number of Attorneys in Firm | 1.2 |
| Reputation Impact on Median | 1.1 |
| Average Concentration of Practice in Consumer Law | 53.3 |
| Primary Practice Area | General Practice |
| Secondary Practice Area | Consumer Law |
| Last Time Attorney Rate Changed (Average in Months) | 34.1 |
| Average Number of Paralegals in Firm | 0.7 |
| Median Paralegal Rate | 80 |
| Paralegal Median Hourly Rate Range, Low to High | 25-110 |
| 25% Median Attorney Rate for All Attorneys | 225 |
| Median Attorney Rate for All Attorneys | 300 |
| 75% Median Attorney Rate for All Attorneys | 488 |
| 95% Median Attorney Rate for All Attorneys | 450 |

Experience Variable Table

| Years Practicing Consumer Law | Median Attorney Hourly Rate |
|---|---|
| <1 | 150 |
| 1-3 | 150 |
| 3-5 | 175 |
| 6-10 | 225 |
| 11-15 | 250 |
| 16-20 | 300 |
| 21-25 | 325 |
| 26-30 | 375 |
| 31-35 | 388 |
| 36-40 | 400 |
| 41-45 | 450 |
| 46+ | 450 |

3.5 California, El Centro

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.9 |
| Reputation Impact on Median | 1.37 |
| Average Concentration of Practice in Consumer Law | 81.6 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 24.6 |
| Average Number of Paralegals in Firm | .67 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 25-280 |
| 25% Median Attorney Rate for All Attorneys | 288 |
| Median Attorney Rate for All Attorneys | 375 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 675 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 200-750 | 400 |
| Attorneys Handling Class Action Cases | 175-950 | 413 |
| Attorneys Handling Credit Rights Cases | 175-850 | 388 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-850 | 350 |
| Attorneys Handling TCPA Cases | 175-850 | 400 |
| Attorneys Handling Udap Deception Cases | 175-850 | 350 |
| Attorneys Handling Other Consumer Cases | 300-950 | 450 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 250 |
| 1-3 | 200-350 | 250 |
| 3-5 | 175-550 | 275 |
| 6-10 | 200-625 | 350 |
| 11-15 | 225-700 | 400 |
| 16-20 | 275-775 | 463 |
| 21-25 | 225-725 | 500 |
| 26-30 | 200-950 | 575 |
| 31-35 | 500-850 | 600 |
| 36-40 | 325-850 | 525 |
| 41-45 | 200-800 | 450 |
| 46+ | 200-800 | 450 |

3.6 California, Eureka - McKinleyville

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.5 |
| Reputation Impact on Median | 1.25 |
| Average Concentration of Practice in Consumer Law | 73.5 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 23.8 |
| Average Number of Paralegals in Firm | .6 |
| Median Paralegal Rate | 180 |
| Paralegal Median Hourly Rate Range, Low to High | 75-350 |
| 25% Median Attorney Rate for All Attorneys | 253 |
| Median Attorney Rate for All Attorneys | 385 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 715 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 180-675 | 450 |
| Attorneys Handling Class Action Cases | 180-980 | 500 |
| Attorneys Handling Credit Rights Cases | 180-950 | 450 |
| Attorneys Handling Housing Rights Cases | 180-775 | 330 |
| Attorneys Handling Vehicle Cases | 180-750 | 400 |
| Attorneys Handling TCPA Cases | 180-690 | 430 |
| Attorneys Handling Udap Deception Cases | 180-980 | 375 |
| Attorneys Handling Other Consumer Cases | 300-700 | 500 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 180-275 | 225 |
| 1-3 | 180-325 | 250 |
| 3-5 | 225-400 | 350 |
| 6-10 | 225-475 | 350 |
| 11-15 | 250-575 | 388 |
| 16-20 | 230-675 | 425 |
| 21-25 | 200-775 | 500 |
| 26-30 | 350-888 | 575 |
| 31-35 | 350-825 | 600 |
| 36-40 | 400-825 | 600 |
| 41-45 | 450-840 | 700 |
| 46+ | 750-888 | 850 |

3.7 California, Fresno - Madera

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.9 |
| Reputation Impact on Median | 1.43 |
| Average Concentration of Practice in Consumer Law | 76.7 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 35.16 |
| Average Number of Paralegals in Firm | 1.09 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 100-280 |
| 25% Median Attorney Rate for All Attorneys | 275 |
| Median Attorney Rate for All Attorneys | 350 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 663 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-700 | 400 |
| Attorneys Handling Class Action Cases | 175-950 | 450 |
| Attorneys Handling Credit Rights Cases | 175-1,000 | 400 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-750 | 325 |
| Attorneys Handling TCPA Cases | 175-750 | 425 |
| Attorneys Handling Udap Deception Cases | 175-1,000 | 350 |
| Attorneys Handling Other Consumer Cases | 350-950 | 550 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 225 |
| 1-3 | 200-325 | 238 |
| 3-5 | 175-450 | 263 |
| 6-10 | 200-500 | 325 |
| 11-15 | 225-650 | 363 |
| 16-20 | 175-725 | 438 |
| 21-25 | 350-750 | 550 |
| 26-30 | 400-950 | 550 |
| 31-35 | 400-850 | 600 |
| 36-40 | 350-700 | 550 |
| 41-45 | 300-1,000 | 475 |
| 46+ | 300-1,000 | 475 |

3.8 California, Irvine - Santa Ana

| | |
|---|---|
| Average Number of Attorneys in Firm | 2.5 |
| Reputation Impact on Median | 1.3 |
| Average Concentration of Practice in Consumer Law | 81.4 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 32.1 |
| Average Number of Paralegals in Firm | 1.2 |
| Median Paralegal Rate | 210 |
| Paralegal Median Hourly Rate Range, Low to High | 50-400 |
| 25% Median Attorney Rate for All Attorneys | 340 |
| Median Attorney Rate for All Attorneys | 420 |
| 75% Median Attorney Rate for All Attorneys | 590 |
| 95% Median Attorney Rate for All Attorneys | 725 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 220-775 | 350 |
| Attorneys Handling Class Action Cases | 200-1,100 | 500 |
| Attorneys Handling Credit Rights Cases | 200-980 | 425 |
| Attorneys Handling Housing Rights Cases | 200-850 | 400 |
| Attorneys Handling Vehicle Cases | 200-790 | 400 |
| Attorneys Handling TCPA Cases | 200-790 | 450 |
| Attorneys Handling Udap Deception Cases | 100-1,050 | 425 |
| Attorneys Handling Other Consumer Cases | 325-1,000 | 450 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-275 | 225 |
| 1-3 | 225-375 | 268 |
| 3-5 | 225-575 | 290 |
| 6-10 | 268-625 | 475 |
| 11-15 | 325-658 | 450 |
| 16-20 | 325-658 | 525 |
| 21-25 | 325-815 | 500 |
| 26-30 | 225-975 | 650 |
| 31-35 | 525-900 | 690 |
| 36-40 | 348-738 | 625 |
| 41-45 | 450-1,050 | 538 |
| 46+ | 900-975 | 938 |

## 3.9 California, Los Angeles - Long Beach - Anaheim

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.9 |
| Reputation Impact on Median | 1.5 |
| Average Concentration of Practice in Consumer Law | 84.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 30.2 |
| Average Number of Paralegals in Firm | 1.2 |
| Median Paralegal Rate | 210 |
| Paralegal Median Hourly Rate Range, Low to High | 50-420 |
| 25% Median Attorney Rate for All Attorneys | 350 |
| Median Attorney Rate for All Attorneys | 425 |
| 75% Median Attorney Rate for All Attorneys | 600 |
| 95% Median Attorney Rate for All Attorneys | 758 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 225-790 | 380 |
| Attorneys Handling Class Action Cases | 200-1,100 | 500 |
| Attorneys Handling Credit Rights Cases | 200-980 | 425 |
| Attorneys Handling Housing Rights Cases | 200-850 | 400 |
| Attorneys Handling Vehicle Cases | 200-790 | 400 |
| Attorneys Handling TCPA Cases | 200-790 | 450 |
| Attorneys Handling Udap Deception Cases | 200-1,050 | 425 |
| Attorneys Handling Other Consumer Cases | 325-1,000 | 450 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-275 | 225 |
| 1-3 | 225-375 | 268 |
| 3-5 | 225-575 | 290 |
| 6-10 | 268-625 | 475 |
| 11-15 | 325-658 | 450 |
| 16-20 | 325-658 | 525 |
| 21-25 | 325-815 | 500 |
| 26-30 | 225-975 | 650 |
| 31-35 | 525-900 | 690 |
| 36-40 | 348-738 | 625 |
| 41-45 | 450-1,050 | 538 |
| 46+ | 900-975 | 938 |

3.10 California, Modesto

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.2 |
| Reputation Impact on Median | 1.25 |
| Average Concentration of Practice in Consumer Law | 66.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 22.7 |
| Average Number of Paralegals in Firm | .4 |
| Median Paralegal Rate | 110 |
| Paralegal Median Hourly Rate Range, Low to High | 40-220 |
| 25% Median Attorney Rate for All Attorneys | 238 |
| Median Attorney Rate for All Attorneys | 350 |
| 75% Median Attorney Rate for All Attorneys | 450 |
| 95% Median Attorney Rate for All Attorneys | 650 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 160-613 | 350 |
| Attorneys Handling Class Action Cases | 160-825 | 450 |
| Attorneys Handling Credit Rights Cases | 160-875 | 400 |
| Attorneys Handling Housing Rights Cases | 160-425 | 325 |
| Attorneys Handling Vehicle Cases | 160-650 | 350 |
| Attorneys Handling TCPA Cases | 160-650 | 413 |
| Attorneys Handling Udap Deception Cases | 160-875 | 325 |
| Attorneys Handling Other Consumer Cases | 300-820 | 475 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 160-225 | 200 |
| 1-3 | 160-285 | 225 |
| 3-5 | 175-390 | 250 |
| 6-10 | 175-525 | 325 |
| 11-15 | 213-575 | 375 |
| 16-20 | 225-625 | 499 |
| 21-25 | 200-725 | 488 |
| 26-30 | 350-820 | 550 |
| 31-35 | 350-750 | 563 |
| 36-40 | 300-775 | 575 |
| 41-45 | 399-875 | 600 |
| 46+ | 725-800 | 750 |

## 3.11 California, Mother Lode Region

| | |
|---|---|
| Average Number of Attorneys in Firm | 1.1 |
| Reputation Impact on Median | 1.1 |
| Average Concentration of Practice in Consumer Law | 51.0 |
| Primary Practice Area | General Practice |
| Secondary Practice Area | Consumer Law |
| Last Time Attorney Rate Changed (Average in Months) | 35.2 |
| Average Number of Paralegals in Firm | 0.6 |
| Median Paralegal Rate | 60 |
| Paralegal Median Hourly Rate Range, Low to High | 20-100 |
| 25% Median Attorney Rate for All Attorneys | 200 |
| Median Attorney Rate for All Attorneys | 300 |
| 75% Median Attorney Rate for All Attorneys | 388 |
| 95% Median Attorney Rate for All Attorneys | 450 |

Experience Variable Table

| Years Practicing Consumer Law | Median Attorney Hourly Rate |
| --- | --- |
| <1 | 150 |
| 1-3 | 150 |
| 3-5 | 175 |
| 6-10 | 200 |
| 11-15 | 250 |
| 16-20 | 300 |
| 21-25 | 313 |
| 26-30 | 350 |
| 31-35 | 350 |
| 36-40 | 388 |
| 41-45 | 400 |
| 46+ | 450 |

3.12 California, Northern Mountain Region

| | |
|---|---|
| Average Number of Attorneys in Firm | 1.3 |
| Reputation Impact on Median | 1.1 |
| Average Concentration of Practice in Consumer Law | 65.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | General Practice |
| Last Time Attorney Rate Changed (Average in Months) | 24.5 |
| Average Number of Paralegals in Firm | .4 |
| Median Paralegal Rate | 125 |
| Paralegal Median Hourly Rate Range, Low to High | 50-200 |
| 25% Median Attorney Rate for All Attorneys | 200 |
| Median Attorney Rate for All Attorneys | 300 |
| 75% Median Attorney Rate for All Attorneys | 388 |
| 95% Median Attorney Rate for All Attorneys | 450 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-400 | 275 |
| Attorneys Handling Class Action Cases | 175-450 | 380 |
| Attorneys Handling Credit Rights Cases | 200-415 | 388 |
| Attorneys Handling Housing Rights Cases | 175-450 | 300 |
| Attorneys Handling Vehicle Cases | 225-450 | 350 |
| Attorneys Handling TCPA Cases | 200-425 | 375 |
| Attorneys Handling Udap Deception Cases | 175-450 | 400 |
| Attorneys Handling Other Consumer Cases | 200-450 | 400 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 150-250 | 200 |
| 1-3 | 175-300 | 200 |
| 3-5 | 200-300 | 225 |
| 6-10 | 250-300 | 275 |
| 11-15 | 250-350 | 300 |
| 16-20 | 250-375 | 350 |
| 21-25 | 275-400 | 375 |
| 26-30 | 375-400 | 375 |
| 31-35 | 350-425 | 388 |
| 36-40 | 400-450 | 400 |
| 41-45 | 350-425 | 400 |
| 46+ | 350-420 | 375 |

3.13 California, North Valley Region

| | |
|---|---|
| Average Number of Attorneys in Firm | 1.4 |
| Reputation Impact on Median | 1.1 |
| Average Concentration of Practice in Consumer Law | 67.1 |
| Primary Practice Area | General Practice |
| Secondary Practice Area | Consumer Law |
| Last Time Attorney Rate Changed (Average in Months) | 26.3 |
| Average Number of Paralegals in Firm | .4 |
| Median Paralegal Rate | 125 |
| Paralegal Median Hourly Rate Range, Low to High | 50-210 |
| 25% Median Attorney Rate for All Attorneys | 225 |
| Median Attorney Rate for All Attorneys | 325 |
| 75% Median Attorney Rate for All Attorneys | 400 |
| 95% Median Attorney Rate for All Attorneys | 450 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-425 | 300 |
| Attorneys Handling Class Action Cases | 175-475 | 425 |
| Attorneys Handling Credit Rights Cases | 200-450 | 400 |
| Attorneys Handling Housing Rights Cases | 175-450 | 300 |
| Attorneys Handling Vehicle Cases | 225-450 | 375 |
| Attorneys Handling TCPA Cases | 200-425 | 388 |
| Attorneys Handling Udap Deception Cases | 175-450 | 350 |
| Attorneys Handling Other Consumer Cases | 200-450 | 350 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 175-250 | 200 |
| 1-3 | 188-300 | 225 |
| 3-5 | 200-300 | 250 |
| 6-10 | 275-388 | 300 |
| 11-15 | 250-400 | 325 |
| 16-20 | 250-400 | 350 |
| 21-25 | 275-450 | 400 |
| 26-30 | 375-450 | 400 |
| 31-35 | 350-425 | 400 |
| 36-40 | 388-450 | 425 |
| 41-45 | 350-425 | 400 |
| 46+ | 350-420 | 375 |

3.14 California, Oakland - Hayward - Berkeley

| | |
|---|---|
| Average Number of Attorneys in Firm | 2.70 |
| Reputation Impact on Median | 14.8 |
| Average Concentration of Practice in Consumer Law | 75.1 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 23.69 |
| Average Number of Paralegals in Firm | 1.05 |
| Median Paralegal Rate | 113 |
| Paralegal Median Hourly Rate Range, Low to High | |
| 25% Median Attorney Rate for All Attorneys | 243 |
| Median Attorney Rate for All Attorneys | 297 |
| 75% Median Attorney Rate for All Attorneys | 393 |
| 95% Median Attorney Rate for All Attorneys | 516 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 0 | 281 |
| Attorneys Handling Class Action Cases | | 375 |
| Attorneys Handling Credit Rights Cases | | 300 |
| Attorneys Handling Housing Rights Cases | | 281 |
| Attorneys Handling Vehicle Cases | | 337 |
| Attorneys Handling TCPA Cases | | 300 |
| Attorneys Handling Udap Deception Cases | | |
| Attorneys Handling Other Consumer Cases | | 262 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 0 | 135 |
| 1-3 | | 190 |
| 3-5 | | 225 |
| 6-10 | | 300 |
| 11-15 | | 300 |
| 16-20 | | 375 |
| 21-25 | | 375 |
| 26-30 | | 441 |
| 31-35 | | 450 |
| 36-40 | | 450 |
| 41-45 | | 388 |
| 46+ | | |

### 3.15 California, Oxnard - Thousand Oaks - Ventura

| | |
|---|---|
| Average Number of Attorneys in Firm | 2.6 |
| Reputation Impact on Median | 1.2 |
| Average Concentration of Practice in Consumer Law | 76.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 28.3 |
| Average Number of Paralegals in Firm | 1.2 |
| Median Paralegal Rate | 200 |
| Paralegal Median Hourly Rate Range, Low to High | 40-400 |
| 25% Median Attorney Rate for All Attorneys | 375 |
| Median Attorney Rate for All Attorneys | 450 |
| 75% Median Attorney Rate for All Attorneys | 635 |
| 95% Median Attorney Rate for All Attorneys | 800 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 240-800 | 425 |
| Attorneys Handling Class Action Cases | 225-1,100 | 650 |
| Attorneys Handling Credit Rights Cases | 225-1,000 | 600 |
| Attorneys Handling Housing Rights Cases | 225-925 | 550 |
| Attorneys Handling Vehicle Cases | 225-825 | 600 |
| Attorneys Handling TCPA Cases | 225-825 | 600 |
| Attorneys Handling Udap Deception Cases | 325-1,050 | 550 |
| Attorneys Handling Other Consumer Cases | 325-1,000 | 550 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 225-300 | 275 |
| 1-3 | 250-400 | 350 |
| 3-5 | 275-475 | 390 |
| 6-10 | 300-550 | 488 |
| 11-15 | 338-575 | 475 |
| 16-20 | 375-600 | 500 |
| 21-25 | 400-800 | 525 |
| 26-30 | 400-850 | 650 |
| 31-35 | 525-900 | 700 |
| 36-40 | 500-850 | 725 |
| 41-45 | 525-1,000 | 750 |
| 46+ | 750-975 | 700 |

3.16 California, Pasadena

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.1 |
| Reputation Impact on Median | 1.3 |
| Average Concentration of Practice in Consumer Law | 57.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 24.3 |
| Average Number of Paralegals in Firm | 1.7 |
| Median Paralegal Rate | 210 |
| Paralegal Median Hourly Rate Range, Low to High | 50-400 |
| 25% Median Attorney Rate for All Attorneys | 388 |
| Median Attorney Rate for All Attorneys | 450 |
| 75% Median Attorney Rate for All Attorneys | 650 |
| 95% Median Attorney Rate for All Attorneys | 800 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 275-800 | 425 |
| Attorneys Handling Class Action Cases | 300-1,100 | 750 |
| Attorneys Handling Credit Rights Cases | 325-1,000 | 700 |
| Attorneys Handling Housing Rights Cases | 300-925 | 550 |
| Attorneys Handling Vehicle Cases | 325-825 | 600 |
| Attorneys Handling TCPA Cases | 325-825 | 600 |
| Attorneys Handling Udap Deception Cases | 325-1,000 | 525 |
| Attorneys Handling Other Consumer Cases | 325-1,000 | 500 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 275-350 | 300 |
| 1-3 | 300-400 | 350 |
| 3-5 | 300-475 | 400 |
| 6-10 | 325-550 | 488 |
| 11-15 | 350-575 | 500 |
| 16-20 | 400-650 | 513 |
| 21-25 | 425-750 | 550 |
| 26-30 | 450-850 | 650 |
| 31-35 | 500-900 | 700 |
| 36-40 | 550-850 | 750 |
| 41-45 | 600-1,000 | 800 |
| 46+ | 750-975 | 900 |

