UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIA BLOOD,<br><br>                              Plaintiff,<br><br>v.<br><br>MERCEDEZ-BENZ, USA, LLC,<br>a Delaware Limited Liability<br>Company; and Does 1 through<br>75, inclusive,<br><br>                              Defendants. | Case No.:  23-cv-1463-WQH-AHG<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Attorneys' Fees (ECF No. 15) filed by Plaintiff Ania Blood.

I.    **BACKGROUND**

On June 22, 2023, Plaintiff Ania Blood ("Plaintiff") initiated this action by filing a Complaint in the Superior Court of California, County of San Diego, Case No. 37-2023-00026775-CU-BC-CTL. (ECF No. 1-2 at 21–28, Compl.) Plaintiff asserted claims against Defendant Mercedes-Benz, USA, LLC ("MBUSA") and Does 1–75 for violations of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and the Magnuson-Moss Warranty Act ("MMWA"). Specifically, Plaintiff alleged that after acquiring a 2019 Mercedes-Benz C300W that was manufactured by MBUSA, she experienced a series of

issues with the vehicle. (Compl. ¶¶ 1–2, 5–6.) Plaintiff alleged that when she delivered the vehicle to MBUSA's "authorized repair facilities for repairs for these issues" during the express warranty period, MBUSA "was unable to repair the Vehicle to conform to its warranty." *Id.* ¶ 7. Plaintiff alleged that MBUSA then "refused Plaintiff's request" to "return her money paid and owed on the Vehicle and take the Vehicle back." *Id.* ¶ 8.

On August 9, 2023, MBUSA removed the action to this Court under federal question jurisdiction because Plaintiff's fifth cause of action arose under the MMWA, 15 U.S.C. § 2301 et seq., and "the amount in controversy exceed[ed] $50,000.00." (ECF No. 1 at 2–3.)

On February 21, 2024, the parties filed a Joint Notice of Settlement. (ECF No. 10.) The same day, Plaintiff filed a signed copy of MBUSA's F.R.C.P. Rule 68 Offer (ECF No. 11, Rule 68 Offer), indicating that she had accepted MBUSA's offer under Federal Rule of Civil Procedure 68 to "pay the total amount of $71,500.00 … to Plaintiff and Plaintiff's lender for the Subject Vehicle." *Id.* at 1. The Rule 68 Offer provided that if Plaintiff accepted the Offer, MBUSA would "stipulate that Plaintiff is the prevailing party for purposes of any motion for attorney's fees[.]" *Id.* at 3. The Rule 68 Offer also gave Plaintiff the option for MBUSA to "pay Plaintiff's attorney's fees, expenses and costs in the amount of $10,000.00 in full satisfaction of any attorney's fees, expenses and costs owed to Plaintiff and/or Plaintiff's attorneys in this action." *Id.* at 2. Plaintiff instead selected the following option: "For fees, costs and expenses, I hereby elect to file a motion and/or a bill of costs pursuant to paragraph 6." *Id.* at 4.

On July 11, 2024, Plaintiff filed the Motion for Attorneys' Fees. (ECF No. 15.)

On July 29, 2024, MBUSA filed a Response in opposition to the Motion for Attorneys' Fees. (ECF No. 19.)

On August 5, 2024, Plaintiff filed a Reply in support of the Motion for Attorneys' Fees. (ECF No. 23.)

/ / /

## II.    CONTENTIONS

Plaintiff contends that, as the prevailing party, she is entitled to attorneys' fees in the amount of $27,608.00 pursuant to California Civil Code § 1794(d). (ECF No. 15-1 at 1–3.) Plaintiff asserts that her "counsel's hourly rates are reasonable" and "appropriate given each attorney or paralegal's relative experience and qualifications, and have been approved in cases throughout California, and are consistent with national surveys of consumer-attorney hourly rates." *Id.* at 5–7 (citing (ECF No. 15-3 ¶¶ 8–9, 18; ECF No. 15-2 at 23–217)). Plaintiff also asserts that her counsel's hours spent "litigating this case through this fee motion" are "reasonable." *Id.* at 7. Plaintiff's counsel asserts in a declaration that, in total, five attorneys and three paralegals from his firm, Auto Fraud Legal Center LLP ("AFLC"), have billed 69 hours to litigate Plaintiff's case. (ECF No. 15-3 ¶¶ 6–7.) Plaintiff attaches a spreadsheet documenting AFLC's itemized billing entries for this case. (ECF No. 15-2 at 19–22.)

MBUSA does not dispute that Plaintiff is the prevailing party for purposes of this motion. MBUSA contends, however, that Plaintiff's counsel's "hourly rates are inflated" and "Plaintiff's counsel's entries contain inappropriate block-billing, internal communications, and general overhead that is not recoverable," as well as "exaggerated and duplicative entries." (ECF No. 19 at 5.) MBUSA also contends that any time billed after the service of the Rule 68 Offer "is not recoverable." *Id.* at 10. MBUSA attaches a spreadsheet detailing its specific objections to Plaintiff's itemized billing entries. (ECF No. 20-1.) MBUSA requests that the Court "deny Plaintiff's motion in whole or in part and/or reduce Plaintiff's requested award to no more than $10,780.20," which MBUSA contends reflects appropriate adjustments "to the inflated hourly rate[s] and exaggerated time entries." (ECF No. 19 at 11.) Specifically:

[MBUSA] requests the following adjustments if any fees are to be awarded:

(a) The Court should reduce/strike time billed by Plaintiff's counsel based on Exhibit D [(ECF No. 20-1)];

1
2
3

    (b) Plaintiff's counsel's rates should be reduced to a blended rate of $400/hr for attorneys, $200/hr for law clerks, and $100/hr for paralegals and office staff (to the extent any of the claimed work is recoverable);

4
5
6

    (c) If this Court finds that MBUSA's FRCP Rule 68 Offer is more than what Plaintiff reasonably incurred at the time the offer was made, this Court should decline to award any fees and/or costs Plaintiff claims to have incurred after February 15, 2024, including all fees related to bringing this motion.

7

*Id.*

8

## III.  LEGAL STANDARD

9

Under the Song-Beverly Act, a prevailing buyer:

10
11
12
13

shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

14
15
16
17
18

Cal. Civ. Code § 1794(d). "The plaintiff bears the burden of demonstrating that the fees sought were allowable, reasonably necessary to the conduct of the litigation, and reasonable in amount." *Hellenberg v. Ford Motor Co.*, No. 18cv2202 JM (KSC), 2020 WL 1820126, at *1 (S.D. Cal. Apr. 10, 2020) (citing *Karapetian v. Kia Motors Am., Inc.*, 970 F. Supp. 2d 1032, 1036 (C.D. Cal. 2013)).