3.17 California, Redding

| | |
|---|---|
| Average Number of Attorneys in Firm | 2.1 |
| Reputation Impact on Median | 1.2 |
| Average Concentration of Practice in Consumer Law | 67.0 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 21.7 |
| Average Number of Paralegals in Firm | .6 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 40-220 |
| 25% Median Attorney Rate for All Attorneys | 225 |
| Median Attorney Rate for All Attorneys | 315 |
| 75% Median Attorney Rate for All Attorneys | 400 |
| 95% Median Attorney Rate for All Attorneys | 550 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-500 | 275 |
| Attorneys Handling Class Action Cases | 175-550 | 400 |
| Attorneys Handling Credit Rights Cases | 175-425 | 375 |
| Attorneys Handling Housing Rights Cases | 175-425 | 350 |
| Attorneys Handling Vehicle Cases | 200-425 | 350 |
| Attorneys Handling TCPA Cases | 175-425 | 375 |
| Attorneys Handling Udap Deception Cases | 175-450 | 375 |
| Attorneys Handling Other Consumer Cases | 175-450 | 375 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 150-200 | 175 |
| 1-3 | 150-250 | 180 |
| 3-5 | 175-350 | 250 |
| 6-10 | 175-450 | 288 |
| 11-15 | 225-400 | 300 |
| 16-20 | 225-400 | 325 |
| 21-25 | 275-400 | 350 |
| 26-30 | 300-450 | 388 |
| 31-35 | 350-475 | 400 |
| 36-40 | 375-500 | 425 |
| 41-45 | 400-550 | 500 |
| 46+ | 450-550 | 488 |

3.18 California, Riverside - San Bernardino - Ontario

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.8 |
| Reputation Impact on Median | 1.33 |
| Average Concentration of Practice in Consumer Law | 81.4 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 25.62 |
| Average Number of Paralegals in Firm | .66 |
| Median Paralegal Rate | 145 |
| Paralegal Median Hourly Rate Range, Low to High | 25-280 |
| 25% Median Attorney Rate for All Attorneys | 292 |
| Median Attorney Rate for All Attorneys | 375 |
| 75% Median Attorney Rate for All Attorneys | 508 |
| 95% Median Attorney Rate for All Attorneys | 663 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-750 | 400 |
| Attorneys Handling Class Action Cases | 175-950 | 413 |
| Attorneys Handling Credit Rights Cases | 175-1,000 | 400 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-750 | 350 |
| Attorneys Handling TCPA Cases | 175-750 | 400 |
| Attorneys Handling Udap Deception Cases | 175-1,000 | 350 |
| Attorneys Handling Other Consumer Cases | 300-950 | 475 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 225 |
| 1-3 | 200-350 | 250 |
| 3-5 | 175-550 | 300 |
| 6-10 | 200-625 | 350 |
| 11-15 | 225-700 | 400 |
| 16-20 | 175-775 | 475 |
| 21-25 | 225-750 | 500 |
| 26-30 | 200-950 | 500 |
| 31-35 | 400-850 | 600 |
| 36-40 | 350-700 | 500 |
| 41-45 | 200-1,000 | 450 |
| 46+ | 200-1,000 | 450 |

3.19 California, Sacramento - Roseville - Arden - Arcade

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.7 |
| Reputation Impact on Median | 1.25 |
| Average Concentration of Practice in Consumer Law | 76.7 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 27.1 |
| Average Number of Paralegals in Firm | .6 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 50-300 |
| 25% Median Attorney Rate for All Attorneys | 263 |
| Median Attorney Rate for All Attorneys | 400 |
| 75% Median Attorney Rate for All Attorneys | 513 |
| 95% Median Attorney Rate for All Attorneys | 738 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-700 | 400 |
| Attorneys Handling Class Action Cases | 175-950 | 450 |
| Attorneys Handling Credit Rights Cases | 175-1,000 | 425 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-750 | 350 |
| Attorneys Handling TCPA Cases | 175-750 | 438 |
| Attorneys Handling Udap Deception Cases | 175-1,000 | 375 |
| Attorneys Handling Other Consumer Cases | 325-950 | 550 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 225 |
| 1-3 | 200-325 | 250 |
| 3-5 | 175-450 | 263 |
| 6-10 | 200-600 | 350 |
| 11-15 | 225-700 | 400 |
| 16-20 | 250-725 | 438 |
| 21-25 | 175-800 | 525 |
| 26-30 | 400-950 | 600 |
| 31-35 | 400-850 | 513 |
| 36-40 | 325-850 | 500 |
| 41-45 | 300-1,000 | 475 |
| 46+ | 850-925 | 888 |

3.20 California, San Diego - Chula Vista - Carlsbad

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.76 |
| Reputation Impact on Median | 1.38 |
| Average Concentration of Practice in Consumer Law | 80.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 28.8 |
| Average Number of Paralegals in Firm | .69 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 25-300 |
| 25% Median Attorney Rate for All Attorneys | 325 |
| Median Attorney Rate for All Attorneys | 400 |
| 75% Median Attorney Rate for All Attorneys | 550 |
| 95% Median Attorney Rate for All Attorneys | 725 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 200-750 | 363 |
| Attorneys Handling Class Action Cases | 175-950 | 450 |
| Attorneys Handling Credit Rights Cases | 175-925 | 400 |
| Attorneys Handling Housing Rights Cases | 175-800 | 375 |
| Attorneys Handling Vehicle Cases | 175-750 | 375 |
| Attorneys Handling TCPA Cases | 175-750 | 425 |
| Attorneys Handling Udap Deception Cases | 175-1,000 | 400 |
| Attorneys Handling Other Consumer Cases | 300-950 | 425 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 175-250 | 200 |
| 1-3 | 200-350 | 250 |
| 3-5 | 200-550 | 275 |
| 6-10 | 250-600 | 450 |
| 11-15 | 300-625 | 425 |
| 16-20 | 300-775 | 500 |
| 21-25 | 225-800 | 475 |
| 26-30 | 200-950 | 623 |
| 31-35 | 500-850 | 650 |
| 36-40 | 325-700 | 600 |
| 41-45 | 425-1,000 | 500 |
| 46+ | 850-925 | 888 |

3.21 California, San Francisco - South San Francisco

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.98 |
| Reputation Impact on Median | 1.375 |
| Average Concentration of Practice in Consumer Law | 80.5 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 26.28 |
| Average Number of Paralegals in Firm | .51 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 50-300 |
| 25% Median Attorney Rate for All Attorneys | 300 |
| Median Attorney Rate for All Attorneys | 400 |
| 75% Median Attorney Rate for All Attorneys | 500 |
| 95% Median Attorney Rate for All Attorneys | 750 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 300-700 | 438 |
| Attorneys Handling Class Action Cases | 175-950 | 400 |
| Attorneys Handling Credit Rights Cases | 175-1,000 | 400 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-750 | 350 |
| Attorneys Handling TCPA Cases | 175-750 | 400 |
| Attorneys Handling Udap Deception Cases | 175-1,000 | 375 |
| Attorneys Handling Other Consumer Cases | 300-950 | 525 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 250 |
| 1-3 | 200-350 | 250 |
| 3-5 | 175-450 | 275 |
| 6-10 | 200-625 | 350 |
| 11-15 | 225-700 | 400 |
| 16-20 | 275-775 | 500 |
| 21-25 | 225-800 | 550 |
| 26-30 | 250-950 | 600 |
| 31-35 | 350-850 | 600 |
| 36-40 | 325-650 | 550 |
| 41-45 | 350-1,000 | 475 |
| 46+ | 850-925 | 888 |

3.22 California, San Jose - Sunnyvale - Santa Clara

| | |
|---|---|
| Average Number of Attorneys in Firm | 4.1 |
| Reputation Impact on Median | 1.2 |
| Average Concentration of Practice in Consumer Law | 58.5 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Personal Injury |
| Last Time Attorney Rate Changed (Average in Months) | 23.1 |
| Average Number of Paralegals in Firm | 1.1 |
| Median Paralegal Rate | 200 |
| Paralegal Median Hourly Rate Range, Low to High | 100-420 |
| 25% Median Attorney Rate for All Attorneys | 360 |
| Median Attorney Rate for All Attorneys | 475 |
| 75% Median Attorney Rate for All Attorneys | 600 |
| 95% Median Attorney Rate for All Attorneys | 900 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 360-775 | 525 |
| Attorneys Handling Class Action Cases | 250-950 | 550 |
| Attorneys Handling Credit Rights Cases | 325-1,100 | 500 |
| Attorneys Handling Housing Rights Cases | 250-850 | 425 |
| Attorneys Handling Vehicle Cases | 300-775 | 425 |
| Attorneys Handling TCPA Cases | 250-950 | 450 |
| Attorneys Handling Udap Deception Cases | 250-1,000 | 420 |
| Attorneys Handling Other Consumer Cases | 300-950 | 500 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 250-350 | 275 |
| 1-3 | 275-375 | 300 |
| 3-5 | 300-450 | 388 |
| 6-10 | 325-625 | 420 |
| 11-15 | 275-775 | 500 |
| 16-20 | 375-800 | 575 |
| 21-25 | 325-850 | 625 |
| 26-30 | 450-950 | 675 |
| 31-35 | 450-900 | 700 |
| 36-40 | 500-850 | 775 |
| 41-45 | 550-1,100 | 875 |
| 46+ | 850-925 | 888 |

3.23 California, San Luis Obispo - Paso Robles - Arroyo Grande

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.74 |
| Reputation Impact on Median | 1.35 |
| Average Concentration of Practice in Consumer Law | 79.7 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 31.8 |
| Average Number of Paralegals in Firm | 1.01 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 60-300 |
| 25% Median Attorney Rate for All Attorneys | 294 |
| Median Attorney Rate for All Attorneys | 400 |
| 75% Median Attorney Rate for All Attorneys | 513 |
| 95% Median Attorney Rate for All Attorneys | 700 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 175-750 | 375 |
| Attorneys Handling Class Action Cases | 175-950 | 438 |
| Attorneys Handling Credit Rights Cases | 175-1,000 | 400 |
| Attorneys Handling Housing Rights Cases | 175-800 | 350 |
| Attorneys Handling Vehicle Cases | 175-750 | 375 |
| Attorneys Handling TCPA Cases | 175-750 | 413 |
| Attorneys Handling Udap Deception Cases | 175-900 | 375 |
| Attorneys Handling Other Consumer Cases | 300-950 | 450 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 200-250 | 225 |
| 1-3 | 200-350 | 250 |
| 3-5 | 175-550 | 300 |
| 6-10 | 200-625 | 350 |
| 11-15 | 225-700 | 400 |
| 16-20 | 175-775 | 400 |
| 21-25 | 225-800 | 500 |
| 26-30 | 200-950 | 600 |
| 31-35 | 350-850 | 600 |
| 36-40 | 325-700 | 525 |
| 41-45 | 200-1,000 | 475 |
| 46+ | 850-925 | 888 |

3.24 California, Stockton - Lodi

| | |
|---|---|
| Average Number of Attorneys in Firm | 3.5 |
| Reputation Impact on Median | 1.25 |
| Average Concentration of Practice in Consumer Law | 72.8 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Last Time Attorney Rate Changed (Average in Months) | 25.0 |
| Average Number of Paralegals in Firm | .5 |
| Median Paralegal Rate | 150 |
| Paralegal Median Hourly Rate Range, Low to High | 50-300 |
| 25% Median Attorney Rate for All Attorneys | 250 |
| Median Attorney Rate for All Attorneys | 375 |
| 75% Median Attorney Rate for All Attorneys | 490 |
| 95% Median Attorney Rate for All Attorneys | 700 |

Median Rate for Practice Areas

| | Range | Median |
|---|---|---|
| Attorneys Handling Bankruptcy Cases | 168-675 | 375 |
| Attorneys Handling Class Action Cases | 168-900 | 438 |
| Attorneys Handling Credit Rights Cases | 168-960 | 413 |
| Attorneys Handling Housing Rights Cases | 168-760 | 338 |
| Attorneys Handling Vehicle Cases | 168-713 | 340 |
| Attorneys Handling TCPA Cases | 168-713 | 425 |
| Attorneys Handling Udap Deception Cases | 168-950 | 350 |
| Attorneys Handling Other Consumer Cases | 319-900 | 525 |

Experience Variable Table

| Years Practicing Consumer Law | Range | Median Attorney Hourly Rate |
|---|---|---|
| <1 | 188-238 | 225 |
| 1-3 | 188-313 | 250 |
| 3-5 | 175-425 | 263 |
| 6-10 | 188-575 | 350 |
| 11-15 | 225-630 | 400 |
| 16-20 | 240-675 | 438 |
| 21-25 | 188-788 | 525 |
| 26-30 | 380-900 | 600 |
| 31-35 | 380-810 | 513 |
| 36-40 | 313-813 | 500 |
| 41-45 | 288-950 | 475 |
| 46+ | 813-880 | 838 |

4. California Database Count

 Data in the California database upon which this report is based came from decisions made in judicial and nonjudicial contested attorney fee motions and voluntary self reporting by attorneys who participated in the survey.

 The chart below discloses the total attorney and paralegal data count for each California Metropolitan Statistical Area in this 2023 California Survey Report.

 **NOTE**: because an attorney and/or paralegal may practice regularly in several metropolitan statistical areas, the total of numbers below may not equal the total of survey data points in the survey report data population.

| California Metropolitan Statistical Area | Billable Attorney Data Count | Billable Paralegal Data Count |
|---|---|---|
| Bakersfield | 168 | 146 |
| Chico | 92 | 76 |
| Eastern Sierra Region | 59 | 55 |
| El Centro | 171 | 157 |
| Eureka - McKinleyville | 161 | 148 |
| Fresno - Madera | 86 | 79 |
| Irvine - Santa Ana | 192 | 173 |
| Los Angeles - Long Beach - Anaheim | 207 | 252 |
| Modesto | 110 | 79 |
| Mother Lode Region | 77 | 71 |
| Northern Mountain Region | 78 | 72 |

| | | |
|---|---|---|
| North Valley Region | 56 | 49 |
| Oakland - Hayward - Berkeley | 133 | 143 |
| Oxnard - Thousand Oaks - Ventura | 164 | 216 |
| Pasadena | 215 | 191 |
| Redding | 87 | 65 |
| Riverside - San Bernardino - Ongtario | 166 | 132 |
| Sacramento - Roseville - Arden - Arcade | 121 | 110 |
| San Diego - Chula Vista - Caralsbad | 197 | 171 |
| San Francisco - South San Francisco | 160 | 119 |
| San Jose - Sunnyvale - Santa Clara | 192 | 166 |
| San Luis Obispo - Paso Robles | 181 | 158 |
| Stockton - Lodi | 96 | 77 |

5. Evolving Data Analyses and Methodologies of Prior Survey Report Editions

Since the data and analyses in this California Metro Edition were drawn from the national Survey Report, the evolution of methodologies and techniques of data analyses of the Survey Report since 1999 may be helpful to the reader.

Since 1999, when practice information and fee rates for the early editions of this Survey Report began to be compiled, the Survey Report has undergone various revisions in both methodologies used and techniques of data gathering and analysis. Each revision resulted in further refinement of both the data as gathered and the final Survey Report as published.

Also since 1999, a number of judicial and nonjudicial cases have considered the previously published Survey Reports of years past. Subsequent to each such consideration, refinements were made in the survey's methodologies of data gathering, analysis performance, and results reporting were made to address judicial and nonjudicial commentary and criticism in order to continually improve the Survey Report and achieve even greater improvements in the accuracy and reliability of the Survey Report.

The continued refinement resulted in major revisions to data gathering, analyses procedures, and results reporting that occurred with the publishing of the Survey Reports in for 2013, 20145, and 2018. Such improvements included added detailed reporting on specific geocentric data from all 50 states and the District of Columbia, Puerto Rico and the U.S. Virgin Islands.

In addition, to provide more precise and more geocentric data, reporting included an ever-increasing number of Metropolitan Statistical Areas across the United States. The covered Metropolitan Statistical Areas in the 2023 Survey Report include virtually every major metropolitan area and every city where a federal courthouse is located in the United States.

As judicial and nonjudicial attorney fee decisions are made in the coming years, both complements and critiques continue to be welcomed by the Editor so that the Survey Report may continue its usefulness to the bench and bar.

5.1 A Word About Citation Practice and Supplemental Case Information

Only a small number of cases are actually designated for publication by a court and published in reporters. Many cases are unpublished but still appear in widely used electronic databases such as Lexis, Westlaw and elsewhere. This necessitates an explanation of the format of the citation practice employed in this Survey Report.

Where a case is available in a reporter, the reporter citation is used and may be followed by citation to a widely used electronic database.

Where a case is unpublished in a reporter but is available in a widely used electronic database, the citation format will have the following elements:

1. Name of the case, italicized with any conventional abbreviation
2. Name of the court with any conventional abbreviation
3. The electronic database identifier
4. Complete date the case was decided (month, day, and year), name of judge
5. Survey Report edition used by the Court
6. Field and/or area of law of case claim(s)
7. The amount of attorney fees granted by the decision
8. Each attorney hourly rate at the number years in practice decided by the Court
9. Each Paralegal hourly rate preceded by the word "Paralegal"

For example: *Cardoso v. FCA US LLC*, 2021 U.S. Dist. LEXIS 59772, 2021 WL 1176532 (N.D. Cal. Mar. 29, 2021, Mag. Judge Jacqueline Scott Corley) (2017-2018 Survey Report, in Vehicle Warranty breach case, $30,134 granted, $340 @ 8 years, $638 @ 27 years, $545 @ 24 years, Paralegal @ $150).

Where a case is unpublished and is not available in a widely used electronic database, the citation format will have the following elements:

1. Name of the case, italicized with any conventional abbreviation
2. Name of the court with any conventional abbreviation
3. Court docket or case number
4. Complete date the case was decided (month, day, and year)
5. Name of the deciding Judge with any conventional abbreviation
6. Where available, the docket number of the pleading providing or referring to

the Survey Report edition and/or data

7. Survey Report edition used by the Court

8. Field and/or area of law of case claim(s)

9. The amount of attorney fees granted by the decision

10. Where available, each attorney hourly rate at the number years in practice decided by the Court

11. Each Paralegal hourly rate decided by the Court preceded by the word "Paralegal"

For example: *Utter v. Keystone Wealth Mgmt. Grp.*, No. 2:21-cv-01527 (C.D. W.D. Cal., Jan. 18, 2022, Judge Gary Klausner, Doc. 15) (2017-2018 Survey Report, in Credit Rights, FDCPA case, $450 @ 6 years, Paralegal @ $120).

5.2 Significant California Decisions Discussing Use of these Survey Reports

Some of the significant cases using the U.S. Consumer Law Practice & Attorney Fee Survey Report when deciding attorney fee disputes in Consumer Law cases,  include the following.

*Phillips v. Archstone Simi Valley Llc*, 2017 U.S. Dist. LEXIS 235770, 2017 WL 11631962 (C.D. Cal. Nov. 8, 2017, Judge Dolly M. Gee) (2013-2014 Survey Report, in Credit Rights, FDCPA case, Court notes rejection of early Survey Reports but more recent acceptance of Survey Reports as credible evidence and following *Davis v. Hollins Law*, 25 F.Supp. 3d 1292, $89,100 granted, $500 @ 24 years).

*Arana v. Monterey Fin. Servs.*, 2016 U.S. Dist. LEXIS 46111, 2016 WL 1324269 (S.D. Cal., Apr. 4, 2016, Judge Larry Alan Burns) ("Of all the hourly rate evidence submitted by the parties, the most relevant is the Consumer Fee Survey's data .....") (2013-2014 Survey Report, in Credit Rights, FDCPA case, $4,450 granted).

*Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, 2019 U.S. Dist. LEXIS 133026, 2019 WL 2949028 (C.D. Cal., Apr. 16, 2019, Judge Percy Anderson) ("in recent years, the majority [of district courts in California] have been willing to consider the Report's results as evidence of prevailing hourly rates in FDCPA and Rosenthal Act cases.") (2015-2016 Survey Report, in Credit Rights,

FDCPA, Udap case, $53,640 granted, $450 @ 26 Years).

*Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 2014 WL 2619651 (E.D. Cal., Jun. 12, 2014, Senior Judge Lawrence K. Karlton) ("Plaintiff also relies on the United States Consumer Law Attorney Fee Survey Report 2010-2011..... The court has reviewed the methodology underlying the Survey, and finds it credible.").