19
20
21
22
23
24
25
26
27
28

"Courts calculate attorneys' fees under § 1794(d) using the 'lodestar adjustment method.'" *Aispuro v. Ford Motor Co.*, No. 18-CV-2045 DMS (KSC), 2020 WL 4582677, at *2 (S.D. Cal. Aug. 10, 2020) (quoting *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 818 (Ct. App. 2006)). "The lodestar calculation 'begins with a touchstone or lodestar, based on careful compilation of the time spent and reasonable hourly compensation of each attorney.'" *Id.* (quoting *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001)). After determining the reasonable hourly rate for comparable legal services in the community, courts may adjust that amount based on the following factors: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the

attorneys, (4) the contingent nature of the fee award." *Ketchum*, 17 P.3d at 741. "[T]he purpose of such adjustment is to fix a fee at the fair market value for the particular action." *Id.*

## IV.    DISCUSSION

### A.    Reasonable Rate

In determining a reasonable rate for attorneys' fees, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The relevant community is that in which the district court sits." *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 978 (S.D. Cal. 2014) (quoting *Weeks v. Kellogg Co.*, No. CV 09-08102(MMM) (RZx), 2013 WL 6531177, at *32 (C.D. Cal. Nov. 23, 2013)); *see Butler v. Homeservices Lending LLC*, No. 11-cv-02313-L (MDD), 2014 WL 5460447, at *6 (S.D. Cal. Oct. 27, 2014) ("The survey and reports submitted by both [plaintiff] and [defendant] are irrelevant to the hourly rate inquiry because none of them address the prevailing market rate for attorneys of reasonably comparable skill, experience, and reputation in the Southern District of California."). "Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *4 (N.D. Cal. Jan. 22, 2020). Courts may also draw upon "[d]ecisions by other courts regarding the reasonableness of the rate sought," as well as the court's "own experience in determining what constitutes a reasonable rate." *Id.* "Once the fee applicant has proffered such evidence" of the prevailing market rate in the community, "the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Nguyen v. BMW of N. Am., LLC*, No. 3:20-CV-2432 JLS (BLM), 2023 WL 173921, at *2 (S.D. Cal. Jan. 12, 2023) (quoting *Cortes v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005)).

Plaintiff contends that the following hourly rates are reasonable:

| Name | Position | Hourly Rate |
|---|---|---|
| Christopher P. Barry | Attorney | $695 |
| Gregory T. Babbitt | Attorney | $610 |
| Joseph S. Green | Attorney | $550 |
| Michael A. Klitzke | Attorney | $395 |
| Laura Gaudet | Attorney[1] | $280 |
| Brandon Rodriguez | Paralegal | $195 |
| Laura Turner | Paralegal | $195 |
| Jeanette Abbenhaus | Paralegal | $155 |

(ECF No. 15-1 at 6.) Plaintiff contends that these rates properly reflect "each attorney or paralegal's relative experience and qualifications," "have been approved in cases throughout California," and "are consistent with national surveys of consumer-attorney hourly rates." *Id.* at 6–7. Attorney Christopher P. Barry submitted a Declaration in Support of Plaintiff's Motion for Attorneys' Fees, wherein he lists the case captions and docket numbers for twelve state court actions that he avers "are examples of similar cases under the Consumers Legal Remedies Act, the Song-Berry Consumer Warranty Act, and the Unfair Competition Law in which California courts approved of AFLC's hourly rates as 'reasonable' in the last two years." (*See* ECF No. 15-3 ¶ 8.) Barry also attached a copy of

---

[1] Attorney Christopher P. Barry's Declaration explains that Laura Gaudet "was a law clerk at the time" that Plaintiff's case "came in" at the firm in January 2023. (ECF No. 15-3 ¶ 7.) Gaudet's Declaration states that she graduated from law school in December 2022 and "passed the California Bar Examination in February 2023." (ECF No. 15-6 ¶ 2.) The first billing entry for Plaintiff's case that is attributed to Gaudet is dated August 16, 2023, several months after her passage of the bar examination. (*See* ECF No. 20-1 at 3.) The Court therefore assumes that, at the time Gaudet was billing time toward Plaintiff's case, she was billing at an attorney rate, rather than at a law clerk rate. The Court accordingly disregards the assertions in MBUSA's Response regarding "law clerks with rates of up to $280/hr" (*see* ECF No. 19 at 8) and evaluates the reasonableness of Gaudet's hourly rate in comparison to the prevailing market rate for an attorney with similar experience.

6

the United States Consumer Law Practice & Attorney Fee Survey Report 2023 California Metro Edition ("California Metro 2023 Survey") (ECF No. 15-2 at 23–217), which he describes as reflecting the results of "a national survey of prevailing rates for consumer attorneys." (ECF No. 15-3 ¶ 18.)

MBUSA contends that "Plaintiff's counsel's claimed rates for the attorneys who worked on this case are unreasonable." (ECF No. 19 at 9.) MBUSA asserts that the cases cited by Plaintiff "are state court cases and do not detail the hourly rates that were approved for the attorneys who *actually* worked on this case." *Id.* at 8. MBUSA contends that "Plaintiff's counsel purposefully ignores" several Northern District of California decisions in "lemon law cases" where courts found rates lower than Plaintiff's counsel's rates to be reasonable. *Id.* at 9 (citing *Hanai v. Mercedes-Benz USA, LLC*, No. C 20-6012 WHA, 2022 WL 718037, at *3 (N.D. Cal. Mar. 10, 2022); *Cardoso v. FCA US LLC*, No. 20-cv-02250-JSC, 2021 WL 1176532, at *3 (N.D. Cal. Mar. 29, 2021); *Cox v. FCA US LLC*, No. 3:20-cv-03808-WHO, 2022 WL 316681, at *2 (N.D. Cal. Feb. 2, 2022); *Base*, 2020 WL 363006, at *4–5).[2] MBUSA also attaches an excerpt from the 2017–2018 United States Consumer Law Attorney Fee Survey Report (ECF No. 19-6), which MBUSA asserts "demonstrates that $450 to $531 per hour is in line with the work performed herein, the level of skill required and Plaintiff's counsel's experience." (ECF No. 19-1 ¶ 13.)

As a preliminary matter, neither Plaintiff nor MBUSA point to any Southern District of California decisions regarding attorneys' fees in similar cases brought under the Song-Beverly Act.[3] As MBUSA points out, Plaintiff's reliance on state court cases that

---

[2] Plaintiff contends that the Court should "ignore[ ]" the cases cited by MBUSA that involve "rulings by judges in other federal district courts" regarding hourly rates because "none of [the cited cases] involve Plaintiff's firm and/or attorneys." (ECF No. 23 at 4.) The Court is not constrained, however, to examining only those cases involving Plaintiff's particular firm or attorneys. Rather, the Court must consider the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

[3] Although MBUSA references "the Southern District of California" when discussing *Arias v. Ford Motor Co.*, No. EDCV 18-1928 PSG (SPx), 2020 WL 1940843 (C.D. Cal. Jan. 27, 2020) (*see* ECF No. 19 at 9

approved her counsel's rates is unpersuasive, as Plaintiff does not specify which attorneys' or paralegals' rates were approved as reasonable in these cases or how those rates compared to the rates at issue in this case. More importantly, however, Plaintiff lists cases that were litigated in Orange County, Riverside County, Los Angeles County, Santa Clara County, and San Joaquin County, all of which are outside the bounds of "the relevant community" in which this Court sits in the Southern District of California. *Carr*, 51 F. Supp. 3d at 978, 980 (finding that the Northern District of California's determination regarding the reasonableness of counsel's rates was "irrelevant" in the Southern District of California).