*Ramirez v. N. Am. Asset Servs., LLC*, 2012 U.S. District LEXIS 54641, 2012 WL 1228086 (C.D. Cal., Apr. 9, 2012, Judge George H. King) (Court holding that the argument opposing the *Survey* was "untethered" to reality in light of the Survey Report's resulting data).

*Slotnick* v. I.C.Q. Search and Recovery, 2018 WL 6258888 (C.D. Cal., Sept. 19, 2018, Judge Jesus G. Bernal) ("The Court finds that the Attorney Fee Survey is an adequate means of establishing average billing rates for consumer protections attorneys in this forum" citing *Ramirez v. N. Am. Asset Servs. LLC*) (2015-2016 Survey Report, in Credit Rights, FDCPA case, $31,455 granted, $400 @ 10 Years).

*Bratton v. FCA US LLC*, 2018 U.S. Dist. LEXIS 180975, 2018 WL 52790581 (N.D. Cal. Oct. 22, 2018, Mag. Judge Joseph C. Spero) ("A number of courts, including courts in this District, have also found that the United States Consumer Law Attorney Fee Survey Report may be used as evidence of prevailing rates.") (2015-2016 Survey Report, in Vehicle Warranty breach case, $27,092 granted, $350 @ 16 Years; $500 @ 15 Years; $400 @ 15 Years; $325 @ 11 Years; $350 @ 5 Years; $250 @ 4 Years)

*Suleski v. Bryant Lafayette & Associates*, 2010 U.S. Dist. LEXIS 55353, 2010 WL 1904968 (E.D. Wis., May 10, 2010, Judge Rudolph T. Randa) ("However, the United States Consumer Law Attorney Fee Survey for 2008-09 for the Midwest and California, see www.consumerlaw.org/feesurvey (last visited May 7, 2010), supports the reasonableness of the hourly rates sought by counsel in light of their experience").

6. California State and Federal Court Cases Using Survey Report

A listing of California cases using the U.S. Consumer Law Practice & Attorney Fee Survey Report when deciding attorney fee disputes in Consumer Law cases includes those on the following list.

A nationwide listing of cases using the U.S. Consumer Law Practice & Attorney Fee Survey Report when deciding attorney fee disputes in Consumer Law cases is included in the national U.S. Consumer Law Practice & Attorney Fee Survey Report, published separately.

***Important Note***: numerous courts nationwide have used the Survey Report in deciding fees in cases brought under the Equal Access to Justice Act, EAJA and some of those decisions are included below. The reader should take note that under the EAJA, attorney's fees are set at the market rate, but capped at $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. See 28 U.S.C. 2412(d)(2(A). Since this is a "cap" on the hourly rate, the movant must still show entitlement and reasonableness of the requested hourly rate, even when requesting less than the cap number. Courts routinely allow the localized cost of living factor as an increase in the hourly rate, effectively increasing the hourly rate cap to an amount that is dependent on the jurisdiction. This should be borne in mind when reviewing any case noted below where EAJA provides the basis for an award of attorney fees.

## California

*DriveTime Car Sales Co., LLC v. James Lee Hubert*, California Superior Court, Los Angeles County, Central District, Case No. 22STCP04273 (Unpub., Jan. 13, 2023) (Judge Armen Tamzarian adopting tentative ruling confirming arbitration award granting attorney fees) (2017-2018 Survey Report in state Automobile Sales Finance Act case under Cal. Civ. Code 2983.4, $147,814 requested and granted, $645 @ 27 years, $545 @ 25 years,$490 @ 20 years,$435 @ 12 years, $310 @ 5 years, Paralegals @ $200, $150).

*Lady Bess Fishback v. FCA US, LLC*, NO B298677, 2021 Cal. App. Unpub. LEXIS 3144, 2021 WL 1940016 (Ct Apl, 2nd Dis., Div. 3, CA, May 14, 2021) (Judge Kalra, Judge Edmon, Judge Egerton) (in Vehicle Litigation, Magnuson Moss Case, $20,000 granted by Judge Randolph M. Hammock upheld on appeal, $20,000 affirmed, $475 @ 26 Years, $475 @ 16 years).

*Delacruz v. BMW of N. Am. LLC*, 2021 Cal. Super. LEXIS 62895 (Cal. Sup. Ct, Sacramento Co., Oct. 18, 2021; 2021 Cal. Super. LEXIS 62895, Sep. 1, 2021) (Overview: use of Survey Report disputed) (2017-2018 Survey Report, in Vehicle Warranty breach case, $325 @ 3 years, $470 @ 9 years, Paralegal @ $150, Paralegal @ $150).

*Ghassan Hadi, M.D., Inc. v. Mercedes-Benz USA, LLC*, 2021 WL 8973127 (Cal. Super., San Bernardino Co., Mar. 19, 2021, J. Lynn M. Poncin) (Trial Order) (2015-2016 Survey Report, in Vehicle Warranty breach case, $37,975 granted)

*Vivo v. Jcia Motors Am.*, 2019 Cal. Super. LEXIS 27549 (Cal Sup. Ct., Alameda Co., Sep. 17, 2019) (Overview: Survey Report allowed by Courts as evidence of prevailing rates) (2015-2016 Survey Report, in Vehicle Warranty breach case, $27,092 granted, $500 @ 16 years, $400 @ 16 years, $350 @ 6 years, $350 @ 17 years, $325 @ 12 years, $250 @ 5 years).

*Yamsani v. Mercedes-Benz United States*, 2019 Cal. Super. LEXIS 24717 (Cal. Sup. Ct, Alameda Co., Jun. 29, 2019) (holding that "block billing is not objectionable 'per se,' and in some cases there may be circumstances 'justifying block billing in the peculiar facts of the case.") (2016 Survey Report, in Vehicle Warranty case, $55,970 granted, $600 @ 21 years, $500 @ 37 years).

*Salazar v. FCA US LLC*, 2019 Cal. Super. LEXIS 32032 (Cal. Sup. Ct. Riverside Co., Jan. 29, 2019) (Overview: Movant did not provide relevant pages of Survey Report) ([year not stated] Survey Report, in Vehicle Warranty breach case, $71,087 granted, hourly rates ranged from $250 to $550 for unstated number of attorneys resulting in average hourly rate of $369).

*Masri v. FCA US LLC*, 2019 Cal. Super. LEXIS 55505 (Cal. Sup. Ct. Orange Co., Mar. 14, 2019) (2015-2016 Survey Report, in Vehicle Warranty case, $17,890 granted, $500 @ 28 years, $425 @ 14 years, $400 @ 9 years).

*Warren v. Kia Motors America*, 2018 Cal. App. LEXIS 1144, 2018 WL 6520889, 30 Cal.App.5th 24, 241 Cal.Rptr.3d 263 (C.A. 4th App Dist, Div. Two, Cal., Dec. 12, 2018, Judge Fields, Judge Miller, Judge Slough) (Overview: trial court abused its discretion in applying a 33% negative multiplier to plaintiff's requested lodestar attorney fees in order to make the fee award roughly proportionate to plaintiff's damage award.) (2015-2016 Survey Report, in Lemon Law, Vehicle Litigation case, trial court's reduction of lodestar calculation making fees proportionate to damages was reversed).

*Hunter v. Us*, 2018 Cal. Super. LEXIS 85850 (Cal. Sup. Ct., Sacramento, Jul. 18, 2018) (2015-2016 Survey Report, in Vehicle Warranty breach case, $27,585 granted, $450 @ 16 years).

*Aragon v. Ford Motor Credit* Co., 2018 Cal. Super. LEXIS 93717 (Sup. Ct., Sacramento Co., Feb. 20, 2018) (2015-2016 Survey Report, in Vehicle Warranty breach case, $47,045 granted, $$500 @ 20 years, $380 @ 9 years, $475 @ 30 years, $380 @ 17 years, $285 @ 4 years).

*Medina v. South Coast Car Co.*, 15 Cal. App. 5th 671, 2017 Cal. App. LEXIS 820, 2017 WL 4247131 (C.A. 4th App Dist, Div. One, Cal., Sept 19, 2017, Judge Benke, Judge Nares, Judge Aaron) (Overview: previous rejection of a settlement offer did not bar fees where not tendered) (2013-2014 Survey Report, in vehicle sales fraud case, $128,004 granted and upheld on appeal).

*Hollandsworth v. McDowell*, 2015 WL 12830177 (Cal. Super., Alameda, May 20, 2015, Judge Brenda Harbin-Forte) (2007 Survey Report, in Vehicle Warranty breach case, $27,027 requested and granted).

## California, C.D.

*William L. v. Kijakazi*,, 2022 U.S. Dist. LEXIS 215724, 2022 WL 17251973 (C.D. Cal. Sep. 15, 2022, Mag. J. Karen L. Stevenson) (2017-2018 Survey Report, in EAJA, Social Security, SSI, Disability case, $20,000 requested and granted, $1,624 @ 4 years).

*Glover v. Mercedes-Benz United States LLC*, 2022 U.S. Dist. LEXIS 213128, 2022 WL 17080196 (C.D. Cal. Aug. 9, 2022, Mag. Judge John D. Early) (2017-2018 Survey Report, in Vehicle Warranty breach case, $30,479 granted,

$695 @ 34 years, $450 @ 10 years, $450 @ 10 years, $400 @ 7 years, $375 @ 2 years, Paralegals @ $200, $200, $200, $150, $150, $150).

*Pacheco v. Ford Motor Co.*, 2022 U.S. Dist. LEXIS 51511, 2022 WL 845108 (C.D. Cal. Mar. 21, 2022, Judge Otis D. Wright II) (2017-2018 Survey Report, in Vehicle Warranty breach case, $38,543 granted, $550 @ 36 years,$550 @ 19 years,  $375 @ 10 years, $400 @ 9 years,$350 @ 9 years,$345 @ 9 years, $295 @ 7 years, $300 @ 7 years, $295 @ 6 years, $250 @ 6 years, $325 @ 5 years, $300 @ 5 years, $300 @ 3 years, $250 @ 3 years, $225 @ 3 years, $250 @ 1 year).

*Utter v. Keystone Wealth Mgmt. Grp.*, No. 2:21-cv-01527 (C.D. W.D. Cal., Jan. 18, 2022, Judge Gary Klausner, Doc. 15) (2017-2018 Survey Report, in Credit Rights, FDCPA case, $450 @ 6 years, Paralegal @ $120).

*Valenzuela v. Kijakazi*, 2022 U.S. Dist. LEXIS 110701, 2022 WL 2198705 (C.D. Cal. Jan. 12, 2022, Mag. Judge Karen L. Stevenson) (2017-2018 Survey Report, in EAJA, Social Security, SSI, Disability case, $18,000 requested and granted).

*Brown v. Duringer Law Grp. PLC*, 2021 U.S. Dist. LEXIS 245962, 2021 WL 6104817 (C.D. Cal. Nov. 10, 2021, Judge David O. Carter) (2017-2018 Survey Report in Anti-Slap motion, $5,963 granted, $281 @ 3 years, $595 @ 40 years).

*Salazar v. Glenn E. Thomas Co.*, 2021 U.S. Dist. LEXIS 219981, 2021 WL 5230798 (C.D. Cal. Nov. 5, 2021, Judge Dale S. Fischer) (2017-2018 Survey Report, 2019 edition, in Vehicle Warranty breach case, $10,937 granted, $500 @ 19 years, $400 @ 13 years, $275 @ 7 years, $275 @ 7 years, $350 @ 5 years, $225 @ 7 years, $200 @ 2 years).

*Wenseslao Olague v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 260085, 2021 WL 9095731 (C.D. Cal. June 29, 2021, Judge Mark C. Scarsi) ([unstated year} Survey Report, in Vehicle Warranty Breach case, $15, 275 granted, $325 @ 19 years, $325 @ 9 years, $325 @ 10 years, $225 @ 13 years, $225 @ 11 years, $225 @ 7 years, $225 @ 7 years, $225 @ 9 years, $225 @ 3 years).

*Bauman v. Ford Motor Co.*,2021 U.S. Dist. LEXIS 197323, 2021 WL 2792310 (C.D. Cal. Feb. 3, 2021, Judge Dolly M. Gee) (2017-2019 Survey Report

2019 Ed., in Vehicle Warranty, state Udap law case, $43,809 fees granted, $650 @ 42 years, $550 @ 17 years, $395 @ 16 years, $375 @ 12 years, $400 @ 8 years, $350 @ 8 years, $325 @ 7 years, $450 @ 10 years, $400 @ 8 years, $275 @ 6 years, $250 @ 5 years, $300 @ 5 years, $250 @ 5 years, $225 @ 4 years, $225 @ 2 years, Paralegal @ $200, Paralegal @ $200).

*R.R.B. v. Saul*, 2021 U.S. Dist. LEXIS 48117, 2021 WL 945251 (C.D. Cal. Jan. 11, 2021, Mag. Judge Shasi H. Kewalramani) (2017-2018 Survey Report, 2019 edition, in EAJA, Social Security Disability Benefits case, $12,926 granted, $739 @ 23 years).

*Pedante v. Ford Motor Co. (In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.)*, 2020 U.S. Dist. LEXIS 146290, 2020 WL 4720043 (C.D. Cal. Aug. 13, 2020, Judge Andre Birotte, Jr.) (2017-2018 Survey Report, $49,987 granted, $$$450 @ 17 years, $375 @ 8 years, $375 @ 19 years, $375 @ 10 years,$350 @ 7 years, $375 @ 12 years, $255 @ 8 years, $250 @ 8 years).

*Carrera v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 263326, 2020 WL 13042577 (C.D. Cal. July 22, 2020, Judge Stephen V. Wilson) (2017-2018 Survey Report used, 2018 Real Rate Report use rejected, in Vehicle Warranty breach case, $11,824 granted, $350 @ 7 years, $275 @ 8 years, $415 @ 11 years, $375 @ 12 years, $325 @ 8 years, $415 @ 44 years, $425 @ 13 years, $500 @ 17 years, $500 @ 18 years.

*Salmeron v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 253155, 2020 WL 9217979 (C.D. Cal. July 14, 2020, Judge Stephen V. Wilson) (2017-2018 Survey Report used, 2018 Real Rate Report use rejected, in Vehicle Warranty breach case, $30,039 granted, $350 @ 7 years, $275 @ 6 years, $375 @ 12 years, $300 @ 5 years, $325 @ 8 years, $350 @ 16 years, $500 @ 17 years, $325 @ 5 years, $325 @ 4 years, $350 @ 9 years, $350 @ 9 years.

*Barrera v. Jaguar Land Rover N. Am.*, 2020 U.S. Dist. LEXIS 128989, 2020 WL 4003653 (C.D. Cal. June 3, 2020, Judge David O. Carter) (2017-2018 Survey Report, in Vehicle Warranty breach case, $143,062 granted, $275 @ 8 years, $550 @ 17 years, $600 @ 35 years).

*Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 2020 WL

1129864 (C.D. Cal. Mar. 3, 2020, Senior Judge Ronald S. W. Lew) (2017-2018 Survey Report, in Vehicle Warranty breach case, $148,538 granted, $525 @ 16 years, $435 @ 10 years, $350 @ 2 years, $365 @ 3 years, $410 @ 6 years, $445 @ 9 years, $395 @ 6 years, $650 @ 16 years, $545 @ 18 years, $600 @ 26 years, $275 @ 2 years).

*Pollard v. FCA US LLC*, 2020 U.S. Dist. LEXIS 2319, 2020 WL 57270 (C.D. Cal. Jan. 3, 2020, Judge Josephine L. Staton) (2015-2016 Survey Report, in Vehicle Warranty breach case, $46,950 granted, $325 @ 8 years, $375 @ 20 years, $450 @ 16 years).

*Shaw v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 2320, 2020 WL 57273 (C.D. Cal. Jan. 3, 2020, Judge Josephine L. Staton) (2015-2016 Survey Report, in Vehicle Warranty breach case, $19,311 granted, $325 @ 7 years, $375 @ 20 years, $375 @ 11 years).

*Ibarra v. Navient Sols., LLC*, 2019 U.S. Dist. LEXIS 210344, 2019 WL 6618933 (C.D. Cal. Dec. 5, 2019, Judge Josephine L. Staton) (2015-2016 Survey Report, in TCPA, Credit Rights, FDCPA, Arbitration confirmation case, $3,658 granted, $273 @ 7 years.

*Maddox v. Fca United States*, 2019 U.S. Dist. LEXIS 239999, 2019 WL 13043632 (C.D. Cal. Oct. 18, 2019, Judge John A. Kronstadt) ( 2017-2018 Survey Report, in Vehicle Warranty breach case, $34,500 granted, $435 @ 13 years, $385 @ 7 years, $475 @ 16 years, $375 @ 7 years, $600 @ 25 years, $400 @ 10 years).

*Biggerstaff v. Saul*, 2019 U.S. Dist. LEXIS 165007, 2019 WL 4138015 (C.D. Cal., July 5, 2019, Mag. Judge Jacqueline Chootljian) (while quoting applicable hourly rates from Survey Report, court adopted "de facto hourly rate of "$1,400 per hour for combined attorney and Paralegal time") (2015-2016 Survey Report, in EAJA, Social Security case, $32,760 granted).

*Liu v. BMW of North America, LLC*, 2019 U.S. Dist. LEXIS 166955, 2019 WL 4196061 (C.D., W.D., Cal. May 29, 2019, Mag. Judge Alexander F. MacKinnon) (2013-2014 Survey Report, in Vehicle Warranty Law case, $140,567 granted, $475 @ 12 Years; $500 @ 43 Years; $450 @ 14 Years; $550 @ 26 Years).

*Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, 2019 U.S. Dist. LEXIS 133026, 2019 WL 2949028 (C.D. Cal., Apr. 16, 2019, Judge Percy Anderson) ("in recent years, the majority [of district courts in California] have been willing to consider the Report's results as evidence of prevailing hourly rates in FDCPA and Rosenthal Act cases.") (2015-2016 Survey Report, in Credit Rights, FDCPA, Udap case, $53,640 granted, $450 @ 26 Years).

*Cunningham v Meridian Credit Group, LLC*, 2019 U.S. Dist. LEXIS 23680, 2019 WL 643966 (C.D. Cal., Feb. 11, 2019, Judge Jesus G. Bernal) (2013-2014 Survey Report, in Credit Rights, FDCPA case, $8,410 granted, $300 @ 2 years; $400 @ 4 years).

*Castaneda v. Ocwen Loan Servicing*, 2018 U.S. Dist. LEXIS 198852 (C.D. Cal., Nov. 21, 2018) (2015-2016 Survey Report, in Housing Rights, Credit Rights, FCRA, FDCPA case, $77,418 granted) (movant cited two pages of excerpted fee survey without explanation of how they supported request and cited rates from Arizona instead of the relevant Los Angeles community; court used hourly rates requested by one movant and reduced the other movant 10% after using awards by movant and its own knowledge of the local legal market) ($550 at 27 years; $450 @ 8 years).

*Carrion v Kirby Oldsmobile, Inc.*, 2018 U.S. Dist. LEXIS 224025, 2018 WL 6137127 (D.D. Cal., Nov. 9, 2018, Judge James V. Selna) (objection to admission into evidence of *United States Consumer Law Attorney Fee Survey Report* overruled; attorney performing Paralegal duties in case awarded Paralegal hourly rate) (2015-2016 Survey Report, Vehicle Warranty breach case, $32,786 granted, $475 @ 21 Years; $450 @ 21 Years; $350 @ 8 Years; Paralegal @ $150).

*Low-Iacovino v. Benefit Plan Committee of Nonbargained Program of AT&T Pension Benefit Plan*, 2018 WL 6985241 (C.D. Cal., July 2, 2018, Judge Andre Birotte Jr.) (2015-2016 Survey Report, in ERISA case, $33,630 granted) (Survey Report helpful but evidence of comparable rates in comparable ERISA cases desired and used by Court in fee decision).

*Townsend v. Yorkshire Acquisition Group*, 2018 U.S. Dist. LEXIS 142429, 2018 WL 4006956 (C.D. Cal., May 7, 2018, Judge James V. Selna) (2013-2014

Survey Report, in Credit Rights, FDCPA case, $4,480 granted, $400 @ 3 Years; $300 @ 1 Year).