Additionally, while Plaintiff relies upon the California Metro 2023 Survey to support her counsel's fees, the survey demonstrates that her counsel's hourly rates generally fall well above the median for the relevant community. Specifically, the Court notes the following data reported for the area of "California, San Diego – Chula Vista – Carlsbad," which is within the Southern District of California: the range of hourly rates for "Attorneys Handling Vehicle Cases" is $175–$750, and the median hourly rate is $375. (ECF No. 15-2 at 139.) All of Plaintiff's attorneys' rates fall within this range, with Gaudet's rate falling below this median and Barry's, Babbitt's, Green's, and Klitzke's rates falling above this median. The California Metro 2023 Survey also includes a metropolitan area-specific "Experience Variable Table," which provides a range of hourly rates and a median hourly rate based on an attorney's number of years spent practicing consumer law. *Id.* at 140.

---

n.2), that decision was rendered by the Central District of California. Likewise, *Di Gioia v. Ford Motor Co.*, No. EDCV 18-1724 JGB (KKx), 2020 WL 1955311 (C.D. Cal. Apr. 1, 2020), which MBUSA describes as "a similar case involving different counsel in the Southern District" (ECF No. 19 at 9 n.2), was a Central District of California case. Plaintiff's Reply brief likewise relies on Central District cases. (*See* ECF No. 23 at 4–5 (citing *Walters v. FCA US, LLC*, No. 2:20-cv-00644-AB-JC, 2021 WL 926103 (C.D. Cal. Jan. 6, 2021); *Valdez v. FCA US LLC*, No. CV 19-09009-AB (JEMx), 2020 WL 5088093 (C.D. Cal. July 21, 2020)).) The relevant inquiry for this Court, however, is the prevailing market rate in the community "in which the district court sits." *Carr*, 51 F. Supp. 3d at 978.

Barry's, Green's, and Gaudet's hourly rates fall above the median hourly rates for their respective levels of experience.[4]

The Court's review of similar "lemon law" cases in the Southern District of California reveals that another judge recently deemed the following rates reasonable in a case involving several of the same attorneys: $575/hour for both Barry and Babbitt; $450/hour for Green; and $325/hour for Klitzke. *Wentworth v. Ford Motor Co.*, No. 22-CV-01964-W-BGS, 2023 WL 11795672, at *3 (S.D. Cal. Apr. 17, 2023). In particular, the court found that these rates were reasonable because "Mr. Babbit and Mr. Barry each [had] over 20 years of experience practicing lemon law and [were] partners at the firm,"

---

[4] Specifically:

- Barry has at least 22 years of consumer law experience. (ECF No. 15-3 ¶ 13 (stating that Barry joined AFLC in October 2002).) According to the experiential table, his experience equates to a median hourly rate of $475 and an hourly rate range of $225–$800. (ECF No. 15-2 at 140.) His hourly rate of $695 thus falls well above the median rate.
- Babbitt has 26 years of consumer law experience. (ECF No. 15-4 ¶ 3.) According to the experiential table, his experience equates to a median hourly rate of $623 and an hourly rate range of $200–$950. (ECF No. 15-2 at 140.) His hourly rate of $610 thus falls slightly below the median rate.
- Green had <1 year to 1 year of consumer law experience during the relevant time frame. (ECF No. 15-5 ¶¶ 5–8.) According to the experiential table, experience of at least 1 year equates to a median hourly rate of $250 and an hourly rate range of $200–$350. (ECF No. 15-2 at 140.) Green's hourly rate of $550 thus falls well above the median rate. Green's circumstances are unique, however, in that while he has been practicing consumer law only since he joined AFLC in February 2023, Green has been practicing as an attorney for over 20 years. (ECF No. 15-5 ¶¶ 5–8.) Specifically, Green "worked at the law firm Fried Frank as an Associate in the litigation department" from 2001 to 2005. *Id.* ¶ 5. Then, from 2005 to 2023, Green "worked as an Assistant United States Attorney at the United States Attorney's Office for the Southern District of California, where [he] prosecuted a variety of federal criminal offenses including for fraud." *Id.* ¶ 6. The Court finds that an hourly rate above the applicable range on the experiential table appears reasonable in light of Green's considerable litigation experience. *See Wentworth*, 2023 WL 11795672, at *3 (concluding that a rate of $450/hour was reasonable for Green "[g]iven his overall experience but limited experience in the field" of lemon law).
- Klitzke has at least 8 years of consumer law experience. (ECF No. 15-3 ¶ 14.) According to the experiential table, his experience equates to a median hourly rate of $450 and an hourly rate range of $250–$600. (ECF No. 15-2 at 140.) His hourly rate of $395 thus falls below the median.
- Gaudet had <1 year to 1 year of consumer law experience during the relevant time frame. (ECF No. 15-6 ¶ 2.) According to the experiential table, experience of at least 1 year equates to a median hourly rate of $250 and an hourly rate range of $200–$350. (ECF No. 15-2 at 140.) Her hourly rate of $280 thus falls above the median.

"Mr. Green [was] a Senior Associate with over 20 years practicing law but only two months practicing lemon law"; and "Mr. Klitzke was an associate at the firm and had approximately seven years of experience practicing lemon law." *Id.*

The Court finds the rates applied in *Wentworth* to be reasonable and will adopt similar rates, with slight adjustments to reflect inflation, increased experience, and the results of the California Metro 2023 Survey.[5] Taking all of this information into account, the Court finds the following hourly rates to be reasonable: $605/hour for both Babbitt and Barry; $475/hour for Green; $395/hour for Klitzke; and $250/hour for Gaudet. These rates are comparable to those awarded to different counsel in other recent Southern District of California "lemon law" cases. *See Garcia v. Ford Motor Co.*, No. 22-cv-1474-GPC, 2023 WL 3961090, at *4 (S.D. Cal. June 12, 2023) (upholding attorney rates ranging "between $475 and $605 per hour" in part because "the attorneys involved [were] highly skilled in Song-Beverly cases" and "[had] many years' experience litigating Song-Beverly actions and have a proven track record of success"); *Hellenberg*, 2020 WL 1820126, at *2–3 (upholding as reasonable rates of $350/hour–$550/hour for partners and rates of $250/hour–$325/hour for associates).

As for paralegal rates, the California Metro 2023 Survey statistical table for "California, San Diego – Chula Vista – Carlsbad" reports that the "Median Paralegal Rate" is $150, while the "Paralegal Median Hourly Rate Range, Low to High" is $25–$300. (ECF No. 15-2 at 139.) Although the hourly rates of the three paralegals who worked on Plaintiff's case are slightly above the median rate ($155/hour for Abbenhaus and $195/hour

---

[5] Both Plaintiff and MBUSA submitted survey results to support their respective positions. (*See* ECF No. 15-2 at 23–217; ECF No. 19-6.) Plaintiff submitted the California Metro 2023 Survey (ECF No. 15-2 at 23–217), and MBUSA submitted an excerpt from the 2017–2018 United States Consumer Law Attorney Fee Survey Report that specifically reported results for the State of California (ECF No. 19-6). The Court finds Plaintiff's survey to be the more persuasive of the two. In addition to providing more recent data, the California Metro 2023 Survey also presents more granular statistics about specific metropolitan areas within California that better enables the Court to determine the prevailing market rate in the relevant community.