*Wilson v Berryhill*, 2018 U.S. Dist. LEXIS 227924, 2018 WL 6010320 (C.D. Cal., May 4, 2018, Mag. Judge Rozella A. Oliver) (2013-2014 Survey Report, in EAJA, Social Security case, $4,341 granted).

*Phillips v. Archstone Simi Valley Llc*, 2017 U.S. Dist. LEXIS 235770, 2017 WL 11631962 (C.D. Cal. Nov. 8, 2017, Judge Dolly M. Gee) (2013-2014 Survey Report, in Credit Rights, FDCPA case, Court notes rejection of early Survey Reports but more recent acceptance of Survey Reports as credible evidence and following *Davis v. Hollins Law*, 25 F.Supp. 3d 1292, $89,100 granted, $500 @ 24 years).

*Benedict v. Fidelity Capital Holdings, Inc.*, 2016 WL 11518497 (C.D. Cal., June 9, 2016, Judge S. James Otero) (2013-2014 Survey Report, in Credit Rights, FDCPA case, $14,820 granted, $650 @ 25 Years).

*Vardanyan v. CMRE Fin. Servs.*, 2013 U.S. Dist. LEXIS 183486, 2013 WL 12469725 (C.D. Cal., Feb. 11, 2013, Judge James V. Selna) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $18,303 granted).

*Ramirez v. N. Am. Asset Servs., LLC*, 2012 U.S. District LEXIS 54641, 2012 WL 1228086 (C.D. Cal., Apr. 9, 2012, Judge George H. King) (2007 Survey Report, in Credit Rights, FDCPA case, $2,126 requested and granted).

*Krapf v. Nationwide Credit, Inc.*, 2010 U.S. Dist. LEXIS 116689, 2010 WL 4261444 (C.D. Cal., Oct. 21, 2010, Judge James V. Selna) (2007 Survey Report, in Credit Rights, FDCPA case, hourly rates requested and approved, $26,120 granted).

## California, E.D.

*McElhenie v. Go To Dra LLC*, Case No. 2:20-cv-02247, Doc. 10, Exh. A (unpublished) (E.D. Cal., Aug. 17, 2022, J. Morrison C. England, Jr.) (2017-2018 Survey Report in Credit Rights, FDCPA case, $4,506 granted, $425 @ 18 years, Paralegal @ $160).

*Seebach v. BMW of N. Am., LLC*, 2020 U.S. Dist. LEXIS 152330, 2020 WL 4923664 (E.D. Cal. Aug. 21, 2020, Chief Judge Kimberly J. Mueller) (2017-2018 Survey Report, in Vehicle Warranty breach case, $55,913 granted, $505 @ 20 years, $505 @ 20 years, $650 @ 35 years, $200 @ 1 year, $350 @ 4 years, Paralegal @ $150, certified Paralegal @ $175).

*Uhl v. Colvin*, 2016 U.S. Dist. LEXIS 78779, 2016 WL 3361800 (E.D. Cal., Jun. 15, 2016, Mag. Judge Sandra M. Snyder) (2013-2014 Survey Report, in EAJA, Social Security case, $10,363 granted, $190 @ 30 years, Paralegal @ $125).

*Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 2014 WL 2619651 (E.D. Cal., Jun. 12, 2014, Senior Judge Lawrence K. Karlton) (2010-2011 Survey Report, in Credit Rights, FDCPA case, "The court has reviewed the methodology underlying the Survey, and finds it credible.", $35,813 granted, $387 @ 9 years, $290 @ 11 years, $290 @ 6 years, $237 @ 2 years).

## California, N.D.

*Wu v. BMW of N. Am., LLC*, 2022 U.S. Dist. LEXIS 126852, 2022 WL 2802979 (N.D. Cal. July 18, 2022, Mag. Judge Donna M. Ryu) (2017-2018 Survey Report, in Vehicle Warranty breach case, $13,084 granted, $400 @ 9 years, $600 @ 24 years).

*McGary v. FCA US LLC*, 2021 U.S. Dist. LEXIS 246924, 2021 WL 6126965 (N.D. Cal. Dec. 28, 2021, Judge Susan Illston) (2017-2018 Survey Report, in Vehicle Warranty breach case, $39,317 granted, 300 @ 8 years, $275 @ 5 years.

*Covarrubias v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 150163, 2021 WL 3514095 (N.D. Cal. Aug. 10, 2021, Judge Edward M. Chen) (2017-2018 Survey Report, in Vehicle Warranty breach case, $44,295 granted, $$460 @ 11 years, $435 @ 4 years, $460 @ 13 years, $450 @ 8 years, $550 @ 15 years).

*Hanrahan v. Statewide Collection, Inc.*, 2021 U.S. Dist. LEXIS 111313, 2021 WL 2416866 (N.D. Cal. June 14, 2021, Judge Maxine M. Chesney), aff'd 2022 WL 3998586 (9th Cir. (Cal.) Sep. 1, 2022) (2017-2018 Survey Report used,

Laffey Matrix rejected), in Credit Rights, FDCPA case, $53,604 granted, $400 @ 7 Years, $400 @ 15 Years).

*Cardoso v. FCA US LLC*, 2021 U.S. Dist. LEXIS 59772, 2021 WL 1176532 (N.D. Cal. Mar. 29, 2021, Mag. Judge Jacqueline Scott Corley) (201702018 Survey Report), Vehicle Warranty, Lemon Law case, $28,206 granted, $340/hr @ 7 Years, $545 @ 23 Years, $624 @ 26 Years, senior law clerk @ $150).

*Reenders v Premier Recovery Group*, 2019 U.S. Dist. LEXIS 105386, 2019 WL 2583595 (N.D. Cal., May 7, 2019, Mag. Judge Jacqueline Scott Corley) (2015-2016 Survey Report, in Credit Rights, FDCPA case, $1,350 granted, $225 @ 2 Years).

*Slotnick* v. I.C.Q. Search and Recovery, 2018 WL 6258888 (C.D. Cal., Sept. 19, 2018, Judge Jesus G. Bernal) ("The Court finds that the Attorney Fee Survey is an adequate means of establishing average billing rates for consumer protections attorneys in this forum" citing *Ramirez v. N. Am. Asset Servs. LLC*) (2015-2016 Survey Report, in Credit Rights, FDCPA case, $31,455 granted, $400 @ 10 Years).

*Bratton v. FCA US LLC*, 2018 U.S. Dist. LEXIS 180975, 2018 WL 52790581 (N.D. Cal. Oct. 22, 2018, Mag. Judge Joseph C. Spero) ("A number of courts, including courts in this District, have also found that the United States Consumer Law Attorney Fee Survey Report may be used as evidence of prevailing rates.") (2015-2016 Survey Report, in Vehicle Warranty breach case, $27,092 granted, $350 @ 16 Years; $500 @ 15 Years; $400 @ 15 Years; $325 @ 11 Years; $350 @ 5 Years; $250 @ 4 Years).

*Forkum v. Co-Operative Adjustment Bureau, Inc.*, 2014 U.S. Dist. LEXIS 106912, 2014 WL 3827955 (N.D. Cal. Oakland Div., Aug. 4, 2014, Judge Saundra Brown Armstrong) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $21,097 granted) (initial motion denied without prejudice at  2014 U.S. Dist. LEXIS 91148, 2014 WL 3101784).

*Senah, Inc. v. Xi'an Forstar S&T Co*, 2016 U.S. Dist. LEXIS 72293, 2016 WL 3092099 (N.D. Cal., Jun. 2, 2016, Judge Beth Labson Freeman) (2013-2014 Survey Report, in breach of contract case, $145,692 granted, $300 @ 38 years).

*Klein v. Law Offices of D. Scott Carruthers*, 2015 U.S. Dist. LEXIS 75269, 2015 WL 3626946 (N.D. Cal., Jun. 10, 2015, Judge Charles R. Breyer) (2013-2014 Survey Report, in Credit Rights, FDCPA case, $4,886 granted).

*Hampton v. Colvin*, 2015 U.S. Dist. LEXIS 53630, 2015 WL 1884313 (N.D. Cal., Apr. 23, 2015, Mag. Judge Maria-Elena James) (2010-2011 Survey Report, in EAJA, Social Security case, $3,741 granted).

*Brown v. Mandarich Law Group, LLP*, 2014 U.S. Dist. LEXIS 47020, 2014 WL 1340211 (N.D. Cal., Apr. 2, 2014, Mag. Judge Jacqueline Scott Corley) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $7,485 granted).

*Castro v. Commercial Recovery Sys.*, 2014 U.S. Dist. LEXIS 33675 (N.D. Cal., Mar. 13, 2014, Judge Lucy H. Koh) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $2,520 granted).

*Stephenson v. Neutrogena Corporation*, 2012 U.S. Dist. LEXIS 105099, 2013 WL 12310811 (N.D. Cal., Aug. 22, 2013, Judge Phyllis J. Hamilton) (2010-2011 Survey Report, in Class Action case, $433,333 granted).

*Chan v. Booska*, 2013 U.S. Dist. LEXIS 109005 (N.D. Cal., Jul. 15, 2013, Judge Phyllis J. Hamilton) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $9,600 granted).

*Garcia v. Resurgent Capital Servs.*, 2012 U.S. Dist. LEXIS 123889, 2012 WL 3778852 (N.D. Cal., Aug. 30, 2012, Judge Edward M. Chen) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $187,292 granted).

*Ramirez v. North American Asset Services, LLC*, 2012 U.S. District LEXIS 54641, 2012 WL 1228086 (C.D. Cal., Apr. 9, 2012, Judge George H. King) (holding the opposition to use of the Survey Report was "untethered" to reality and the Survey Report  "more than adequately established that their billing rates are in line with the prevailing hourly rates in this community") ([year not stated] Survey Report), in Credit Rights, FDCPA case, $2,521 granted).

**California, S.D.**

*Allshouse v. Comm'r of Soc. SEC*, 2022 U.S. Dist. LEXIS 203668, 2022 WL 16630948 (S.D. Cal. Feb. 3, 2022, Mag. Judge Barbara L. Major) ([unstated year] Survey Report in EAJA, Social Security case, $11,681 granted, $2008 @ 45 years, $213 @ 45 years, Paralegal @ 125).

*Guillermo G. v. Kijakazi*, 2021 U.S. Dist. LEXIS 183449, 2021 WL 4356132 (S.D. Cal. Sep. 23, 2021, Mag. Judge Jill L. Burkhardt) ([Unstated year] Survey Report, in EAJA, Social Security case, $ $2,100 granted, $208 @ 25 years, Paralegal @ $143).

*Kreischer v. Saul*, 2020 U.S. Dist. LEXIS 173255, 2020 WL 5642625 (S.D. Cal. Sep. 21, 2020, Judge Thomas J. Whelan) (2017-2018 Survey Report, in EAJA, Social Security case, $18,000 granted).

*Roland S. v. Saul*, 2021 U.S. Dist. LEXIS 170318, 2021 WL 4081567 (S.D. Cal. Sep. 7, 2021, Maj. Judge Allison H. Goddard) (2017-2018 Survey Report, in EAJA, Social Security case, "Courts may consider the United States Consumer Law Attorney Fee Survey Report to determine the appropriate market rate for Paralegals in a given area," citing *Ulugalu v. Berryhill*, 2018 U.S. Dist. LEXIS 72442, 2018 WL 2012330 (S.D. Cal., Apr 30, 2018) and *Rosemary G. V. v. Saul*, 2020 U.S. Dist. LEXIS 212580, 2020 WL 6703123 (S.D. Cal. Nov. 12, 2020), Paralegal @ $143).

*Ayersman v. Berryhill*, 2021 U.S. Dist. LEXIS 1253, 2021 WL 37717 (S.D. Cal. Jan. 4, 2021, Judge William Q. Hayes) (2017-2018 Survey Report, in EAJA, Social Security Disability Benefits Case, $10,000 granted, $787 @ 8 yr).

*McCurley v. Royal Sea Cruises, Inc.*, 2020 U.S. Dist. LEXIS 227110, 2020 WL 7074948 (S.D. Cal. Dec. 3, 2020, Judge Cynthia Bashant) (2017-2018 Survey Report, in Class action motion for sanctions, $46,298 granted, $450 @ 4 years, $625 @ 10 years, $725 @ 20 years, $710 @ 15 years).

*Beatriz B. v. Saul*, 2020 U.S. Dist. LEXIS 159330, 2020 WL 5203371 (S.D. Cal. Sep. 1, 2020, Mag. Judge Allison H. Goddard) (2017-2018 Survey Report, in EAJA, Social Security Disability case, citing *Ulugalu v. Berryhill*, 2018 U.S. Dist. LEXIS 72442, 2018 WL 2012330 (S.D. Cal., Apr 30, 2018), $4,450 granted, $205 @ 23 years, Paralegal @ $131).

*Jurosky v. BMW of N. Am., LLC*, 2020 U.S. Dist. LEXIS 154224, 2020 WL 5033584 (S.D. Cal. Aug. 25, 2020, Judge Jeffrey T. Miller) (declining to use the Real Rate Report) (2017 Survey Report, in Vehicle Warranty breach case, $137,960, $550 @ 19 years, $460 @ 13 years, $445 @ 12 years, $425 @ 14 years, $410 @ 9 years, $385 @ 10 years, $375 @ 8 years, $385 @ 10 years, $395 @ 9 years, $365 @ 6 years, $350 @ 7 years, $385 @ 5 years, $350 @ 5 years, $545 @ 20 years, $600 @ 28 years, $275 @ 7 years).

*Caccamise v. Credit One Bank, N.A.*, 2020 U.S. Dist. LEXIS 27251, 2020 WL 804741 (S.D. Cal. Feb. 18, 2020, Judge Janis L. Sammartino) (2013-2014, 2015-2016, 2017-2018 Survey Reports, in Credit Rights, Identity Theft, FCRA, FDCPA case, $75,270 granted, $550 @ 17 years, $275 @ 8 years).

*Odyssey Reinsurance Co. v. Nagby* (S.D. Calif., Dec. 27, 2019, Judge Barry Ted Moskowitz), 2019 U.S. Dist. LEXIS 221812, 2019 WL 7282508 (2017-2018 Survey Report, in Credit Rights FDCPA case, $199,295 granted, $440 @ 40 yr, $350 @ 9 yr; 17 year Paralegal @ $125 @ 17 yr, 10 year Paralegal @ $125).

*Rosemary G. V. v. Saul*, 2020 U.S. Dist. LEXIS 212580, 2020 WL 6703123 (S.D. Cal. Nov. 12, 2020, Mag. Judge Ruth Bermudez Montenegro) (holding that "In determining the market rate for paralegals, courts may look to the" Survey Report") (2017-2018 Survey Report, in EAJA, Social Security case, $4,212 granted, $202 @ 36 years, Paralegal @ $130).

*Kreischer v. Saul*, 2020 U.S. Dist. LEXIS 173255, 2020 WL 5642625 (S.D. Cal. Sep. 21, 2020, Judge Thomas J. Whelan) (2017-2018 Survey Report, in EAJA, Social Security case, $18,000 granted).

*Acosta v. Patenaude & Felix*, 2020 U.S. Dist. LEXIS 165852, 2020 WL 5423875 (S.D. Cal. Sep. 10, 2020, Judge Cathy Ann Bencivengo) (2017-2018 Survey Report in Credit Rights, FDCPA, Class Action case, $40,658 granted, $550 @ 21 years, $495 @ 14 years).

*Norris v. Saul*, 2019 U.S. Dist. LEXIS 141318, 2019 WL 3935638 (S.D. Cal., August 20, 2019, Judge Thomas J. Whelan) (2015-2016 Survey Report, in EAJA, Social Security Disability case under 42 U.S.C. 406(b), $10,000 granted).

*Avina v. Saul*, 2021 U.S. Dist. LEXIS 121184, 2021 WL 2662309 (S.D. Cal.

June 29, 2021, Judge Thomas J. Whelan) (2017-2018 Survey Report, in EAJA,
Social Security case, $14,000 granted; no hourly rate stated).

*Jackson v. Berryhill*, 2019 U.S. Dist. LEXIS 57665, 2019 WL 1470869
(S.D. Cal., Apr 3, 2019, Judge Thomas J. Whelan) (2015-2016 Survey Report, in
EAJA, Social Security case, $24,700 granted).

*Cash v. Berryhill*, 2019 U.S. Dist. LEXIS 57694, 2019 WL 1469098 (S.D.
Cal., Apr 3, 2019, Judge Thomas J. Whelan) (2015-2016 Survey Report, in EAJA,
Social Security case, $21,224 granted).

*Overton v. Berryhill*, 2018 U.S. Dist. LEXIS 209766, 2018 WL 6523442
(S.D. Cal., Dec. 11, 2018, Judge Roger T. Benitez) ("While Plaintiff has provided
no evidence to support the reasonableness of the requested Paralegal rate,
despite it being his burden to do so, the Court looks to the [2015-2016] United
States Consumer Law Attorney Fee Survey Report ("Report") to determine the
market rate for Paralegals," adopting the reported $100/hour San Diego
Paralegal median rate) (2015-2016 Survey Report, in EAJA, Social Security case,
$9,004 granted, $200 @ 41 Years, Paralegal @ $100).

*Cole v. Mercantile Adjustment Bureau, LLC*, 2018 U.S. Dist. LEXIS
193511, 2018 WL 5920019 (S.D. Cal., Nov. 12, 2018, Judge M. James Lorenz)
(2015-2016 Survey Report, in Credit Rights, FDCPA case,  $4,290 granted, $375
@ 7 years; $375 @ 11 years; $150 @ 1 Years).

*Ulugalu v. Berryhill*, 2018 U.S. Dist. LEXIS 72442, 2018 WL 2012330
(S.D. Cal., Apr 30, 2018, Judge Gonzalo P. Curiel) (using the figures in the Survey
Report to assess whether the requested paralegal hourly rate was reasonable; In
the absence of evidence from the movant, "the Court looks to [the 2015-2016
Survey Report], noting "the Court looks to the United States Consumer Law
Attorney Fee Survey Report ("Report") to determine the market rate for
Paralegals," citing *Uhl v. Colvin*, 2016 U.S. Dist. LEXIS 78779, 2016 WL 3361800
(E.D. Cal., Jun. 15, 2016) and *Schneider v. Social Security Administration*, 2014
U.S. Dist. LEXIS 119553, 2014 WL 4251590 (D. Nev., Aug. 27, 2014) , and
adopting the reported $100/hour San Diego Paralegal median rate) (2015-2016
Survey Report, in EAJA, Social Security case, $6,136 granted, Paralegal @ $100).

*Arana v. Monterey Fin. Servs.*, 2016 U.S. Dist. LEXIS 46111, 2016 WL

1324269 (S.D. Cal., Apr. 4, 2016, Judge Larry Alan Burns) ("Of all the hourly rate evidence submitted by the parties, the most relevant is the Consumer Fee Survey's data .....") (2013-2014 Survey Report, in Credit Rights, FDCPA case, $4,450 granted).

*Nguyen v. HOVG, LLC*, 2015 U.S. Dist. LEXIS 124019, 2015 WL 5476254 (S.D. Cal., Sept. 15, 2015, Chief Judge Barry Ted Moskowitz) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $41,350 granted).

*De La Torre v. Legal Recovery Law Office*, 2014 U.S. Dist. LEXIS 128220, 2014 WL 4547035 (S.D. Cal., Sept. 12, 2014, Judge Larry Alan Burns) ([year not stated] Survey Report, in Cal. Anti-Slapp Law case, $6,321 granted).

*Verdun v. I.C. Sys. Inc.*, 2014 U.S. Dist. LEXIS 52238, 2014 WL 1456295 (S.D. Cal., Apr. 14, 2014) (2010-2011 Survey Report, in Credit Rights, FDCPA, anti-SLAPP motion case, $4,819 granted).

*Delalat v. Syndicated Office Sys.*, 2014 U.S. Dist. LEXIS 33756, 2014 WL 930162 (S.D. Cal., Jan. 28, 2014, Judge Dana M. Sabraw) (2010-2011, 2d Ed. Survey Report, in Credit Rights, FDCPA case,$230,342 granted).