for Rodriguez and Turner), their rates fall well within the median range. The Southern District of California has upheld paralegal rates ranging from $155/hour to $265/hour in recent "lemon law" cases. *See Wentworth*, 2023 WL 11795672, at *3 (finding a paralegal rate of $155/hour to be reasonable); *Garcia*, 2023 WL 3961090, at *4 (finding rates of $235/hour to $265/hour to be reasonable for paralegal and legal assistants); *Chavez v. Jaguar Land Rover N. Am., LLC*, No. 18-cv-2811 W (JLB), 2020 WL 376209, at *2–3 (S.D. Cal. Jan. 23, 2020) (upholding a paralegal rate of $195/hour). In this case, the Court finds the requested paralegal rates to be reasonable in light of each professional's respective experience. (*See* ECF No. 15-3 ¶ 15 (stating that Abbenhaus "ha[d] worked at [AFLC] since 2015" and "ha[d] been working as a paralegal since 2021"); *id.* ¶ 16 (stating that Turner previously worked as a paralegal at a different law office for over 20 years before working as a paralegal at Plaintiff's counsel's firm from January 2022 to March 2024); ECF No. 15-7 ¶¶ 2–3 (stating that Rodriguez earned his law degree in 2021 and has worked as a paralegal since September 2022).)[6]

---

[6] In determining reasonable rates for Plaintiff's attorneys and paralegals, the Court does not consider MBUSA's argument that there is "no evidence presented that Plaintiff's counsel has actually billed their clients or any client at these rates." (ECF No. 19 at 10.) Plaintiff need not show that she was "actually" billed at her attorneys' rates to demonstrate that the rates are reasonable or to recover attorneys' fees. *See Lin v. BMW of N. Am., LLC*, No. LACV 18-08297-VAP (PLAx), 2020 WL 8743479, at *6 (C.D. Cal. Sept. 8, 2020) (rejecting the defendant's argument that plaintiff's counsel's rates were "unreasonable" because they were not "actually charged" to the plaintiff and holding that, "[a]lthough plaintiff's counsel was retained on a contingency fee basis, Plaintiff [was] entitled to recovery of his attorneys' fees pursuant to the relevant fee-shifting provisions of Song-Beverly" (citing *Robertson*, 144 Cal. App. 4th at 818)).

The Court likewise does not consider MBUSA's assertion that that "[d]efense firms typically charge approximately $200/hour-$250/hour in warranty defense litigation," including for "seasoned practitioners with as much as thirty years of trial experience." (ECF No. 19 at 10.) Defense counsel's rates are irrelevant to the issue of the reasonableness of Plaintiff's counsel's fees. *See Butler*, 2014 WL 5460447, at *8 (finding that defense counsel's statement regarding his own hourly rate "carrie[d] no weight," in part because, "[i]n the Court's experience, defense attorneys may charge less than plaintiff attorneys who work on a contingency fee basis and may offer discounts when defending a client in multiple related cases").

23-cv-1463-WQH-AHG

In sum, the Court finds the following hourly rates to be reasonable:

| Name | Position | Hourly Rate |
|------|----------|-------------|
| Christopher P. Barry | Attorney | $605 |
| Gregory T. Babbitt | Attorney | $605 |
| Joseph S. Green | Attorney | $475 |
| Michael A. Klitzke | Attorney | $395 |
| Laura Gaudet | Attorney | $250 |
| Brandon Rodriguez | Paralegal | $195 |
| Laura Turner | Paralegal | $195 |
| Jeanette Abbenhaus | Paralegal | $155 |

## B.    Hours Reasonably Expended

The prevailing party is entitled to "an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983) (quotation omitted). "A fee applicant must provide records documenting the tasks completed and the amount of time spent." *Scott v. Jayco Inc.*, No. 1:19-cv-0315 JLT, 2021 WL 6006411, at *2 (E.D. Cal. Dec. 20, 2021) (citing *Hensley*, 461 U.S. at 424).

"[G]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Demaria v. FCA US LLC*, No. 17-cv-00539-AJB-BGS, 2020 WL 7013584, at *1 (S.D. Cal. Nov. 25, 2020) (quoting *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008)). Instead, "[i]f the prevailing party meets [her] initial burden" of "showing that the fees incurred were reasonably necessary to the conduct of the litigation," "[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable." *White v. FCA US LLC*, No. 22-cv-00954-BLF, 2024 WL 4257640, at *2 (N.D. Cal. Sept. 20, 2024) (citations omitted). "If a court determines that some hours billed are not reasonable, it may exclude them using one of two

methods: the court may either conduct an 'hour-by-hour analysis' of the fee request or make an 'across the board percentage cut.'" *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1223 (C.D. Cal. 2020) (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013)).

### 1.    MBUSA Adequately Challenges Plaintiff's Billing Entries

As a preliminary matter, Plaintiff contends that MBUSA fails to challenge her counsel's billing entries in the appropriate manner. Specifically, Plaintiff asserts that MBUSA does not "present evidence the hours claimed are not appropriate" or "provide a declaration from [an] attorney 'with expertise in the procedural and substantive law.'" (ECF No. 23 at 3 (quoting *Premier Med. Mgmt. Sys., Inc.*, 163 Cal. App. 4th at 564).) Plaintiff challenges MBUSA's submission of a declaration from its attorney, Mehgan Gallagher (ECF No. 19-1), asserting that Gallagher "is only an associate for Defense Counsel's firm and was only admitted to practice law in 2021." (ECF No. 23 at 3 (citing ECF No. 23-1 ¶ 6 (attaching "a printout from the California State Bar for Mehgan Gallagher")).) Plaintiff contends that Gallagher's objections to the billing entries "are merely [Gallagher's] opinions." *Id.* at 3–4.

The Court agrees with Plaintiff that "the opposing party has the burden to demonstrate the hours spent are duplicative or excessive." *Hellenberg*, 2020 WL 1820126, at *1. It is not clear to the Court, however, that MBUSA's method of challenging Plaintiff's counsel's billing entries is insufficient. *See Mirzayan v. Jaguar Land Rover N. Am., LLC*, No. 2:22-cv-06508-WLH-PVS, 2023 WL 5722634, at *4 n.3 (C.D. Cal. Aug. 7, 2023) (noting that "to challenge itemized time entries, a party *may* 'obtain the declaration of an attorney with expertise in the procedural and substantive law to demonstrate that the fees claimed were unreasonable'" (emphasis added)). MBUSA does not rely upon disfavored "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated." *Demaria*, 2020 WL 7013584, at *1. The Court finds that MBUSA appropriately "identif[ies] the particular charges it considers objectionable." *White*, 2024 WL 4257640, at *2.

In any event, the Court is tasked with "carefully review[ing] attorney documentation of hours expended." *Cardoso*, 2021 WL 1176532, at *2 (quoting *Ketchum*, 17 P.3d at 741). The Court may exclude "hours that are excessive, redundant, or otherwise unnecessary." *Yarovoy v. Tesla Motors, Inc.*, No. 23-cv-04182-JSC, 2024 WL 2412547, at *4 (N.D. Cal. May 22, 2024) (quoting *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012)); *see Mirzayan*, 2023 WL 5722634, at *4 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992), for the proposition that "a trial court must 'independently review' a fee request to determine the number of hours reasonably expended").