*Crawford v. Dynamic Recovery Servs.*, 2014 U.S. Dist. LEXIS 4057, 2014 WL 130458 (S.D. Cal., Jan. 10, 2014, Chief Judge Barry Ted Moskowitz) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $3,496 granted).

*Breidenbach v. Experian*, 2013 U.S. Dist. LEXIS 82093, 2013 WL 2631368 (S.D. Cal., Jun. 11, 2013, Judge Gonzalo P. Curiel) (2010-2011 Survey Report, in Credit Rights, FDCPA case, $5,079 granted).

7. Court of Federal Claims and Government Departments Citing Survey Report

7.1 U.S. Court of Federal Claims, Office of Special Masters

*Twerdok v. Sec'y of HHS*, 2016 U.S. Claims LEXIS 1853, 2016 WL 7048036, U.S. Court of Federal Claims, Office of Special Masters, (Aug. 4, 2016, Chief Special Master Dorsey) (Survey Report held helpful in determining Erie, PA, hourly rate for attorney fee award under National Vaccine Injury Compensation Program, the Vaccine Act, and comparing Erie and Hershey, PA, hourly rates) (2013-2014 Survey Report, in Vaccine Act case, $14,505 granted).

7.2 U.S. Department of Justice Office of Immigration Review

*John A. Breda V. Kindred Braintree Hospital, LLC*, 11 OCAHO 1225, 2014 OCAHO LEXIS 18, 2014 WL 4390663 (Aug 26, 2014, Chief Administrative Hearing Officer Ellen K. Thomas) ([year not disclosed] Survey Report, in Massachusetts discrimination case, $2,312 granted).

7.3 U.S. Department of Labor Benefit Review Board Office of Administrative Law Judges

*Carolina Preciado v. Navy Exchange Service Command,* 2020 WL 5366219 (Jun 30, 2020, DOL Decision, Appeals Judges Buzzard, Rolfe, Jones)(DOL Ben.Rev.Bd.) (Reversing administrative law judge for failure to consider evidence derived from Survey Report) (2015-2016 Survey Report in Longshore Act and Harbor Workers' Compensation Act appeal).

*Jeanne Johnston V. Hayward Baker, Kemper Ins. Co., et al*, 2020 DOLBRB LEXIS 114, 2020 WL 2216187 (Mar 27, 2020, DOL Decision, Appeals Judges Boggs, Buzzard, Rolfe) (DOL Ben.Rev.Bd.) (affirming discretionary administrative law judge and finding "that other decision-makers have accepted the Burdge affidavit and Consumer Law Survey Report as satisfactory market rate

evidence does not require the administrative law judge to do so in this case.")
(2015-2016 Survey Report, in Longshore Act and Harbor Workers' Compensation
Act appeal, $334,075 granted and upheld, $400 @ 39 years, $275 @ 15 years;
Paralegal @ $150).

*Jeanne Johnston v. Hayward Baker, Kemper Ins. Co., et al,* 2019 WL
5801867 (Oct. 29. 2019, DOL Decision, Appeals Judges Buzzard, Rolfe, Gresh)
(DOL Ben.Rev.Bd.) (Affirming administrative law judge fee award based on
evidence derived from the 2015-2016 Survey Report) (Editor's Note: Mr. Dupree
included the Consumer Law Attorney Survey with an explanation from the author
explaining why the two areas of law are sufficiently comparable, i.e. similar, when
determining attorney fees, such that the Survey Report may support a requested
fee.) (2015-2016 Survey Report, Longshore Act and Harbor Workers'
Compensation Act case, $135,727 granted, $575 @ 39 years; $425 @ 15 years).

*Jeanne Johnston V. Hayward Baker, Kemper Ins. Co., et al,* (Nov. 16,
2018, DOL *Order Awarding Attorney Fees,* Dist. Dir. Marco A. Adame II, 18th
Comp. Dist., Unreported) ("M. Dupree's submission of affidavits along with the
Consumer Law Attorney Fee Survey appear to meet the requirements under
*Christensen* and *Van Skike* as they require an examination of the broader legal
community when determining the market rate. (Editor's Note: Mr. Dupree
included the Consumer Law Attorney Survey with an explanation from the author
explaining why the two areas of law are similar when determining attorney fees.")
(2015-2016 Survey Report, Longshore Act and Harbor Workers' Compensation
Act case, $135,727 granted, $575 @ 39 years; $425 @ 15 years).

*Robert Macher v. Jack Gray Transport, Inc.,* 2018 DOLBRB LEXIS 322,
2018 WL 6017796 (Oct. 30, 2018, DOL Ben. Rev. Bd., Appeals Judges Hall,
Gilligan and Rolfe), ("...the affidavit of Timothy O. Malloy and the Untied States
Consumer Law Attorney Fee Survey Report ... substantiate an hourly rate .....")
(2015-2016 Survey Report, Longshore Act and Harbor Workers' Compensation
Act case, $9,450 granted, $350 @ 38 years, $350 @ 13 years).

*Jeanne Johnston V. Hayward Bakerand Kemper Ins. Co., et al,* 2018
DOLBRB LEXIS 260, 2018 WL 4357410 (DOL Ben.Rev.Bd.) (Aug. 29, 2018, DOL
Ben. Rev. Bd., Appeals Judges Boggs, Buzzard and Gilligan), "The case is
remanded for the administrative law judge to address the Burdge declaration and
the 2015-2016 extract from the U.S. Consumer Law Attorney Fee Survey Report

for the relevant community of San Diego." (2015-2016 Survey Report, in Longshore and Harbor Workers' Compensation Act case).

*Levan Robert M. V. Knight Hawk Coal LLC Dir.-OWCP* (DOL OALF Dec., Aug. 7, 2018) (Unreported) (2015-2016 Survey Report).

*Wilson Mary L. OBO Ronald D. Wilson v. The American Coal Company* (DOL OALJ Dec., Aug 7, 2018) (Unreported) (2015-2016 Survey Report).

*Ralph Abell v. Island Creek Coal Co., et al*, 2018 DOLBRB Lexis 181, 2018 WL 3007436 (May 21, 2018, DOL Ben.Rev.Bd., Chief Administrative Appeals Judge Hall, Appeals Judges Gilligan and Rolfe) (Survey Report not helpful in absence of explanation of "how this is relevant in the area of black lung claims.") (Editor's Note: movant is responsible for providing Court with adequate explanation, by declaration or otherwise, on how the area of Consumer Law is similar to the area of law involved in a movant's case at hand in order to justify use of Survey Report in other fields of law).

*David R. Maddox v. Lodestar Energy, Inc., et al*, 2018 DOLBRB Lexis 182, 2018 WL 3007437 (May 16, 2018, DOL BenRev.Bd., Chief Administrative Appeals Judge Hall, Appeals Judges Gilligan and Rolfe) (aff'd 762 Fed. Appx. 269) (Survey Report not helpful in absence of explanation of "how this is relevant in the area of black lung claims.") (Editor's Note: movant is responsible for providing Court with adequate explanation, by declaration or otherwise, on how the area of Consumer Law is similar to the area of law involved in a movant's case at hand.

*Phyllis Mathews V. Navy Exchange Service Command*, 2018 WL 1292722 (Feb. 15, 2018, DOL Ben. Rev. Bd., Chief Administrative Appeals Judge Hall, Appeals Judges Boggs and Rolfe). (2013-2014 Survey Report, in Longshore and Harbor Workers' Compensation Act case, $17,617 granted, $450@38 years, $300 @ 12 years).

*Brock Roy v Manalapan Mining Co. Dir.-OWCP* (DOL OALJ Dec., Dec. 6, 2017) (Unreported) (2015-2016 Survey Report).

*Terry Grimm v. Vortex Marine Construction, et al*, 2016 WL 7826580 (Dec. 28, 2016), (DOL Ben.Rev.Bd., Judge Wm. Dorsey, finding Los Angeles and

San Francisco 2013-2014 Survey Report tables not relevant to San Diego market) (Editor's Note: current Survey Report provides tables for San Diego and other major metropolitan areas).

*Gonzalez v. Sec'y of HHS*, 2015 U.S. Claims LEXIS 1833, 2015 WL 10435023 (Fed. Cl., Nov. 10, 2015, Special Master Brian H. Corcoran) (Survey Report not used in National Vaccine Injury Compensation Program case, citing *Mooney v. Sec'y of Health & Human Servs*) (Editor's Note: the rule from these two cases is that some explanation must be made, by declaration or otherwise, on how the area of Consumer Law is similar to the area of law involved in a movant's case at hand.).

*Mooney v. Sec'y of Health & Human Servs*, 2014 U.S. Claims LEXIS 1526, 2014 WL 7715158 (Fed. Cl., Dec. 29, 2014, Chief Special Master Vowell) (National Vaccine Injury Compensation Program case; applicant "did not explain why 'consumer law' constitutes an apt comparison for fees purposes to Vaccine Act litigation." "Telling me why such comparisons are apt would be far more helpful than simply asserting that they are.") (Editor's Note: the rule derived from this case is that some explanation must be made, by declaration or otherwise, on how the area of Consumer Law is similar to the area of law involved in a movant's case at hand).

7.4 U.S. Department of Labor Benefit Review Board Office of Administrative Law Judges

*Delouche Frank N III v. Dyncorp International*, DOL OALJ Decisions Apr 30, 2021

*Smykla Jozef v. Vigor Shipyard, Inc.*, DOL OALJ Decisions Oct 28, 2019

*Contreras Martin v. Long Beach Container Terminal*, DOL OALJ Decisions Nov 30, 2018

*Contreras Martin v. SSA Marine*, DOL OALJ Decisions Nov 30, 2018

*Helms Jerome v. General Construction Co.*, DOL OALJ Decisions Feb 19, 2021

*Rupp John A. v. Tradesmen International, Inc.*, DOL OALJ Decisions Oct 30, 2020

*Godfrey Shawn v. Tappan Zee Constructions, LLC*, DOL OALJ Decisions Jun 17, 2019

*Carolina Preciado v. Navy Exchange Service Command*, 2020 WL 5366219 (DOL Ben.Rev.Bd, June 30, 2020)

*Jeanne Johnston v. Hayward Baker*, 2020 WL 2216187 (DOL Ben.Rev.Bd., Mar. 27, 2020)

*Shah Shahwali v. Worldwide Language Resources, Inc.*, DOL OALJ Decisions Mar 07, 2019

*Hendricks Maurice v. Trapac LLC*, DOL OALJ Decision Jul 29, 2021 (affirming use of Survey Report in determining attorney fee hourly rates for Longshore and Harbor Workers' Compensation Act case.

*Hendricks Maurice v. Trapac LLC*, DOL OALJ Decisions Feb 19, 2021

*Mathews Phyllis v. Navy Exchange*, DOL OALJ Decisions Sep 14, 2020

*Almansour Rozana Rozanna v. Global Linguist Solutions*, DOL OALJ Decisions Feb 18, 2020

*Almansour Rozana v. Global Linguist Solutions*, DOL OALJ Decisions Feb 18, 2020

*Montoya Dolores v. Navy Exchange*, DOL OALJ Decisions Apr 30, 2020

*Demoss Jerome H v. Island Creek Coal Company* DIR OWCP, DOL OALJ Decisions Dec 27, 2018

*Victorian Dwayne D. v. International-Matex Tank Terminals*, DOL OALJ Decisions Mar 12, 2020

*Brock Roy v. Manalapan Mining Co.* DIR.-OWCP, DOL OALJ Decisions

Dec 06, 2017

*Jeskey Raymond L. SR. v. Mcelroy Coal Company*, DOL OALJ Decisions Jun 18, 2019

*Colaruotolo Cosmo v. SSA Marine*, DOL OALJ Decisions Sep 20, 2019

*Levan Robert M. v. Knight Hawk Coal LLC* DIR.-OWCP, DOL OALJ Decisions Aug 07, 2018

*Wilson Mary L. Obo Ronald D. Wilson v. the American Coal Company*, DOL OALJ Decisions Aug 07, 2018

*In re Heidi Eberly-Sherman v. Dept of Army/NAF*, DOL Ben Rev. Bd. ALF Feb. 3, 2010, 2010 WL 10912660.

*B.C. v. Little David Coal Co.*, DOL Ben. Rev. Bd., Nov. 26, 2008, 2008 WL 5101191 (2002 Survey Report)

*D.G.B. (Widow of W.C.B.) V. Island Fork Construction Co. Et al*, DOL OALJ Decisions, Nov. 9, 2007, 2007 WL 7629850 (2002 Survey Report)

8. Arbitration Decisions and State Publications Citing Survey Report

8.1 American Arbitration Association

*In the Matter of the Arbitration Between [Claimant] V. [Respondent] (Automotive Dealers and Gasoline Service Stations*), 2016 AAA Consumer LEXIS 207 , 2016 WL 5105956 (Jul. 29, 2016, Arbitrator John W. Garman) (2013-2014 Survey Report, in Vehicle "Autofraud" case, $36,827 granted).

*In the Matter of the Arbitration Between [Claimant] v. [Respondent*] *(Fraud Management Specialist)*, 2021 AAA Consumer LEXIS 555 (October 22, 2021, Arbitrator Robert B. Morrill) (2018-2018 Survey Report, in cellular service, cryptocurrency theft case, using Maryland hourly rates, $223,626 granted).

8.2 Commonwealth of Virginia Orders Judicial Council of Virginia

VA Orders 2016-21 (Jul. 13, 2016), Judicial Counsel of Virginia, Recommendations of the Standing Committee on Commissioners of Accounts of the Judicial Council of Virginia regarding changes to the existing Uniform Fee Schedule Guideline for Commissioners of Account, Dec. 9, 2015 Report (2014 Survey sections attached as Exhibit D).

9. Law Reviews and Secondary Materials Citing Survey Report Citing Survey Report

*2 Consumer Credit Law Manual,* § 8.04 (2022), [iii] [iv] [A} Determining Entitlement to an Award and Lodestar, Matthew Bender & Company, Inc., Sept. 2022, Release No. 24.

*Insurance Coverage Disputes* § 2.03, Duties of Insurer, fn 152.11, LexisNexis.

128 Am. Jur. Trials 243, Litigating Violations of Fair Debt Collection Practices Act (Sep. 2022 Update), pg 149.

63 B.C. L. Rev. 753 fn 154, Boston College Law Review, *Toxic Promises*, Mar. 2022, by Prof. S. Becher, Prof. Y. Feldman, Asst Prof. Matzkin.

90 Geo. Wash. L. Rev. 83 fn 22, *Contracts in the Age of Smart Readers*, The George Washington Law Review & Arguendo, Feb 1, 2022, by Yonathan A. Arbel, Shmuel I. Becher.

22 U. Ill. L. Rev. 1059 fn 211, *Article: Termination Without Explanation Contracts*, Jan. 1, 2022, by Uri Benoliel, Smuel I. Becher.

131 Yale L.J. 976 fn 251, 252, *One Size Fits None: An Overdue Reform for Chapter 7 Trustees* ,January 1, 2022, by Belisa Pang, Emile Shehada.

62 B.C. L. Rev. 2405 fn 191, 62 B.C. L. Rev. 2406 fn 191, Boston College Law Review, *Ending the License to Exploit: Administrative Oversight of Consumer Contracts*, Oct. 1, 2021 by Yehuda Adar, Shmuel I. Becher.

U. District of Columbia L. Rev., Vol. 24, Issue 1, Pg. 20, Fn 16, *There is No Justice When Low and Modest-Income D.C. Residents Are Forced To Represent Themselves in Civil Cases*, Mar. 21, 2021, by Sheldon Krantz.

91 U. Colo. L. Rev. 183 fn 186, *A No-contest Discharge for Uncollectible Student Loans*, Jan. 1, 2020, by Matthew Bruckner, Brook Gotberg, Dalie Jimenez, Chrystin Ondersma.

132 A.L.R.Fed. 477, *Award of Attorneys' Fees under 813(a)(3) of Fair Debt Collection Practices Act* (15 U.S.C.A. 1692k(a)(3)), Dec. 21, 2018, by Robert F. Koets, J.D.

92 St. John's L. Rev. 551 fn 5, *Digital Pro Bono: Leveraging Technology to Provide Access to Justice*, Oct. 1, 2018, by Kathleen Elliott Vinson, Samantha A. Moppett.

71 Vand. L. Rev. 121, fn 89, Vanderbilt Law Review, Jan. 2018, *Adminization: Gatekeeping Consumer Contracts*, Jan. 1, 2018 by Yonathan A. Arbel.

20 N.Y.U.J. Legis. & Pub. Pol'y 375 fn 3, NYU Journal of Legislation and Public Policy 2017, *Tipping the Scales of Justice: the Role of the Nonprofit Sliding Scale Law Firm in the Delivery of Legal Services*, Jan. 1, 2017 by Prof. Mitch, University of Wisc. Law School.

2016 TXCLE Advanced Consumer & Com. Law 17 App. F, 2016, *Attorney Fees in Federal Court*, State Bar of Texas, by Prof. Mark E. Steiner, Hon. Andrew W. Austin, Richard Tomlinson.

22 Va. J. Soc. Pol'y & L. 71 fn 47, Virginia Journal of Social Policy and the Law, Winter 2015, *Bridging the Gap Between Unmet Legal Needs and an Oversupply of Lawyers: Creating Neighborhood Law Offices--the Philadelphia Experiment*, Jan. 1, 2015 by Jules Lobel, Matthew Chapman.

10 No. 26 Westlaw Journal Bankruptcy 6, Apr. 24, 2014, Thomson Reuters, *Missouri Federal Judge Cuts FDCPA Fee Demand*

18 Harv. Negotiation L. Rev. 281 fn 97, *Renovating the Multi-Door Courthouse: Designing Trial Court Dispute Resolution Systems to Improve Results and Control Costs*, Harvard Negotiation Law Review, Apr. 1, 2013 by Barry Edwards, Esq.

U. Of Arkansas Clinton School of Public Service, *Justice Measured: An Assessment of the Economic Impact of Civil Legal Aid in Arkansas*, Pg 15, Fn 51, 53, Oct. 2014 (2010-2011 Survey Report).

63 Am. U. L. Rev. 87 fn 72, American University Law Review, Oct. 2013, *Duke-ing out Pattern or Practice after Wal-mart: the EEOC As Fist*, Oct. 1, 2013 by Angela D. Morrison.

61 Drake L. Rev. 639 fn 14, *Tenth Annual American Judicature Society Symposium: Access to Justice: Where Is the Boundary for Due Process?: Article: Deja Vu All over Again: Turner V. Rogers and the Civil Right to Counsel*, Apr. 1, 2013 by Hon. David J. Dreyer, Marion Superior Court in Indianapolis, Indiana.

15 N.Y.U.J. Legis. & Pub. Pol'y 759 fn 24, NYU Journal of Legislation and Public Policy 2012, *Collaborative Technology Improves Access to Justice*, Jan 1, 2012 by Michael J. Wolf.

New Jersey Law Journal, *Fair Debt Collection Practices Firm Chastised For Inflated Fee Requests* by Mary Pat Gallagher, Nov. 7, 2011.

New Jersey Law Journal, *Fair Debt Collection Practices Firm Chastised For Inflated Fee Requests* by Mary Pat Gallagher, Oct. 31, 2011.

10. Expert Opinions Citing *Survey Report*

*Knight v Allstate Texas Lloyd's*, 2021 WL 4813098 (S.D.Tex., Houston Div., Jul. 23, 2021), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Tammy KEA, et al, v. Meridian Security Ins. Co.*, 2020 WL 7631252 (N.D.Tex., Dallas Div., Oct. 9, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Horner, et al, v. Allstate Texas Lloyds*, 2020 WL 8989312 (S.D.Tex., Houston Div., Sep. 10, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Linda Veach v. State Farm Lloyds*, 2020 WL 5632319 (N.D.Tex., Jul. 6, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Sugar Land Helath and Wellness, LLC v. Nationwide Property and Casualty Ins. Co.*, 2020 WL 8083567 (S.D.,Tex., Houston Div., May 27, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Joe Hughes v State Farm Lloyds*, 2020 WL 8616532 (S.D.Tex., Houston Div., Apr. 30, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Greatland Ctr. V. Blackboard Specialty Ins. Co.*, 2020 Misc. Filings LEXIS 737, 2020 WL 5260256 (S.D.Tex., Houston Div., Apr. 28, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Diamond Beach Owners Asn., Inc. V. Texas Windstorm Ins. Assn.*, 2020

WL 1304822 (Tex.Dist., 212th Jud. Dist., Mar. 25, 2020) Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Campbell v. State Farm Lloyds*, 2020 Misc Filings LEXIS 547 2020, WL 3605822  (N.D.Tex., Feb. 23, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Caramba, Inc. V. Nationwide Mut. Fire Ins. Co.*, 2020 Misc. Filings LEXIS 726, 2020 WL 3577459 (S.D.Tex., 410th Jud. Dist., Lexis: Jan. 30, 2020; WL Feb. 14, 2020), Expert Report of William S. Featherston (first party insurance coverage case, *Survey Report* opined by witness to be inapplicable to Insurance Law case).