## 2.    Fees Incurred After the Time of the Rule 68 Offer

MBUSA contends that, because Plaintiff did not select the option in the Rule 68 Offer to recover attorneys' fees of $10,000.00, "if this Court finds that Defendant's FRCP Rule 68 Offer is more than what Plaintiff reasonably incurred at the time the offer was made," the Court should "decline to award any fees and/or costs Plaintiff claims to have incurred after February 15, 2024, including the unreasonable (and unnecessary) time spent on the instant motion." (ECF No. 19 at 11.) Defendant cites no authority in support of this proposition.

Plaintiff contends that she may recover fees incurred after the date of the Rule 68 Offer because (1) the Rule 68 Offer did not limit Plaintiff's fees to those incurred prior to the acceptance of the Offer; and (2) MBUSA's position "is contrary to established authority." (ECF No. 23 at 6 (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982)).)

As a general matter, fees incurred defending a fee claim are recoverable. *See Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564, at *15 (C.D. Cal. Apr. 29, 2014) (explaining, in a Song-Beverly Act case, that "an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee"), *objections overruled*, No. CV 11-7667 PSG CWX, 2014 WL 4090512 (C.D. Cal. June 20, 2014); *see also White*, 2024 WL 4257640, at *4 (disagreeing that the recovery of nine hours devoted to the plaintiff's attorneys' fee motion in a Song-Beverly Act action was "unreasonable" because the "California Supreme Court

14

frequently awards time expended for the attorneys' fee motion" (citing *Robertson*, 144 Cal. App. 4th at 817; *Serrano*, 32 Cal. 3d at 631)). Additionally, the Court agrees with Plaintiff that the Rule 68 Offer does not limit her ability to recover fees incurred after either the service or acceptance of the offer. *Cf. Wentworth*, 2023 WL 11795672, at *4 (striking all hours billed after the date of the defendant's Rule 68 offer where the offer contained a provision that "explicitly limit[ed]" plaintiffs' recovery to "fees and costs now accrued").

The Court declines to deduct the fees incurred after MBUSA's service of the Rule 68 Offer.

### 3.    Clerical Work

MBUSA contends that 20 billing entries, totaling 6 hours, are unrecoverable because "clerical work as performed by a paralegal is not recoverable." (*See* ECF No. 20-1.) Plaintiff does not respond to this contention.

The United States Supreme Court has held that "purely clerical work or secretarial tasks should not be billed at a paralegal or lawyer's rate, regardless of who performs them." *Missouri v. Jenkins*, 491 US. 274, 288 n.10 (1989). The mere fact that a paralegal performs a task does not necessarily render it "clerical" in nature and thus unrecoverable, as "necessary support services for attorneys, e.g., secretarial and paralegal services, are includable within an award of attorney fees," specifically "[w]here support staff do substantive case-related work." *Yarovoy*, 2024 WL 2412547, at *5 (citations omitted). Courts accordingly "distinguish between ineligible clerical work—involving office administration, calendaring, and work typically considered part of an attorney's overhead—and eligible paralegal work 'done in furtherance of the substantive litigation.'" *Id.* (quoting *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, No. SACV 17-00660 JVS (JCGx), 2018 WL 6016149, at *4 (C.D. Cal. Aug. 13, 2018)); *see Scott*, 2021 WL 6006411, at *6 (explaining that ineligible clerical tasks include "creating indexes for a binder; filing emails, memoranda, and other correspondence; updating the case calendar with new dates; copying, scanning, and faxing documents; and filing or serving documents").

23-cv-1463-WQH-AHG

Communications with clients are not inherently clerical or non-clerical in nature. *See Scott*, 2021 WL 6006411, at *11 ("[S]ome client communications may be considered clerical or ministerial, such as merely informing the client that a document has been filed or what a hearing date is, [while] others that are more substantive are part of an attorney's duties, and therefore billable." (quoting *James v. City and County of Honolulu*, No. 13-00397 JMS-BMK, 2014 WL 6908313, at *10 (D. Haw. Dec. 8, 2014))). In this case, Paralegal Brandon Rodriguez billed 0.1 hours on February 1, 2024, for "email client"; 0.1 hours on February 1, 2024, for "revise letter to client for GTB"; and 0.1 hours on February 2, 2024, for "Review e-mail from client." (ECF No. 20-1 at 7, 9.) The Court cannot determine, due to the lack of description in these billing entries, whether this correspondence with Plaintiff was clerical or non-clerical in nature. The Court accordingly deducts 0.3 hours of Rodriguez's time from Plaintiff's fee award.

Additionally, the Court finds that time devoted to scheduling, including coordinating deposition times with court reporters, is not properly recoverable as part of the fee award. *See Kang v. Credit Bureau Connection, Inc.*, No. 1:18-cv-01359-SKO, 2023 WL 6811994, at *10 (E.D. Cal. Oct. 16, 2023) (noting that courts "have declined to award fees for communicating with the Court—such as emailing or calling [the] courtroom deputy—due to the clerical nature of the task") (collecting cases). In this case, Rodriguez billed 0.1 hours on February 1, 2024, for "exchange emails with court reporter re depo location for MB of Henderson"; 0.2 hours on February 2, 2024, for "exchange emails with court reporter re depositions"; and 0.1 hours on February 15, 2024, for "email court reporter re cancellation of all depos due to settlement." (ECF No. 20-1 at 7–8, 11.) The Court accordingly deducts 0.4 hours of Rodriguez's time from Plaintiff's fee award.

The Court also finds that service-related tasks are not recoverable in a fee award. "Courts in the Ninth Circuit have further found that drafting and preparing documents related to service of process are clerical tasks and have reduced the number of hours awarded as fees accordingly." *Maldonado v. I.C. Sys., Inc.*, No. 1:23-cv-00186-JLT-BAM, 2024 WL 1092913, at *5 (E.D. Cal. Mar. 13, 2024) (collecting cases); *see also Sunbelt*

23-cv-1463-WQH-AHG

*Rentals, Inc. v. Three Bros. Elec. Contractors, Inc.*, No. 1:21-cv-01357 JLT SKO, 2023 WL 5103739, at *4 (E.D. Cal. Aug. 9, 2023) (deducting time entries for "service-related tasks," including "Correspondence to California process server regarding needs for service," "Receipt and review of emails from California process server regarding status of service," and "Receipt and review of service details for Summonses served on defendants from California process server" due to "the clerical nature of these tasks"); *Santiago v. CACH LLC*, No. 13-cv-02234-JST, 2013 WL 5945805, at *4 & n.2 (N.D. Cal. Nov. 4, 2013) (reducing time for "clerical tasks," including "Prepare service documents …; research registered agent," "Prepare service letter; telephone call to process server," and "Review and revise [proof of service] from process server"). In this case, paralegals billed for the following tasks related to service of process: Abbenhaus billed 0.2 hours on June 22, 2023, for "Research addresses from Secretary of State"; Rodriguez billed 0.2 hours on February 5, 2024, for "exchange emails with Advanced re service of depo subps to MB of Escondido and MB Henderson"; Rodriguez billed 0.2 hours on February 5, 2024, for "draft Personal service Instruction form for MB Escondido and MB Henderson"; Rodriguez billed 0.1 hours on February 9, 2024, for "review email from Advanced re summary of service of depo subp to Henderson MB dealer"; and Rodriguez billed 0.1 hours on February 9, 2024, for "review email from Advanced re summary of service of depo subp to Escondido MB dealer." (ECF No. 20-1 at 3, 9–10.) The Court accordingly deducts 0.2 hours of Abbenhaus's time and 0.6 hours of Rodriguez's time from Plaintiff's fee award.