*Marchisio, et al, v. Carrington Mortgage Services, LLC*, 2019 WL 8164491 (S.D.Fla., Oct. 21, 2019), Declaration of Paul R. Regensdorf (Appellate Law, Credit Rights, FCRA Case, 2015-2016 *Survey Report* opined helpful and cited in support expert's opinion on applicable reasonable hourly rates for 5 attorneys, 1 Paralegal).

*Jones v. Spikes and Beaumont Indep. Sch. Dist.*, 2015 WL 2450879 (E.D. Tex., Jan. 6, 2015), Report or Affidavit of Kenneth W. Lewis (Expert Witness) (Civil Rights & Constitutional Law Case, [year not stated] *Survey Report* opined helpful).

*Jones v. Tamara Spikes & Beaumont Indep. Sch. Dist.*, 2014 Misc. Filings LEXIS 2121, 2015 WL 2450879 (E.D.Tex., Beaumont Div., Lexis: Dec. 31, 2014; WL: Jan. 6, 2015), Expert Witness Report of Kenneth W. (Ken) Lewis Civil Rights Case, [year not stated] *Survey Report* opined helpful).

*The Estate of Daniel Sisson v. County of San Diego*, 2014 Misc. Filings LEXIS 7716 (CA Super. Ct., San Diego, Dec. 23, 2014), Declaration of James P. Schratz (personal injury case, 2010-2011 *Survey Report* cited in support).

*In Re Southwest Airlines Voucher Litigation*, 2014 U.S. Dist. LEXIS 84072, 2014 WL 11115685 (N.D. Ill., Jun. 4, 2014), Declaration by Colin B. Weir (Class Action Case, *2010-2011 Survey Report, Top 10 Cities, 2nd Ed.* (an

extraction of content from 2010-2011 *United States Consumer Law Attorney Fee Survey Report),* cited in support).

*Wallace v. Florida Dept. Of Eduction*, 2010 WL 9067802 (Fla. Cir. Ct., Second Jud. Cir., Leon County, Jun. 2, 2010), Reply Affidavit of David M. Frank (Whistleblower Case, 2008-2009 *Survey Report* cite in support and opined to be "competent evidence or objective markers").

11. Publications, Articles, News Reports Citing Survey Report

Impact News Service, *United States Courts Opinions: United States District Court for the District of Colorado : Elizabeth Lupia, Plaintiff, v. Medicredit, Inc. , Defendant,* May 26, 2021 (2017-2018 Survey Report).

Impact News Service, *United States Courts Opinions: United States District Court District of Massachusetts : Joseline Cano, Plaintiff, v. Andrew Saul, Commissioner, Social Security Administration, Defendant*, Dec 03, 2020 (2017-2018 Survey Report).

Impact News Service, *United States Courts Opinions: United States District Court for the Western District of Pennsylvania: Stephen Rossini and Matthew Kane, on behalf of themselves and all similarly situated individuals, Plaintiffs, v. PNC Financial Services Group, Inc. and PNC Bank , N.A , Defendants,* Jul 08, 2020 (2017-2018 Survey Report).

Impact News Service, *United States Courts Opinions:  Rossini v. PNC Fin. Servs. Grp., Inc.* [No. 2:18-cv-1370, 2020 U.S. Dist. LEXIS 113242 (W.D. Pa. June 26, 2020)], Jul. 9, 2020.

Class Action Reporter, *$80k Attys' Fees Awarded in Spuhler FDCA Suit*, Aug. 2, 2019 (2015-2016 Survey Report).

Financial Law Reporter (Pakistan), *United States Courts Opinions: United States District Court Western District of Pennsylvania : Elen Bower*, Civil Action No. 18-389 Erie Plaintiff, July 23, 2019.

Class Action Prospector, *State Collection: $80k Attys' Fees Awarded in Spuhler Fdca Suit*, June 28, 2019.

My Shingle (Blog), *What Much Should I Charge For Legal Services: Whatever You Want*, January 23, 2019.

US Official News (LEXIS), *United States Courts Opinions: United States District Court Western District of Maine :Traci H., Plaintiff v. No.*

1:16-cv-00568-JAW, *Nancy A. Berryhill, Acting Commissioner of Social Security, Defendant*,  Dec 24, 2018 (2017-2018 Survey Report).

US Official News (LEXIS), United States Courts Opinions: United States District Court Western District of Maine :Rosemary C., Plaintiff   v. No. 1:17-cv-00282-GZS, Nancy A. Berryhill, Acting Commissioner of Social Security, Defendant, Dec 20, 2018 (2015-2016 Survey Report).

US Official News (LEXIS), United States Courts Opinions: United States District Court Western District of MAINE :BUCK S., Plaintiff v. No. 2:17-cv-00465-JDL,  Nancy A. Berryhill, Acting Commissioner of Social Security, Defendant, Dec 20, 2018 (2015-2016 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court District of New Jersey : David Beneli, individually and on behalf of all others similarly situated, Plaintiff, v. BCA Financial Services, Inc.*, Feb 12, 2018, 2015-2016 Survey Report.

Financial Law Reporter (Global), *United States District Court Northern District of California: Christina G. Bratton, et al, Plaintiffs, v. FCA US LLC, Defendant*, Oct. 24, 2018 (2015-2016 Survey Report).

Financial Law Reporter (Global), *United States Courts Opinions: United States District Court Northern District of California: Christina G. Bratton, et Al., Plaintiffs, V. Fca Us LlC, Defendant*, Oct. 24, 2018.

AZBusiness Magazine, *Arizona Attorneys Make it a Practice to Help Nonprofits*,  by Noelle Schon, Sep. 18, 2018.

Newstex Blogs, My Shingle (Blog), *7 Ways Practice Management Will Help You Get a Head Start in 2018*, Dec. 4, 2017, by Peter Hobbs.

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of California : Evelyn Valentin, Plaintiff, v. Grant Mercantile Agency, Inc. , Defendant*, Dec 29, 2017.

Newstex BLogs, *7 Ways Practice Management will Help You Get a Head Start in 2018*, by Peter Hobbs, Dec 04, 2017.

Southern Coalition for Social Justice, *Putting Justice in North Carolina's Juvenile System*, Pg. 18, Fn 55, Oct. 2017 (2013-2014 Survey Report).

The Recorder (California)(Online), *Medina v. South Coast Car Company, Inc.*, Sep. 26, 2017 (2013-2014 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of Michigan : Jody Firneno and Christopher Franke, Plaintiffs, v. Radner Law Group, PLLC, et al., Defendants*, Aug 28, 2017 (2015-2016 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of Indiana : James Grubbs, Plaintiff, vs. ANDREWS & COX, P.C., et al., Defendants,* Jul 20, 2016 (2013-2014 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of California : George Munoz, Plaintiff, v. California Business Bureau, Inc. , Defendant*, Jul 17, 2017 (2013-2014 Survey Report).

*O Direito Atual e as Novas Fronteiras Jurídicas* (*Current Law and New Legal Frontiers - UniRV*), fn 19, pg. 266, by Ruben Miranda Goncalves, Fabio Da Silva Veiga, Irene M Portela, published by The Polytechnic Institute of Cavado and Ave, Portugal, 2017 (2010 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of California : Jason Travis Uhl, Plaintiff, v. Carolyn W. Colvin, Acting Commissioner of Social Security, Defendant*, Jun 20, 2016 (2013-2014 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of California : Jason Travis Uhl, Plaintiff, v. Carolyn W. Colvin, Acting Commissioner of Social Security, Defendant*, Jun 10, 2016 (2013-2014 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States*

*District Court Eastern District of Illinois : Case: 1:15-cv-06106*, May 20, 2016 (2013-2014 Survey Report).

US Official News (LEXIS), *United States Courts Opinions: United States District Court Eastern District of Ohio : Case: 4:15-cv-00476-BYP*, Apr 01, 2016 (2013-2014 Survey Report).

Newsbank - Vermont News Sources, *Vermont among Most Expensive for Divorce*, Feb 06, 2016 (2010-2011 Survey Report).

CBS News, *The Cheapest and Costliest States to Divorce*, Feb. 3, 2016, by Elyssa Kirkham/GOBankingRates (2010-2011 Survey Report).

PR Newswire, *California Ranks No. 1 as the Worst State in America to Get a Low-Cost Divorce*, Feb. 3, 2016, (2010-2011 Survey Report).

*The Economic Impact of Civil Legal Aid to the State of Montana 2015 Report*, fn 51, by Montana Legal Services Association, 2015.

US Official News (LEXIS), *United States Courts Opinions: United States District Court Northern District of California : Charles Klein, Plaintiff, v. LAW Offices of D. Scott Carruthers ; Mountain Lion Acquisitions, Inc*, Jun 11, 2015 (2013-2014 Survey Report).

A.L.M. Pennsylvania Cases, *Dibish v. Ameriprise Financial, Services, Inc., Court of Common Pleas of Allegheny County*, Mar. 23, 2015 (2010-2011 Survey Report).

Legal Monitor Worldwide, *PA Legal Documents Offers an Alternative to High Legal Fees*, Jun. 11, 2014 (2010-2011 Survey Report).

Mealey's Daily News Update - Banking & Finance, *Consumers Obtain Over $17,000 In Attorney Fees, Costs In Debt Collection Suit*, Mar. 1, 2014 (2010-2011 Survey Report).

ASAPII Database, *Keep Calm and Call a Lawyer, or Not; Homestead Business*, by Jerri Cook, Pg. 78(3); ISSN: 8750-7595; Vol. 98; No. 1SH Attorneys, Jan. 1, 2014 (2010-2011 Survey Report).

Pennsylvania Law Weekly, *Legal Profession*, June 26, 2012 (2007 Survey Report).

The Legal ntelligencer, *Zavodnick v. Gordon & Weisberg, P.C., PICS No. 12-1182 (E.D. Pa. June 6, 2012) Diamond, J. (15 pages).; U.S. District Court-Eastern,* Jun 26, 2012 (2007 Survey Report).

Mealey's Daily News Update - *Banking & Finance, Consumers Obtain Over $17,000 In Attorney Fees, Costs In Debt Collection Suit*, Mar 12, 2014 (2010-2011 Survey Report).

Financial Services Litigation Report: *Judge Grants Consumer Attorneys' Fees Award In Debt Collection Lawsuit*, Nov. 1, 2013.

The Legal Intelligencer, *Zavodnick v. Gordon & Weisberg, P.C., PICS No. 12-1182 (E.D. Pa. June 6, 2012) Diamond, J. (15 pages).; U.S. District Court-Eastern*, Jun. 26, 2012.

12. California Cases Not Using Survey Report

A listing of cases considering but *not* using the *U.S. Consumer Law Attorney Fee Survey Report* when deciding attorney fee disputes in fee disputes in cases include those on the following list. It should be noted that the depth and breadth of this Survey Report has evolved over time and prior editions of this Survey Report were substantially different from editions appearing after 2012 and thus any negative cases using prior reports are likely to be distinguishable.

*Pulliam v. HNL Auto. Inc.*, 60 Cal. App. 5th 396, 274 Cal. Rptr. 3d 547 (Jan. 29, 2021, Judge Rubin, Judge Baker, Judge Kim) (Overview: the Holder Rule, 16 CFR 433.2, does not apply to attorney fees) (2015-2016 Survey Report excluded at trial on hearsay objection; case affirmed on other grounds) (Editor's Note: Section 6 of this Survey Report notes case law upholds consideration of surveys as evidence).

*Morris v. Hyundai Motor America*, 41 Cal.App.5th 24, 253 Cal.Rptr.3d 592 Sep. 16, 2019, Judge Stone, Judge Perluss, Judge Zelon) (201702018 Survey Report, objection to admission as unauthenticated hearsay sustained by trial court, in Vehicle Warranty breach case, Court of Appeals noted that on appeal, the argument was forfeited by not raising it) (Editor's Note: Section 6 of this Survey Report notes case law upholds consideration of surveys as evidence).

*Rivas v. FCA US LLC*, 2019 Cal. Super. LEXIS 25186 (Sup. Ct., Alameda Co., Sep. 12, 2019) (Overview: Survey Report not considered without supporting declaration of "involvement" with Survey Report) Court's experience with other fee motions used as basis) ([year not stated] Survey Report) (in Vehicle Warranty breach case, $41,475 granted, $450 @ 25 years, $450 @ 16 years, $300 @ 6 years, $300 @ 7 years, $350 @ 11 years, $250 @ 3 years, $250 @ 3 years, $300 @ 6 years, $250 @ 5 years). (Editor's Note: Court cited *Fontenot v. Wells Fargo Bank N.A.* (2011) 198 Cal.App.4th 256, 264-266)

*Fuller v. Ford Motor Co.*, 2016 Cal. Super. LEXIS 45363 (Cal. Sup. Ct. Riverside Co., Feb. 11, 2016) (because "...Plaintiffs' counsel fails to provide the Court with the entirety of the report. See Cal. Evid. Code Sect. 352" the pages submitted lacked foundation and authentication and objection was sustained) (Editor's Note: while many Courts will accept the use of specific applicable pages

from an expert report, some may not. It is important for the movant to be aware of the need to submit the entire Survey Report where it is required. Movant may also wish to consider any possible need to establish the foundation and authentication of the Report by use of an affidavit or declaration.

California, C.D.

*Pacheco v. Ford Motor Co.*, 2022 U.S. Dist. LEXIS 51511, 2022 WL 845108 (C.D. Cal. Mar. 21, 2022, Judge Otis D. Wright II) (" The Court notes that both the Attorney Fee Survey Report … and the 2018 Real Rate Report… focus on nationwide hourly rates rather than those in the Los Angeles market") (2017-2018 Survey Report in Vehicle Warranty case, $38,543 granted) (Editor's Note: Court apparently overlooked the specific Los Angeles market data provided in the Survey Report).

*Ainsworth v. FCA Us, LLC*, 2021 U.S. Dist. LEXIS 258254, , 2021 WL 8446162 (C.D. Cal. Dec. 22, 2021, Judge Jesus G. Bernal) (2017-2018 Survey Report, in Vehicle Warranty breach case, not persuasive, instead adopting rates for firm used in case 2 years earlier) (Editor's Note: Court noted oddities in billing rates sought and lack of explanation of rate changes) ($505@ 20 years, $505 @ 20 years, $200 @ 2 years, $275 @ 8 years, $200@ 2 years, Paralegal @ $75).

*Lin v. BMW of N. Am., LLC*, 2020 U.S. Dist. LEXIS 251358, 2020 WL 8743479 (C.D. Cal. Sep. 8, 2020, Judge Virginia A. Phillips) (2018-2019 Survey Report 2019 edition, in Vehicle Warranty breach case, the Court noted "Plaintiff was represented in this litigation by two law firms, comprising a team of thirteen attorneys" with rates sought between $200 and $595 per hour, noted the absence of local attorney declarations in support or fee expert testimony and rejected movant's submissions and relied "on its own knowledge of customary rates in this legal market." $39,003 granted, $595 @ 35 years, $350 @ 7 years, $550 @ 17 years, $275 @ 5 years, $350 @ 12 years, $275 @ 6 years, $375 @ 26 years, $200 @ 3 years, $225 @ 4 years, $275 @ 5 years, $350 @ 13 years, $200 @ 10 years, $275 @ 8 years. Opining on the Survey Report, the Court faulted the survey as "not indicating" (1) the specific kinds of cases included under the "Consumer Law" umbrella (Editor's Note: the Court apparently overlooked this information which appears on pg 8 in the section titled "Niche Areas in the Field of Consumer Law Defined"), (2) whether the attorneys' cases are class or individual actions

(Editor's Note: the Court apparently overlooked this information which appears for California at pg 59 and Los Angeles at pg 228), (3) the experience or skill of the attorneys other than the number of years in practice (Editor's Note: while years in practice is a rough equivalent to skill level, editions beginning in 2022 include objective reputational skill data and the movant is responsible for providing their skill information), (4) the courts in which the survey population practices (Editor's Note: the courts are those within the geographical area of each Metropolitan Statistical Area, i.e., data for each of the eight major metropolitan areas of California are individually reported from pg 224 to pg 23, (5) "there is no indication that the surveyor tried to validate the results" (Editor's Note: the Court apparently overlooked this information as the survey methodology is explained in considerable detail from pg 13 to pg 19, including the note at pages 15 and 16 that data gathering included telephonic interviews, and peer review of all methodologies and analyses explained on pages 18 and 19), and (6) "the population of attorneys surveyed may be motivated by their own personal professional interests for the rates to increase" (Editor's Note: the Court apparently overlooked this information as it was noted on pg 3 and explained on pg 14, the survey database source includes surveyed attorneys and actual court and administrative attorney fee opinions and decisions from across the country, as surveyed from Lexis, Westlaw, and unreported case decisions. As independently reported elsewhere, just over 49% of the database comes from the analysis of such independent sources of fee decisions and just over 51% of the database is derived from actual attorney participants).

*Arriaga v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 81677 (C.D. Cal. May 8, 2020, Judge Dale S. Fischer) (faulting 2017-2018 Survey Report as being "self-reported rates" ) (Editor's note: just slightly slightly more than 50% of database in 2017-2018 Survey Report came from attorney responses while sligtly less than 50% came from Court decisions. Presently, 59.14% of the data use in compiling this current Survey Report edition comes from contested fee decisions and not individual attorney data input).

*Castaneda v. Ocwen Loan Servicing*, 2018 U.S. Dist. LEXIS 198852 (C.D. Cal., Nov. 21, 2018, Judge Fernando M. Olguin) (2015-2016 Survey Report, in Housing Rights, FCRA, FDCPA, Credit Rights case, $77,418 granted) (movant cited two pages of excerpted fee survey without explanation of how they supported request and cited rates from Arizona instead of the relevant Los Angeles community; court used hourly rates requested by 4 movants and reduced

one other movant 10% after using awards by movant and its own knowledge of the local legal market) ($550 at 27 years; $450 @ 8 years) (Editor's Note: providing the Court with an adequate explanation of relevant portions of Survey Report is responsibility of fee movant).

*Lovett v. Simm Assocs.*, 2013 U.S. Dist. LEXIS 92495, 2013 WL 3242953 (C.D. Cal., June 25, 2013, Judge Virginia A. Phillips) (Local Rule 55-3 Fee Schedule followed and 2010-2011 Survey Report not applied in FDCPA case) (Editor's Note: current Survey Report contains specific survey data for this and other niche areas in the field of Consumer Law).

*Rubenstein v. National Recovery Agency, Inc.*, 2012 U.S. Dist. LEXIS 87941, 2012 WL 1425144 (C.D. Cal. Apr. 25, 2012, Judge Otis D. Wright II) (finding the 2007 Survey Report unreliable, noting no statement of quantity of participants, expressing suspicion of bias by surveyor and survey participants) (Editor's Note: current Survey Report edition includes statements of participant quantity disclosure and survey's methodology's peer review and approval by National Association of Legal Fee Analysis).

California, E.D.

*Cianchetta v. BMW of N. Am., LLC*, 2022 U.S. Dist. LEXIS 106771, 2022 WL 2160556 (E.D. Cal. June 13, 2022, Chief Judge Kimberly J. Mueller) (2017-2018 Survey Report, in Vehicle Warranty breach case, citing to *Celestine v FCA (2019)* and following approach laid out in *Ainsworth v. FCA Us, LLC*, 2021 U.S. Dist. LEXIS 258254, , 2021 WL 8446162 (C.D. Cal. Dec. 22, 2021), instead adopting rates for firm used in case 2 years earlier) (Editor's Note: Court found 40% of time data to be "without merit" and that 60% of opposing party challenges "are legitimate" while other billing entries as being vague and lack of support and explanation of Paralegal rate requested) ($625@ 28 years, $300 @ 9 years, $275 @ 6 years, $250 @ 5 years).