Much of the remaining tasks that MBUSA contends are "clerical" include drafting discovery-related matters or otherwise appear to be substantive work done in furtherance of the litigation. *See, e.g.*, ECF No. 20-1 at 7 (billing 1.4 hours for "Further drafting of discovery responses"); *id.* (billing 0.3 hours for "Drafting of letter to client re discovery from MBUSA"); *id.* at 9 (billing 0.5 hours to "draft RFP responses"); *see also Zargarian*, 442 F. Supp. 3d at 1229 (declining to exclude certain tasks, including "drafting initial disclosures" and "drafting discovery documents," from the fee award because they were

23-cv-1463-WQH-AHG

not "purely clerical or secretarial tasks"). The Court declines to deduct the remainder of the alleged "clerical" billing entries from Plaintiff's fee award.

### 4.    Exaggerated and Duplicative Entries

MBUSA contends that "[a]t least 18 of the entries on Plaintiff's chart contain duplicative entries that were already excessively billed by the same or other attorneys in the firm." (ECF No. 19 at 8.) MBUSA asserts that "several attorneys and at least one law clerk all repeatedly [sic] billed to draft and review the complaint, draft and review the FRCP 26 Initial Disclosures, draft and review the Joint 26f Report, and draft and review the Early Neutral Evaluation Conference Statement." *Id.*

Plaintiff does not respond to this contention. Plaintiff's counsel's declaration attached to Plaintiff's Motion, however, explains that "[Plaintiff's] case was staffed with one senior attorney and one junior attorney or law clerk at all times." (ECF No. 15-3 ¶ 7.) The declaration also explains that, after Green became the "supervising attorney" and Gaudet became "the day-to-day person handling the case," "Mr. Babbitt provided some assistance to Mr. Green because as a former Assistance [sic] U.S. Attorney, Mr. Green was new to civil litigation and the Song-Beverly Act." *Id.* Then, "[i]n November 2023, Mr. Babbitt became Ms. Gaudet's supervising attorney and thus became more involved with the case." *Id.*

MBUSA contends that several entries related to reviewing, revising, and editing the Complaint are "duplicative." (ECF No. 20-1 at 2.) Plaintiff's counsel billed 3 hours in total to draft and edit the Complaint. Babbitt billed 1.5 hours to draft and 0.2 hours to "review and edit" the Complaint, and Green billed a total of 1.3 hours to review and revise the Complaint. *Id.* "[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *Caccamise v. Credit One Bank, N.A.*, No. 18-CV-971 JLS (BLM), 2020 WL 804741, at *7 (S.D. Cal. Feb. 18, 2020) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 (9th Cir. 1989)). However, in *Rahman v. FCA US LLC*, the court found that billing 1.7 hours to prepare the complaint was "excessive for a routine lemon law case; drafting a boilerplate complaint should not take more than an hour." 594

F. Supp. 3d 1199, 1205 (C.D. Cal. 2022). In this case, the Court agrees that the amount of time billed for revising and editing the Complaint appears excessive, given the routine nature of this case and Babbitt's considerable experience with litigating "lemon law" actions. (*See* ECF No. 15-4.) The Court accordingly deducts 1.3 hours of Green's time from Plaintiff's fee award.

MBUSA objects that Green's billing of 0.2 hours to "revise jury demand" is "duplicative" of Gaudet's 0.2 hours billed to draft the jury demand. (ECF No. 20-1 at 3.) The Court notes that "[i]t is not unusual for one attorney to draft a brief, for another attorney to review and revise the brief, and then for the drafting attorney to make final edits and changes." *Rahman*, 594 F. Supp. 3d at 1205 (quoting *Mitchell v. Metro. Life Ins. Co.*, No. CV 05-00810 DDP (RNBx), 2008 WL 1749473, at *3 (C.D. Cal. Apr. 7, 2008)). The jury demand at issue here, however, is a one-sentence document. (*See* ECF No. 6.) The Court agrees that billing a total of 0.4 hours to draft and edit the jury demand appears excessive and accordingly deducts 0.1 hours of Green's time and 0.1 hours of Gaudet's time from Plaintiff's fee award.

MBUSA objects to billing entries related to attending the early neutral evaluation ("ENE") and case management conference ("CMC"). Specifically, Green billed 1.7 hours and Gaudet billed 1.6 hours to attend the ENE and CMC. (ECF No. 20-1 at 6.) MBUSA contends that Gaudet's billing entry for attending the ENE was "duplicative" because "[t]here is no need for two individuals from the firm to attend and bill for this." *Id.* Courts have found, however, that "[i]t is not unreasonable for multiple attorneys to attend the ENE. Indeed, the ENE is the first opportunity the parties have to attempt to settle the case with the assistance of the Court, making the ENE an important step in the litigation." *Grace Church of N. Cnty. v. City of San Diego*, No. 07cv419 H(RBB), 2008 WL 11508664, at *13 (S.D. Cal. Sept. 9, 2008); *see Huhmann v. FedEx Corp.*, No. 13-cv-00787-BAS(NLS), 2015 WL 6127198, at *5 (S.D. Cal. Oct. 16, 2015) ("[T]he court declines to find that both attorneys meeting with a client or attending a court proceeding constitutes duplicative billing. In effect, Defendant is asking the Court to second-guess Plaintiff's staffing of the

23-cv-1463-WQH-AHG

case, and this the Court declines to do."). Unlike in *Ahmed v. Jaguar Land Rover North America, LLC*, this was not a situation where "two senior attorneys" attended the ENE, as Gaudet was a junior attorney in her first year of practice at the time. No. 22cv0142 DMS (WVG), 2023 WL 3961715, at *3 (S.D. Cal. June 12, 2023) (finding it "unreasonable" for "two senior attorneys [to] attend the ENE"). The Court declines to deduct the hours billed for Plaintiff's counsel's attendance at the ENE and CMC.

MBUSA objects to Babbitt's billing of 1.1 hours to "draft MB USA Corp Rep Depo notice," contending that this entry is "[e]xaggerated" because "these are standard copy-paste notices." (ECF No. 20-1 at 8.) MBUSA similarly objects to Babbitt's billing of 0.9 hours to "draft subpoena for MB of Henderson" and 0.9 hours to "draft subpoena for depo of MB of Escondido." *Id.* at 7. The Court agrees that, without an explanation from Plaintiff as to why these particular deposition notices or subpoenas might have been unusual or atypical, the time billed for these tasks appears excessive.[7] *See Erick v. PNC Bank, N.A.*, No. 1:15-cv-00102-EJL-CWD, 2016 WL 5890064, at *2 (D. Idaho Oct. 7, 2016) (declining to award attorneys' fees for 0.2 hours billed for drafting initial notices of deposition in part because "deposition notices are clerical tasks"); *Saavedra v. Ford Motor Co.*, No. 21-cv-01193-AJB-BGS, 2022 WL 16629951, at *4 (S.D. Cal. Sept. 16, 2022) (reducing the fee for time spent "preparing, reviewing, and objecting to notices of deposition" in a Song-Beverly Act case from $160 to $60 because, while "[i]t is reasonable for an attorney to prepare, review, and object to notices of deposition," the fee award warranted reduction "to ensure that the monetary charge [was] commensurate with the level of work involved"). The Court accordingly reduces Babbitt's time by 1.5 hours.