*Celestine v. FCA US LLC*, 2019 U.S. Dist. LEXIS 154397 (E.D. Cal. Sep. 10, 2019, Mag. Judge Jennifer L. Thurston) (2017-2018 Survey Report, objection overruled, in Vehicle Warranty breach case, Court noted submitted evidence "does not address the local forum," statewide rates not relevant to Eastern District rates, and prior awards with no analysis not helpful, Court surveyed prior decisions on rates in its district) (Editor's Note: current Survey Report contains

specific survey data for major metropolitan areas in E.D. Cal.) ($21135 granted, $250 @ 11 years, $250 @ 11 years, $225 @ 11 years, $175 @ 4 years, $375 @ 25 years, $175, @ 5 years, $250 @ 11 years, $300 @ 19 years, $300 @ 19 years, $275 @ 17 years, $250 @ 11 years, $175 @ 5 years).

*Sanchez v. Saul*, 2019 U.S. Dist. LEXIS 108118, 2019 WL 2642511 (E.D. Cal., June 27, 2019, Mag. Judge Stanley A. Boone) (2013-2014 Survey Report, in, EAJA, Social Security case, Survey Report statewide rate "fails to show these rates are in line with the prevailing market rate" in this District) (Editor's Note: current Survey Report contains specific survey data for all California Metropolitan Statistical Areas).

*Brown v. Jonathan Neil & Assocs.*, 2019 U.S. Dist. LEXIS 24455, 2019 WL 636842 (E.D. Cal., Feb. 13, 2019, Mag. Judge Stanley A. Boone) (2015-2016 Survey Report, in Credit Rights case, $25,867.50 granted) (court erroneously stated that the Survey Report "does not address the 'relevant legal community' here, which is the market within the Fresno Division" and apparently did not realize that the Survey Report actually did do so) ($300 @ 6 years; $225 @ 9 years).

*Valentin v. Grant Mercantile Agency, Inc.*, 2017 U.S. Dist. LEXIS 212185, 2017 WL 6604410 (E.D. Cal., Dec. 26, 2017, Mag. Judge Sheila K. Oberto) (following *Fitzgerald v. Law Office of Curtis O. Barnes* and finding prior edition of Survey Report did not include specific survey data for the district) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

*Munoz v. Cal. Bus. Bureau, Inc.*, 2017 U.S. Dist. LEXIS 109855, 2017 WL 3009210 (E.D. Cal., Jul. 14, 2017, Mag. Judge Barbara A. McAuliffe) (finding the 2013-2014 Survey Report did not include specific FDCPA data) (Editor's Note: current Survey Report edition includes specific survey data for this and other niche areas in the field of Consumer Law).

*Oyarzo v. Tuolumne Fire District*, 2014 U.S. Dist. LEXIS 60778, 2014 WL 1747236 (E.D. Cal., Apr. 30, 2014, Mag. Judge Stanley A. Boone) ((2010-2011 Survey Report not specific to Fresno locality) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

*Cuevas v. Check Resolution Servs.*, 2013 U.S. Dist. LEXIS 189893, 2013 WL 2190172 (E.D. Cal., Aug. 8, 2013, Mag. Judge Kendall J. Newman) (noting "straightforward issues" in case and inadequate explanation by movant of any factors justifying deviation from the presumptive local hourly rates from prior cases and relying on *Branco v. Credit Collection Servs.*) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas and specific survey data for this and other niche areas in the field of Consumer Law).

*Broad. Music Inc. v. Antigua Cantina & Grill, LLC*, 2013 U.S. Dist. LEXIS 72122, 2013 WL 2244641 (E.D. Cal., May 21, 2013, Judge K.J. Mueller) (with no explanation of source of hourly rates found applicable, the Court noted the presentation of evidence of San Francisco rates but "plaintiff has not presented any information on the hourly rate in the Sacramento region" and disregarded the requested rates, citing *Branco*) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

*Fitzgerald v. Law Office of Curtis O. Barnes*, 2013 U.S. Dist. LEXIS 53642, 2013 WL 1627740 (E.D. Cal., Apr. 15, 2013, Mag. Judge Gary S. Austin) (finding the Laffey Matrix and the 2010-2011 Survey Report deficient in geographically specific fee data; in conflict with *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 10-12 (E.D. Cal., Jun. 12, 2014)) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

*Miranda v. Law Office of D. Scott Carruthers*, 2012 U.S. Dist. LEXIS 2866, 2012 WL 78236 (E.D. Cal., Jan. 9, 2012, Mag. Judge Barbara A. McAuliffe) (finding the 2010-2011 Survey Report insufficient in geographically specific fee data; in conflict with *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 10-12 (E.D. Cal., Jun. 10, 2014)) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

*Branco v. Credit Collection Servs.*, 2011 U.S. Dist. LEXIS 138329, 2011 WL 6003877 (E.D. Cal., Dec. 1, 2011, Judge Morrison C. England, Jr.) (finding data in prior version of Survey Report not specific to District Court) (Editor's Note:

current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

*C.B. v. Sonora Sch. Dist.*, 2011 U.S. Dist. LEXIS 112870, 2011 WL 4590775 (E.D. Cal., Sept. 30, 2011, Judge Oliver W. Wanger) (finding the prior Survey Report insufficient in geographically specific fee data; in conflict with *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 10-12 (E.D. Cal., Jun. 12, 2014)) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

California, N.D.

*Forkum v. Co-Operative Adjustment Bureau, Inc.*, 2014 U.S. Dist. LEXIS 91148, 2014 WL 3101784 (N.D. Cal., Oakland Div., Jul. 3, 2014, Judge Saundra Brown Armstrong) (motion denied without prejudice and finding the Laffey Matrix and the 2010-2011 Survey Report insufficient in geographically specific fee data) (refiled motion, adding supporting affidavits and again using 2010-2011 Survey Report, was granted, at 2014 WL 3827955) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

California, S.D.

*Brooks v. Sun Cash of SD*, 2018 U.S. Dist. LEXIS 20310, 2018 WL 747795 (S.D. Cal., Feb. 7, 2018, Judge Marilyn L. Huff) (finding prior edition of Survey Report did not include specific survey data for the district) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas; using current edition of Survey Report is responsibility of fee movant).

*Diaz v. Kubler Corp.*, 2014 U.S. Dist. LEXIS 199581 2014 WL 12789109 (S.D. Cal., Mar. 26, 2014), (Judge Michael M. Anello) (following *Branco v. Credit Collection Servs.*, finding the Survey Report insufficient in geographically specific fee data) (Editor's Note: current Survey Report contains specific survey data for all California Metropolitan Statistical Areas).

*Durham v. Cont'l Cent. Credit*, 2011 U.S. Dist. LEXIS 148403, 2011 WL 6783193 (S.D. Cal., Dec. 27, 2011, Judge Barry Ted Moskowitz) (finding the 2010-

2011 Survey Report insufficient in geographically specific fee data; in conflict with *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 2014 U.S. Dist. LEXIS 81024, 10-12 (E.D. Cal., Jun. 12, 2014)) (Editor's Note: current Survey Report contains specific survey data for this and all California Metropolitan Statistical Areas).

13. Cases on Use of Surveys

Survey evidence has long been held admissible evidence when the survey is conducted in accord with accepted principles and is relevant to an issue in the case and neither reliability nor hearsay is a basis for rejecting survey evidence. See *Prudential Inc. Co. Of America v. Gibraltar Financial Corp. Of California*, 694 F.2d 1150 (1982).

Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception. *Zippo Manufacturing Co. V. Rogers Imports, Inc.*, 216 F.Supp. 670, 682-684 (S.D. N.Y. 1963).

Surveys conducted according to accepted principles are routinely admitted. See, *Anti-Monopoly, Inc. V. General Mills Fun Group, Inc.* 684 F.2d 1316 (9th Cir. 1982).

"... surveys are to be admitted as long as they are conducted according to accepted principles and are relevant." *Wendt v. Host Intern., Inc.*, 117 F.3d 1427 (9th Cir.1997), citing *E & J Gallo Winery*, 967 F.2d at 1280; see also *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp.*, 694 F.2d 1150, 1156 (9th Cir.1982).

"Challenges to survey methodology go to the weight given the survey, not its admissibility." *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir.1997), citing *Prudential Ins.*, 694 F.2d at 1156.

"Treatment of surveys is a two-step process. First, is the survey admissible? That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted principles? See *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *E. & J. Gallo Winery*, 967 F.2d at 1292-93. This threshold question may be determined by the judge. Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 849 (9th Cir. 2001). These are issues for a jury or, in a bench trial, the judge." *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).

Likewise, survey evidence specific to the issue of a reasonable attorney fee
has long been held admissible evidence. See *Swaayze v Philadelphia Housing
Authority*, 1992 WL 81598 *2 (E.D. Pennsylvania, Apr. 16, 1992).

Additional considerations in using fee surveys, however, may be relevant
to a court's consideration in a particular case, including the following concepts
drawn from the illustrative cases below.

In determining  whether a requested hourly rate is appropriate, a court
may look not only to past awards within the district, but the other submissions
offered in support of the award such as surveys and affidavits. See, *Waldo v.
Consumers Energy Co.*, 726 F.3d 802, 2013 U.S. App. LEXIS 16555, at *37, 2013
WL 4038747 at *12 (6th Cir. Aug. 9, 2013); also see, *Sykes v. Anderson*, 419
Fed.Appx. 615, 618 (6th Cir. 2011) ("[t]he appropriate rate . . . is not necessarily
the exact value sought by a particular firm, but is rather the market rate in the
venue sufficient to encourage competent representation.").

While different attorney fee surveys may exist for the Court's
consideration, the question may be which "fee survey better served the purpose of
assessing the skills, experience and reputation of counsel" in a particular case.
*Strohl Systems Group, Inc. v. Fallon*, 2007 U.S. Dist. LEXIS 90830, 2007 WL
4323008 (E.D. Pa., Dec. 11, 2007), aff'd 372 Fed.Appx. 230 (Mar. 30, 2010).

Moreover, a fee survey may be approved as probative evidence of the
reasonableness of an hourly rate. *Taylor v. USF-Red Star Express, Inc.*, 2005
U.S. Dist. LEXIS 3599, 2005 WL 555371 (E.D.Pa., March 8, 2005), aff'd 212 Fed.
Appx. 101 (2006).

However, the results of an attorney fee survey may be merely a starting
point, a piece of evidence that still should be shown to apply in a particular case.
See, *Ray v. Secretary of Dept. Of Health and Human Services*, 2006 WL
1006587 (Fed.Cl., March 30, 2006).

The cost of performing an individual fee survey and analysis may be
recoverable, as noted in *Luessenhop v. Clinton County*:

It is a matter of first impression that a fee applicant would hire
another attorney to conduct a survey on her behalf. We cannot

forget that Luessenhop has the burden of proving that her Fee
Application is based upon prevailing market rates and that she has
the right to present evidence to support the rate she believes to be
prevailing. Here, where we are required to weigh the presumptive
prevailing market rate district wide, further pondering the
geographical distance and economic disparities between the
Plattsburgh and Albany communities and Schneider's relatively
limited access to those attorneys who practice civil rights litigation
in Albany, we acknowledge that Luessenhop was left with little
option but to hire Mishler, an Albany attorney, to conduct a more
comprehensive survey on her behalf. Luessenhop seeks $787.50 for
Mishler's endeavors, which appears to be modest. Considering the
amount of time this Court spent to conduct a similar survey, we do
not find this amount to be unreasonable and will award it.

*Luessenhop v. Clinton County, N.Y.*  558 F.Supp.2d 247, 272 (N.D.N.Y., 2008).

Importantly, a fee survey is most useful when it surveys the general area of
law at hand in an applicant's motion. Thus, the data from one type of survey may
not be applicable to a different area of law without some explanation by the
applicant of why the two areas of law are comparable. Nevertheless, more recent
cases find guidance and value even if the survey is not of the specific area of law
at hand before the Court.

*Mooney v. Sec'y of Health & Human Servs*, 2014 U.S. Claims LEXIS 1526,
2014 WL 7715158, *3 n.9, *5 (Fed. Cl. Spec. Mstr. Dec. 29, 2014) (Referring to the
Survey Report in a fee motion brought under  the National Vaccine Injury
Compensation Program but noting the absence of the proponent's explanation
why Consumer Law may be sufficiently comparable to Vaccine Act litigation).

*Gonzalez v. Secy. of Health & Human Services*, 2015 WL 10435023, *9
(Fed. Cl. Spec. Mstr. Nov. 10, 2015)  (Referring to the 2013-2014 Survey Report
and rejecting the Real Rate Report, but not expressly stating a reliance upon the
Survey Report in a fee motion brought under the National Vaccine Injury
Compensation Program).

However, cases outside of Consumer Law have used the Survey Report,
e.g., *Twerdok v Secretary of Health and Human Services*, 2016 WL 7048036

(U.S. Court of Federal Claims, Office of Special Masters, Aug. 4, 2016) (Vaccine Act litigation); and *John A. Breda V. Kindred Braintree Hospital, LLC*, 11 OCAHO 1225, 2014, CAHO LEXIS 18, 2014 WL 4390663 (Aug. 26, 2014) (Employment Discrimination) [unstated year] Survey Report.

Also, survey evidence of the forum geographic area may not be applicable if the attorney's work is performed outside of the forum area.

*Gonzalez v. Secy. of Health & Human Services*, 2015 WL 10435023, *9 (Fed. Cl. Spec. Mstr. Nov. 10, 2015) ("... the reasonable hourly rate should generally be based on the forum rate. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008); *see also Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. E.P.A.,* 169 F.3d 755 (D.D.C. Feb. 26, 1999). However, an exception to the forum rule (often referred to as the *Davis County* exception) is applied in cases where the majority of the attorney's work is performed outside of the forum, and where there is a "very significant difference" in compensation between the forum rate and the local rate. Under such circumstances, when the forum rate is higher, the reasonable hourly rate for the attorney's fees award should be calculated utilizing the lower local rate. *See Avera v. Sec'y of HHS*, 515 F.3d 1343, 1349 (Fed. Cir. 2008).

14. About the Editor



Ronald L. Burdge is an attorney and the founder of Burdge Law Office Co L.P.A. in Dayton, Ohio. Mr. Burdge is in private practice in Ohio, Kentucky and Indiana and elsewhere by *pro hac* admission, and is a nationally known Consumer Law attorney. For over a decade, Mr. Burdge has testified as an expert witness on Consumer Law and Attorney Fee issues in numerous state and federal courts. He is a member of the Total Practice Management Association, numerous professional associations, and a faculty member of the National Association of Legal Fee Analysis.

He has authored numerous articles and lectured widely on Attorney Fee issues and Consumer Law and Consumer Trial Practice, and is a member of the American Society of Legal Writers and the Legal Writing Institute. Mr. Burdge holds a certificate in Ethical Legal Billing & Reasonable Attorney Fees from NALFA, the professional governing body for the legal fee analysis profession, and has lectured widely at national and state seminars before attorneys, judges, and both public and business groups, and has testified before the Ohio Legislature and its committees on Consumer Law issues.

He has served as Board Examiner for the National Board of Trial Advocacy and has extensive Consumer Law trial and appellate experience in individual and class action cases involving lenders, retail sales practices, defective products, and warranty litigation. Since 2004, he has been repeatedly named to Ohio Super Lawyer status by *Law & Politics* Magazine and Thomson Reuters. Thomson Reuters is the world's leading source of intelligent information for businesses and professionals. In 2004, he was named Trial Lawyer of the Year by the National Association of Consumer Advocates and later elected to a six year term on the Board of the National Association of Consumer Advocates.

15. Recommendations for Future Survey Data

As always, we welcome your suggestions for improvements to the survey and this Survey Report as we continue to gather useful information in the future.

Please email your suggestions to Ron@BurdgeLaw.com or you may mail them to Ronald L. Burdge, Esq., 8250 Washington Village Drive, Dayton, Ohio 45458.

Shortly after this report was published, the next survey data gathering time frame was opened for participation for the next national edition of the *United States Consumer Law Attorney Fee Survey Report*. If you are an attorney who practices in the field of Consumer Law to any degree, your participation in the next survey would benefit the bar, practitioners and the Courts and would be greatly appreciated. You can do so by going to the website www.AttorneyFeeStudy.com and clicking on the "Click Here to Take the Survey Now" link.

Appendix 1. 2022 Survey Questions

The following pages contain the survey questions posed to the survey participants.

## US Consumer Law and Bankruptcy Law Attorney Fee Survey (2017-2018)

### Consumer Law Survey Questions

* 1. Below is a list of practice areas. Please select the practice area that represents the largest percentage of your practice time.

○ Bankruptcy

○ Consumer Law

○ Criminal Law

○ Domestic Relations

○ Employment Law

○ Estate Planning, Probate, Wills

○ General Practice

○ Medical Malpractice

○ Personal Injury

○ Real Estate

○ Securities

○ Workers Compensation

○ Other

* 2. What percentage of your practice time is devoted to Consumer Law, not including Bankruptcy Law?

○ 100

○ 90

○ 80

○ 70

○ 60

○ 50

○ 40

○ 30

○ 20

○ 10

○ 5

○ less than 5

* 3. What specific areas of Consumer Law practice do you regularly handle? Check all that apply

☐ Bankruptcy

☐ Class Action

☐ Credit Rights (FCRA, FDCPA, ECOA, TILA, Credit Discrimination, Credit Reporting, Debt Defense, etc)

☐ Mortgage (Foreclosure Defense, RESPA, HOLA, Real Estate, Housing Rights, etc)

☐ Vehicles (AutoFraud, Lemon Law, Warranty Law, UDAP, Repossession Law, etc)

☐ TCPA

☐ Other (please specify)

[                                        ]

\* 4. What is your attorney standard billable hourly rate? If your rate is different for different jurisdictions, then you will need to complete this survey for each jurisdiction where you practice with a different hourly rate. If you are unable to do so, you may email your additional responses to Ron@BurdgeLaw.com and they will be entered for you.

- ( ) 0 or n/a
- ( ) 50
- ( ) 75
- ( ) 100
- ( ) 125
- ( ) 150
- ( ) 175
- ( ) 200
- ( ) 225
- ( ) 250
- ( ) 275
- ( ) 300
- ( ) 325
- ( ) 350

- ( ) 375
- ( ) 400
- ( ) 425
- ( ) 450
- ( ) 475
- ( ) 500
- ( ) 525
- ( ) 550
- ( ) 575
- ( ) 600
- ( ) 625
- ( ) 650
- ( ) 675
- ( ) 700

- ( ) 725
- ( ) 750
- ( ) 775
- ( ) 800
- ( ) 825
- ( ) 850
- ( ) 875
- ( ) 900
- ( ) 925
- ( ) 950
- ( ) 975
- ( ) 1000
- ( ) 1025
- ( ) 1050 or more

\* 5. How many attorneys are in your law firm?

- ( ) 1
- ( ) 2

- ( ) 3
- ( ) 4

- ( ) 5 or more

\* 6. How many full or part time paralegal or law clerk or legal assistants do you employ?