---

[7] The Court observes that Babbitt was not the only timekeeper who billed for such tasks. A paralegal also billed a total of 1.3 hours for tasks related to preparing and revising deposition notices and subpoenas, specifically: 0.5 hours to "revise MB Dealer depo subps"; 0.3 hours for "Preparation of Notice of Depositions"; and 0.5 hours to "revise depo notices and subpoenas." (ECF No. 20-1 at 7–8.) The Court does not reduce the paralegal's time for these tasks.

23-cv-1463-WQH-AHG

MBUSA objects to Gaudet's billing of 2.2 hours for "Research re Notice of Settlement and effect on motion for fees re Rule 68 offer from MBUSA" as "[e]xaggerated." (ECF No. 20-1 at 11.) MBUSA contends that "[t]here is no need to spend over 2 hours researching such a simple topic." *Id.* The Court agrees that, without the benefit of additional information explaining the parameters of this research, the amount of time devoted to this task appears excessive, particularly in light of the options in MBUSA's Rule 68 Offer that explicitly permitted Plaintiff to either "elect to accept $10,000" for fees, costs, and expenses or "elect to file a motion and/or a bill of costs." (Rule 68 Offer at 4.) The Court accordingly deducts 1.5 hours of Gaudet's time from Plaintiff's fee award.

MBUSA objects to a series of billing entries related to drafting or revising the ENE statement as "duplicative." *See id.* at 4–6. In another recent Song-Beverly Act case that "involve[d] a relatively straightforward lemon law claim," the court reduced counsel's time for "drafting Plaintiff's Early Neutral Evaluation Statement" from 16.5 hours to 9 hours because "ENE statements are informal documents meant only to present Plaintiff's position on settlement," and the ENE statements were limited to five pages. *Tapia v. Ford Motor Co.*, No. 3:20-cv-01510-W-MSB, 2021 WL 5863597, at *2 (S.D. Cal. Oct. 19, 2021). In this case, the parties' ENE statements were similarly limited "to five (5) pages or less, and up to five (5) pages of exhibits or declarations" (ECF No. 5 at 2), and Plaintiff's counsel spent a total of 8.3 hours drafting and revising Plaintiff's statement. Plaintiff's counsel's hours devoted to preparing the ENE statement thus appear comparable to the number of hours that another judge in this district deemed to be reasonable in a similar case. *See Tapia*, 2021 WL 5863597, at *2. The Court does not deduct these hours from Plaintiff's fee award.

MBUSA also objects to several billing entries related to drafting the joint case management statement as "exaggerated" and "duplicative." Upon review of the parties' Joint Case Management Statement (ECF No. 7), the Court finds that it was not excessive for Plaintiff's counsel to spend 2.5 hours, collectively, drafting and revising Plaintiff's

contributions to this document. The Court declines to deduct these hours from Plaintiff's fee award.

The remaining entries that MBUSA contends are "duplicative" or "exaggerated" do not warrant a reduction of hours. The Court does not find that it was "duplicative" for two attorneys—including Gaudet, who was, at the time, a junior associate in her first year of practicing law—to bill 3.1 hours collectively to "prepare," "draft," and "revise" Plaintiff's Rule 26 disclosures. (*See* ECF No. 20-1 at 3–4.) The Court accordingly declines to deduct the remainder of the alleged "duplicative" or "exaggerated" billing entries from Plaintiff's fee award.

### 5.    Internal Communications/General Overhead

MBUSA contends that "at least 35 of the 199 [billing] entries contain internal communications, general overhead, all [of] which is not recoverable." (ECF No. 19 at 8.) Plaintiff does not respond to this contention.

"Meetings 'between attorneys are a routine and necessary part of providing legal representation to the client.'" *Maldonado*, 2024 WL 1092913, at *6 (quoting *Aviles v. Subaru of Am., Inc.*, No. 1:18-cv-01544-DAD-SKO, 2020 WL 868842, at *4 (E.D. Cal. Feb. 21, 2020)); *see Huhmann*, 2015 WL 6127198, at *4 ("Although the law does not require this Court to approve all internal communications between lawyers, a certain amount of communication is necessary and even desirable to keep costs down."). "[I]t is not the court's place to micromanage the prosecution of the case, or its staffing." *Cortes v. Kern Cnty. Superintendent of Schs.*, No. 1:18-cv-01355-LJO-JLT, 2019 WL 4013602, at *7 (E.D. Cal. Aug. 26, 2019) (quoting *Gauchat-Hargis v. Forest River, Inc.*, No. 11-cv-02737-KJM-EFB, 2013 WL 4828594, at *4 (E.D. Cal. Sept. 9, 2013)); *see Maldonado*, 2024 WL 1092913, at *6 (declining to recommend a reduction in hours billed for "interoffice communications" where the Court "[did] not find that [the] billed hours were excessive or duplicative").

On the other hand, "many courts have … reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Scott*, 2021 WL 6006411, at

23-cv-1463-WQH-AHG

*9 (quoting *Gauchat-Hargis*, 2013 WL 4828594, at *2). As such, courts will reduce fee awards where they find "duplicative and excessive billing related to internal conferences and communications." *Maldonado*, 2024 WL 1092913, at *6 (citing *Fresh Packing Corp. v. Guicho*, No. 15-CV-01551-LHK, 2016 WL 1718286, at *7 (N.D. Cal. Apr. 29, 2016); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)); *see Scott*, 2021 WL 6006411, at *9 ("Courts have disapproved of two individuals billing for communicating with each other, as such time is duplicative and unnecessary."); *Nolasco v. Bellflower Unified Sch. Dist.*, No. 2:21-cv-09708-MCS-MAR, 2022 WL 2102875, at *3 (C.D. Cal. May 2, 2022) ("[T]he time spent by the lower-billing attorney in intraoffice conferences is not recoverable if it amounts to duplication of effort.").

The majority of the "internal communications" that MBUSA identifies involved drafting, reviewing, or responding to memos drafted by co-counsel. (*See, e.g.*, ECF No. 20-1 at 3 (billing 0.1 hours to "Review and respond to memo from JG re Rule 26 disclosures"); *id.* at 8 (billing 0.1 hours to "draft memo to LG re trial date and discovery"); *id.* at 16 (billing 0.1 hours to "draft memo to CPB re fees and costs").) MBUSA identifies no authority to support its proposition that "drafting or reviewing an internal memo or communicating with a paralegal to detail a task are not recoverable tasks." (ECF No. 19 at 8.) The Court does not find that these entries are inherently unreasonable or excessive.