- ( ) 0
- ( ) 1

- ( ) 2
- ( ) 3

- ( ) 4
- ( ) 5 or more

* 7. What is your average paralegal or law clerk or legal assistant standard billable hourly rate?

| | | |
|---|---|---|
| ○ 0 or n/a | ○ 110 | ○ 200 |
| ○ 25 | ○ 125 | ○ 210 |
| ○ 50 | ○ 140 | ○ 225 |
| ○ 75 | ○ 150 | ○ 240 |
| ○ 90 | ○ 175 | ○ 250 |
| ○ 100 | ○ 190 | ○ 275 or more |

* 8. How long ago did you change your billable hourly rate?

| | | |
|---|---|---|
| ○ n/a | ○ 1 1/2 years | ○ 3 1/2 years |
| ○ less than 1/2 year | ○ 2 years | ○ 4 years |
| ○ 1/2 year | ○ 2 1/2 years | ○ 4 1/2 years |
| ○ 1 year | ○ 3 years | ○ 5 years or more |

* 9. In what jurisdiction do you practice law? If you practice in more than one jurisdiction and your hourly rate is the same in all jurisdictions, then you may check more than one box below. If your rate differs in different jurisdictions, then you should complete this survey for one jurisdiction and then submit a new survey response for each additional jurisdiction where you practice.

| | | |
|---|---|---|
| ☐ Alabama | ☐ Maine | ☐ Oregon |
| ☐ Alaska | ☐ Maryland | ☐ Pennsylvania |
| ☐ Arizona | ☐ Massachusetts | ☐ Puerto Rico |
| ☐ Arkansas | ☐ Michigan | ☐ Rhode Island |
| ☐ California | ☐ Minnesota | ☐ South Carolina |
| ☐ Colorado | ☐ Mississippi | ☐ South Dakota |
| ☐ Connecticut | ☐ Missouri | ☐ Tennessee |
| ☐ Delaware | ☐ Montana | ☐ Texas |
| ☐ Florida | ☐ Nebraska | ☐ Utah |
| ☐ Georgia | ☐ Nevada | ☐ Vermont |
| ☐ Hawaii | ☐ New Hampshire | ☐ Virginia |
| ☐ Idaho | ☐ New Jersey | ☐ Virgin Islands US |
| ☐ Illinois | ☐ New Mexico | ☐ Washington |
| ☐ Indiana | ☐ New York | ☐ West Virginia |
| ☐ Iowa | ☐ North Carolina | ☐ Wisconsin |
| ☐ Kansas | ☐ North Dakota | ☐ Wyoming |
| ☐ Kentucky | ☐ Ohio | ☐ Washington DC |
| ☐ Louisiana | ☐ Oklahoma | |

**\* 10. How many years have you been practicing law?** 💬

| | | |
|---|---|---|
| ○ 1 | ○ 16 | ○ 31 |
| ○ 2 | ○ 17 | ○ 32 |
| ○ 3 | ○ 18 | ○ 33 |
| ○ 4 | ○ 19 | ○ 34 |
| ○ 5 | ○ 20 | ○ 35 |
| ○ 6 | ○ 21 | ○ 36 |
| ○ 7 | ○ 22 | ○ 37 |
| ○ 8 | ○ 23 | ○ 38 |
| ○ 9 | ○ 24 | ○ 39 |
| ○ 10 | ○ 25 | ○ 40 |
| ○ 11 | ○ 26 | ○ 41 |
| ○ 12 | ○ 27 | ○ 42 |
| ○ 13 | ○ 28 | ○ 43 |
| ○ 14 | ○ 29 | ○ 44 |
| ○ 15 | ○ 30 | ○ 45 or more |

**\* 11. In what geographical area of your state do you regularly practice? If more than one area, mark all that apply. For Hawaii, consider Hawai'i the Big Island to be South, Maui to be East, O'ahu to be North, and Kaua'i to be West.** 💬

☐ North          ☐ East          ☐ Central

☐ South          ☐ West

**\* 12. Do you regularly practice in a metropolitan area of more than 200,000 persons or less than 200,000 persons?** 💬

○ Both more and less

○ More than 200,000

○ Less than 200,000

Appendix 2.  Table of Authorities

The following pages contain the Table of Authorities cited in this Survey Report.

# TABLE OF AUTHORITIES

## CASES

Arana v. Monterey Fin. Servs., 2016 U.S. District LEXIS 46111, 2016 WL 1324269
(S.D. Cal., Apr. 5, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

Avera v. Secretary of Health and Human Servs., 515 F.3d 1343 (Fed. Cir. 2008) . . . . 168

Beach v. LVNV Funding, LLC, 2013 U.S. District LEXIS 162926, 2013 WL 6048989
(E.D. Wis., Nov. 15, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123, 125

Benedict v. Fidelity Capital Holdings, Inc., 2016 WL 11518497 (C.C. Cal., June 9, 2016)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131, 145

Biggerstaff v. Saul, 2019 WL 4138015 (C.D. Cal., July 5, 2019). . . . . . . . . . . . . . . . 129

Branco v. Credit Collection Servs., 2011 U.S. District LEXIS 138329, 2011 WL 6003877
(E.D. Cal., Dec. 1, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

Bratton v. FCA US LLC, 2018 U.S. District LEXIS 180975, 2018 WL 5279581
(N.D. Cal. Oct. 22, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133

Bratton v. Thomas Law Firm PC, 943 F. Supp. 2d 897 (N.D. Ind. 2013) . . . . . . 124

Breidenbach v. Experian, 2013 U.S. District LEXIS 82093, 2013 WL 2631368
(S.D. Cal., Jun. 11, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Broadcasting Music Incorporated v. Antigua Cantina and Grill, LLC, 2013 U.S.
District LEXIS 72122, 2013 WL 2244641 (May 21, 2013) . . . . . . . . . . . . . . . . 162

Brooks v. Sun Cash of SD, 2018 U.S. District LEXIS 20310, 2018 WL 747795
(S.D. Cal., Feb. 7, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Brown v. Jonathan Neil and Assocs., 2019 U.S. District LEXIS 24455, 2019 WL
636842 (E.D. Cal., Feb. 13, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 161

Brown v. Mandarich Law Group, LLP, 2014 U.S. District LEXIS 47020, 2014 WL
1340211 (N.D. Cal., Apr. 2, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

C.B. v. Sonora Schools Dist., 2011 U.S. District LEXIS 112870, 2011 WL 4590775
(E.D. Cal., Sept. 30, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Carrion v Kirby Oldsmobile, Inc., 2018 WL 6137127 (D.D. Cal., Nov. 9, 2018) . 130

Cash v. Berryhill, 2019 U.S. District LEXIS 57694, 2019 WL 1469098 (S.D. Cal.,
Apr 3, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

Castaneda v. Ocwen Loan Servicing, 2018 U.S. District LEXIS 198852 (C.D. Cal.,
Nov. 21, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130, 159

Castro v. Commercial Recovery Systems, 2014 U.S. District LEXIS 33675 (N.D.
Cal., Maritime 13, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

Chan v. Booska, 2013 U.S. District LEXIS 109005 (N.D. Cal., Jul. 15, 2013) . . 134

Cole v. Mercantile Adjustment Bureau, LLC, 2018 U.S. District LEXIS 193511,
2018 WL 5920019 (S.D. Cal., Nov. 12, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 137

Crawford v. Dynamic Recovery Servs., 2014 U.S. District LEXIS 4057, 2014 WL
130458 (S.D. Cal., Jan. 10, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Cuevas v. Check Resolution Servs., 2013 U.S. District LEXIS 189893, 2013 WL
2190172 (E.D. Cal., Aug. 8, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

Cunningham v Meridian Credit Group, LLC, 2019 U.S. District LEXIS 23680,
2019 WL 643966 (C.D. Cal., Feb. 11, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 130

David R. Maddox v. Lodestar Energy, Incorporated., et al, 2018 WL 3007437
(May 16, 2018, DOL Ben Rev. Board., Chief Administrative Appeals Judge,
Gilligan and Rolfe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141

Davis Cnty. Solid Waste Management and Energy Recovery Special Service
District v. U.S. E.P.A., 169 F.3d 755 (D.D.C. Feb. 26, 1999) . . . . . . . . . . . . . 168

Davis v. Hollins Law, 25 F.Supp.3d 1292, 2014 U.S. District LEXIS 81024, 2014 WL 2619651 (E.D. Cal., Jun. 12, 2014) . . . . . . . . . . . . . . . 123, 132, 162, 163, 164

De La Torre v. Legal Recovery Law Office, 2014 U.S. District LEXIS 128220, 2014 WL 4547035 (S.D. Cal., Sept. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Delalat v. Syndicated Office Sys., 2014 U.S. District LEXIS 33756, 2014 WL 930162 (S.D. Cal., Jan. 28, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Diaz v. Kubler Corp., 2014 U.S. District LEXIS 199581, 2014 WL 12789109 (S.D. Cal., Mar. 26, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Durham v. Continental Central Credit, 2011 U.S. District LEXIS 148403, 2011 WL 6783193 (S.D. Cal., Dec. 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

Fitzgerald v. Law Office of Curtis O. Barnes, 2013 U.S. District LEXIS 53642, 2013 WL 1627740 (E.D. Cal., Apr. 15, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

Forkum v. Co-Operative Adjustment Bureau, Incorporated, 2014 U.S. District LEXIS 106912, 2014 WL 3827955 (N.D. Cal. Oakland Division., Aug. 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133, 163

Garcia v. Resurgent Capital Servs., 2012 U.S. District LEXIS 123889, 2012 WL 3778852 (N.D. Cal., Aug. 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

Gonzalez v. Secy. of Health and Human Services, 2015 WL 10435023 (Fed. Cl. Spec. Mstr. Nov. 10, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 167, 168

Hampton v. Colvin, 2015 U.S. District LEXIS 53630, 2015 WL 1884313 (N.D. Cal., Apr. 23, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

Hollandsworth v. McDowell, 2015 WL 12830177 (Cal. Super., May 20, 2015) . 126

Jackson v. Berryhill, 2019 WL 1470869 (S.D. Cal., Apr 3, 2019). . . . . . . . . . . . . 137

Klein v. Law Offices of D. Scott Carruthers, 2015 U.S. District LEXIS 75269, 2015 WL 3626946 (N.D. Cal., Jun. 10, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

Krapf v. Nationwide Credit, Incorporated, 2010 U.S. District LEXIS 116689, 2010
WL 4261444 (C.D. Cal., Oct. 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131

LaFountain, Jr v. Paul Benton Motors of North Carolina, LLC, 2010 U.S. District
LEXIS 121631, 2010 WL 4457057 (E.D. NC, Nov. 5, 2010) . . . . . . . . . . . . . . 188

Liu v. BMW of North America, LLC, 2019 WL 4196061 (C.D., W.D., Cal. May 29,
2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129

Lovett v. Simm Assocs., 2013 U.S. District LEXIS 92495, 2013 WL 3242953 (C.D.
Cal., June 25, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 160

Low-Iacovino v. Benefit Plan Committee of Nonbargained Program of AT&T
Pension Benefit Plan, 2018 WL 6985241 (C.D. Cal., July 2, 2018) . . . . . . . . 130

Luessenhop v. Clinton County, N.Y.  558 F.Supp.2d 247 (N.D.N.Y., 2008)  . . . 167

Medina v. South Coast Car Company, 15 Cal. App. 5th 2017 Cal. App. LEXIS 820,
2017 WL 4247131 (C.A. 4th App Dist, Division One, Cal., Sept 19, 2017)  . . . 126

Miranda v. Law Office of D. Scott Carruthers, 2012 U.S. District LEXIS 2866,
2012 WL 78236 (E.D. Cal., Jan. 9, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

Moore v. Midland Credit Management., Inc., 2012 U.S. District LEXIS 176600,
2012 WL 6217597 (N.D. Ind. Dec. 12, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 124

Moreland v. Dorsey Thornton and Assocs., LLC, 2011 U.S. District LEXIS 54487,
2011 WL 1980282 (E.D. Wis., May 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 123

Munoz v. Cal. Business Bureau, Inc., 2017 U.S. District LEXIS 109855, 2017 WL
3009210 (E.D. Cal., Jul. 14, 2017)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 161

Nguyen v. HOVG, LLC, 2015 U.S. District LEXIS 124019, 2015 WL 5476254 (S.D.
Cal., Sept. 15, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Norris v. Saul, 2019 U.S. District LEXIS 141318, 2019 WL 3935638 (S.D. Cal.,
August 20, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136

<u>John A. Breda V. Kindred Braintree Hospital, LLC</u>, 11 OCAHO LEXIS 18, 2014 WL 4390663 (Aug 26, 2014, Chief Administrative Hearing Officer Ellen K. Thomas) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>139</u>, <u>168</u>

<u>Overton v. Berryhill</u>, 2018 U.S. District LEXIS 209766, 2018 WL 6523442 (S.D. Cal., Dec. 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>137</u>

<u>Oyarzo v. Tuolumne Fire District</u>, 2014 U.S. District LEXIS 60778, 2014 WL 1747236 (E.D. Cal., Apr. 30, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>161</u>

<u>Phyllis Mathews V. Navy Exchange Service Command</u>, 2018 WL 1292722 (Feb. 15, 2018, DOL Ben. Rev. Board) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>141</u>

<u>Ralph Abell v. Island Creek Coal Company., et al</u>, 2018 WL 3007436 (May 21, 2018, DOL Ben Rev. Board., Chief Administrative Appeals Judge, Gilligan and Rolfe) . <u>141</u>

<u>Ramirez v. Northern American Asset Servs., LLC</u>, 2012 U.S. District LEXIS 54641, 2012 WL 1228086 (C.D. Cal., Apr. 9, 2012) . . . . . . . . . . . . . . . . . . . . <u>123</u>, <u>131</u>, <u>133</u>

<u>Ray v. Secretary of Dept. Of Health and Human Services</u>, 2006 WL 1006587 (Fed.Cl., March 30, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>166</u>

<u>Reenders v Premier Recovery Grp</u>, 2019 WL 2583595 (N.D. Cal., May 7, 2019) <u>133</u>

<u>Rubenstein v. National Recovery Agency, Inc.</u>, 2012 U.S. District LEXIS 87941, 2012 WL 1425144 (C.D. Cal. Apr. 25, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>160</u>

<u>Sanchez v. Saul</u>, 2019 WL 2642511 (E.D. Cal., June 27, 2019) . . . . . . . . . . . . . . <u>161</u>

<u>Sayeed v. Cheatham Farms Master Homeowners' Association</u>, 2019 WL 1949028 (C.D. Cal., Apr. 16, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>130</u>

<u>Senah, Incorporated v. Xi'an Forstar S&T Co</u>, 2016 U.S. District LEXIS 72293, 2016 WL 3092099 (N.D. Cal., Jun. 2, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>133</u>

<u>Slotnick v. I.C.Q. Search and Recovery</u>, 2018 WL 6258888 (C.D. Cal., Sept. 19, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>133</u>

In Re Southwest Airlines Voucher Litigation, 2014 U.S. District LEXIS 84072, 2014 WL 11115685 (N.D. Ill. Jun. 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150

Stephenson v. Neutrogena Corporation, 2012 U.S. District LEXIS 105099, 2013 WL 12310811 (N.D. Cal., Aug. 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

Strohl Systems Group, Incorporated v. Fallon, 2007 U.S. District LEXIS 90830, 2007 WL 4323008 (E.D. Pa., Dec. 11, 2007), aff'd 372 Fed.Appx. 230 (Mar. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

Suleski v. Bryant Lafayette and Assocs., 2010 U.S. District LEXIS 55353, 2010 WL 1904968 (E.D. Wis., May 10, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

Tamara Spikes and Beaumont Independent School District, 2015 WL 2450879 (E.D. Tex., Jan. 6, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150

Taylor v. USF-Red Star Express, Incorporated, 2005 U.S. District LEXIS 3599, 2005 WL 555371 (E.D.Pa., March 8, 2005), aff'd 212 Federal Appx. 101 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

Terry Grimm v. Vortex Marine Construction, et al, 2016 WL 7826580 (Dec. 28, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141

Townsend v. Yorkshire Acquisition Group, 2018 U.S. District LEXIS 142429, 2018 WL 4006956 (C.D. Cal., May 7, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 130

Twerdok v Secretary of Health and Human Services, 2016 WL 7048036 (U.S. Court of Federal Claims, Office of Special Masters, Aug. 4, 2016) . . . . . . . . . 167

Uhl v. Colvin, 2016 U.S. District LEXIS 78779, 2016 WL 3361800 (E.D. Cal., Jun. 15, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132

Ulugalu v. Berryhill, 2018 U.S. District LEXIS 72442, 2018 WL 2012330 (S.D. Cal., Apr 30, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

Valentin v. Grant Mercantile Agency, Inc., 2017 U.S. District LEXIS 212185, 2017 WL 6604410 (E.D. Cal., Dec. 26, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 161

Vardanyan v. CMRE Fin. Servs., 2013 U.S. District LEXIS 183486(C.D. Cal., Feb.
11, 2013)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131

Verdun v. I.C. Sys., 2014 U.S. District LEXIS 52238, 2014 WL 1456295 (S.D. Cal.,
Apr. 14, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Waldo v. Consumers Energy Company, 726 F.3d 802, 2013 U.S. App. LEXIS
16555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 166

Wallace v. Florida Dept. Of Education, 2010 WL 9067802 (Fla. Cir. Ct., Jun. 2,
2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151

Warren v. Kia Motors America, 2018 Cal. App. LEXIS 1144, 2018 WL 6520889126

Wilson v Berryhill, 2018 WL 6010320 (C.D. Cal., May 4, 2018) . . . . . . . . . . . . . 131

## STATUTES, OTHER AUTHORITIES

15 U.S.C.A. 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147

42 U.S.C. 406(b), $10,000. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136

132 A.L.R.Fed. 477. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147

# United States Consumer Law Practice
## & Attorney Fee Survey Report
## 2023 California Metro Edition

Survey Conducted By
and
Survey Report Authored By

Ronald L. Burdge, Esq.
Burdge Law Office Co. L.A.
8250 Washington Village Drive
Dayton, OH 45458-1850



Attribution, No Derivs
CC-BY-ND

This material is licensed under a Creative Commons Attribution-No Derivatives 4.0 International License. This copyright license allows for redistribution, commercial and non-commercial use, as long as all quoted and selected contents are passed along unchanged and with credit to the publication and author. This means you are free to copy and redistribute the material in any medium or format for any purpose, even commercially as long as you make no content changes and provide proper attribution to the author. Further explanation is found at www.creativecommons.org.

Copyright © 2023 by R.L.Burdge
August 1, 2023

This publication contains the results of proprietary research and work.



This California Edition of the United States Consumer Law Practice and Survey Report 2023 is available as a free pdf download from www.AttorneyFeeStudy.com or via any QR reader.

# United States Consumer Law Practice & Attorney Fee Survey Report 2023 California Metro Edition

1,115 Attorneys across the state of California and in every county took part in this statewide survey of Consumer Law attorneys and their law practice economics.

1,179 California judicial and nonjudicial decisions were analyzed and the data for 1,614 attorneys from those decisions were also added to the California Metro Survey database, which was then further analyzed to produce this 2023 California Metro Survey Report. The results of this exhaustive and peer reviewed survey continues the trend of being the most comprehensive since this continuous research work began in 1999.

This 2023 California Metro Survey Report publishes the state of California results of the United States Consumer Law Practice & Attorney Fee Survey for 2023. This Survey Report continues to be the only survey of practice and hourly rates of Consumer Law practitioners in the United States. Since the first national Survey Report was published in 2000 the Survey Report has been accepted and used in contested judicial and nonjudicial attorney fee hearings, including California state and federal courts, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates across the United States.

The national Survey Report provides data analyses for the entire United States, Washington D.C., Puerto Rico, the U.S. Virgin Islands, and 157 Metropolitan Statistical Areas. From Cape Coral, Florida to Eugene, Oregon, from San Diego, California to Hartford, Connecticut, and points in between, this survey provides hourly rates for attorneys and Paralegals, average years in practice, reputation factors analysis, and additional practice information, with a Table of Authorities updated to July 3, 2023.

The data published here will help the bench, the bar, and the public understand the economics of practicing Consumer Law in California.

In deciding reasonable hourly rates in disputed cases, Senior United States District Judge James C. Fox and other judges have ruled that the *U.S. Consumer Law Attorney Fee Survey Report* was more persuasive than the National Law Journal's fee survey and the U.S. Attorney's Laffey Matrix in Consumer Law cases. *LaFountain, Jr v. Paul Benton Motors of North Carolina, LLC*, 2010 U.S. Dist. LEXIS 121631, 2010 WL 4457057.

You can download your own free copy of this 185 page 2023 California Metro Survey Report from NACA, NCLC, NACBA web sites, scan the QR code to the right, or Go to: www.AttorneyFeeStudy.com