Other "internal communication" entries relate to intraoffice "conferences" among Plaintiff's attorneys that range from 0.1 hours to 0.6 hours. The Court notes that there appears to be at least one instance of duplicate entries for intraoffice conferences, as both Gaudet and Green billed 0.2 hours on October 12, 2023, to "Conference with [one another] re status." (*See* ECF No. 20-1 at 5.) To avoid duplication of fees, the Court will deduct 0.2 hours of Gaudet's time[8] from Plaintiff's fee award.

---

[8] The Court deducts Gaudet's time because she is the "lower-billing attorney." *See Nolasco*, 2022 WL 2102875, at *3 ("[T]he time spent by the lower-billing attorney in intraoffice conferences is not recoverable if it amounts to duplication of effort.").

MBUSA contends that the following billing entries are unrecoverable as "general overhead": 0.3 hours billed by Green for "Legal research re jury demand"; 0.4 hours billed by Gaudet for "Legal research Re FRCP disclosure"; 0.9 hours billed by Gaudet for "Legal research re SB claims/Mag Moss claims"; and 0.2 hours billed by Gaudet for "Legal research re CACI No. 3240 damages under SB." (ECF No. 20-1 at 3, 5.) Courts often describe "general overhead" as synonymous with "clerical tasks." *See, e.g.*, *Caccamise*, 2020 WL 804741, at *7 ("[C]lerical tasks, including but not limited to filing and scheduling, setting up meetings, and preparing a proof of service, are part of the normal overhead costs of litigation and not included in recoverable hours." (quoting *Puccio v. Love*, No. 16-CV-02890 W (BGS), 2020 WL 434481, at *2 (S.D. Cal. Jan. 28, 2020))); *Haroon's Halal Kabob LLC v. Food Truck Builders of Phoenix.com LLC*, No. CV-20-01634-PHX-SPL, 2022 WL 18495249, at *6 (D. Ariz. June 30, 2022) (explaining that "[t]asks that are clerical in nature are not recoverable as part of a reasonable fee award" because tasks such as "'scheduling, downloading files, docketing, and communications with Court staff,' as well as reviewing court-generated notices and corresponding regarding deadlines" "should be subsumed in a law firm's overhead" (internal citations omitted)); *Yarovoy*, 2024 WL 2412547, at *5 (noting that "ineligible clerical work," including "office administration" and "calendaring," is "typically considered part of an attorney's overhead").

The tasks contemplated by Plaintiff's counsel's "legal research" entries are distinct from the "clerical tasks" like filing and scheduling that courts often deem unrecoverable as part of an attorney's "overhead." The Court finds that the aforementioned entries are recoverable.

### 6. Block-Billing

MBUSA contends that "several" of Plaintiffs' counsel's billing entries "contain improper block-billing entries." (ECF No. 19 at 8.) Plaintiff does not address this contention in her Reply brief, but she contends in her Motion that "block billing is only an issue where there is a need to separate work that qualifies for compensation from work that

does not." (ECF No. 15-1 at 7 (citing *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1010 (Ct. App. 2013)).) She further asserts in her Motion that "where Plaintiff's counsel combined different events in a single billing entry, those events in most instances arose from a single, unified, indivisible course of action or task." *Id.*

The Court agrees with Plaintiff that "block billing only becomes an issue where there is a need to separate work that qualifies for compensation from work that does not." *Zargarian*, 442 F. Supp. 3d at 1228 (citing *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 830 (Ct. App. 2011)). Courts accordingly find block-billing unobjectionable where there is "no need to separate out covered from uncovered work." *Id.* (quoting *Jaramillo*, 200 Cal. App. 4th at 830); *see Lardizabal v. Am. Express Nat'l Bank*, No. 22-cv-345-MMA (BLM), 2023 WL 8264435, at *8 (S.D. Cal. Nov. 29, 2023) (determining that block-billing was neither "egregious" nor "objectionable" where all the billing entries in question were related to the plaintiff's claims for which he was eligible to receive attorney's fees and "none of the entries complained about … exceeded even three hours of billable time").

MBUSA objects to only one of Plaintiff's billing entries as "improper block-billing." (*See* ECF No. 20-1 at 18 (listing "[i]mproper block-billing" as an objection to an entry where Gaudet billed 0.1 hours for "check status of communication with OC[9] re settlement of fees, draft memo to GTB and CPB re same").) The Court finds that this entry does not contain any tasks that are ineligible for compensation, rendering block-billing unobjectionable.[10] The Court's finding is bolstered by the minimal amount of time devoted to this entry—0.1 hours—and the fact that this is the sole entry MBUSA challenges as

---

[9] The Court assumes that the abbreviation "OC" refers to "opposing counsel."

[10] To the extent MBUSA contends the task of "draft memo to GTB and CPB" does not qualify for compensation because it constitutes "internal communications," the Court noted above that time billed for internal communications is generally recoverable unless the time is excessive or duplicative. *See Maldonado*, 2024 WL 1092913, at *6. Given that Gaudet billed a mere 0.1 hours for this task, the Court declines to find that this entry is unrecoverable or constitutes impermissible block-billing.

exhibiting "block-billing." The Court declines to find that Plaintiff's fee award warrants a reduction due to block-billing.

## C.    Summary of Fees Awarded with Adjusted Rates and Hours

The following chart reflects the Court's adjustments to Plaintiff's counsel's hourly rates and hours billed, as discussed above:

| Name | Adjusted Hourly Rate | Adjusted Hours Billed[11] | Total |
|---|---|---|---|
| Christopher P. Barry | $605 | 1.7 | $1,028.50 |
| Gregory T. Babbitt | $605 | 12.9 | $7,804.50 |
| Joseph S. Green | $475 | 11.4 | $5,415 |
| Michael A. Klitzke | $395 | 0.2 | $79 |
| Laura Gaudet | $250 | 30.8 | $7,700 |
| Brandon Rodriguez | $195 | 4.7 | $916.50 |
| Laura Turner | $195 | 0.6 | $117 |
| Jeanette Abbenhaus | $155 | 0.5 | $77.50 |
| | | | **$23,138** |

The Court's adjustments result in a total of $23,138.00 in recoverable attorneys' fees.[12]

---

[11] Barry's declaration lists the number of hours billed per timekeeper. (ECF No. 15-3 ¶ 7.) Specifically, Barry billed 1.7 hours, Babbitt billed 14.4 hours, Green billed 12.8 hours, Klitzke billed 0.2 hours, Gaudet billed 32.6 hours, Rodriguez billed 5 hours, Turner billed 0.6 hours, and Abbenhaus billed 0.7 hours, for a total of 69 hours. *Id.* The present chart reflects the Court's deductions to each timekeeper's hours, as described above.

[12] Plaintiff does not contend that a multiplier or enhancement to the lodestar is appropriate in this case. The Court agrees, given the routine nature of this case and the lack of novel or complex issues. *See Rahman*, 594 F. Supp. 3d at 1207 (declining to apply an enhancement to the lodestar in "a largely routine lemon law case that involved few procedural demands and the exercise of limited skill from lawyers who specialize in this practice area and generally rely upon boilerplate pleadings and work product"). The Court accordingly declines to apply a multiplier to the lodestar in this action.

## V.    CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Attorneys' Fees (ECF No. 15) is granted in part and denied in part. MBUSA shall pay Plaintiff's attorneys' fees in the amount of $23,138.00.

Dated:  November 22, 2024

Hon. William Q. Hayes
United States District Court